# **EXHIBIT 4**



**PRIVATE & CONFIDENTIAL**

December 30, 2016

Capital Trustees, LLC, acting solely in its
Capacity as Trustee of the Tri-Wire
Employee Stock Ownership Trust
    c/o Rich Heeter, Managing Director
17 S. Second St., Suite 301
Harrisburg, PA 17101

> **RE: Fairness opinion relative to the redemption of 700,000 shares of Common Stock of Tri-Wire Engineering Solutions, Inc. ("TW", or the "Company") from its sole shareholder (the "Seller") for $17.5 million and acquisition of 820,000 shares of Common Stock of the Company for $20.5 million by Capital Trustees, LLC, not in its individual or corporate capacity, but solely in its capacity as trustee of the Tri-Wire Employee Stock Ownership Trust (the "ESOT" or "Buyer") from the Seller ("Proposed Transaction").**

Dear Trustee:

You have engaged Empire Valuation Consultants, LLC ("Empire") solely in your capacity as the trustee ("Trustee") of the ESOT, which is part of the Tri-Wire Employee Stock Ownership Plan (the "TW ESOP", together with the ESOT referred to herein as the "ESOP"), to undertake an independent analysis of the fairness, from a financial point of view, of a series of transactions that will result in the ESOP owning 100% of the outstanding common stock of TW: (1) the terms and conditions of the Proposed Transaction, taken as a whole, are fair to the ESOP from a financial point of view; (2) the consideration to be paid by the ESOP for shares of common stock of TW ("Company Common Stock") pursuant to the terms of the Proposed Transaction is not greater than the Fair Market Value of such shares and does not exceed "adequate consideration" (as defined in Section 3(18)(B) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); (3) the financial terms of the ESOP loan is at least as favorable to the ESOP as would be the financial terms of a comparable loan resulting from negotiations between independent parties; (4) the interest rate provided for in the ESOP Loan Agreement (as defined below) is not in excess of a reasonable rate of interest; and (5) the exercise price of the Warrants (as

Capital Trustees, LLC
December 30, 2016
Page 2

defined below) is not less than 90-percent of the post-Transaction fair market value of the Company common stock.

It is our understanding that this fairness opinion (the "Opinion") will be used in connection with the closing to be held on December 30, 2016 (the "Transaction Date"), and it will be effective on that date.

### A. Due Diligence Review Process

In connection with our analysis, we researched and/or reviewed the materials and documents specifically outlined below and held discussions with: (1) John R. Wade III, TW's Chief Executive Officer (referred to as "Management"); (2) Tabitha Croscut of Steiker, Greenapple & Croscut, P.C., TW's legal counsel; (3) Steven Etkind of Sadis & Goldberg, the Trustee's legal counsel; (4) Dave Gesmondi of BellMark Partners, LLC; (5) Michael Golden and James Steiker of SES Advisors, Inc.; and (6) the Trustee.

Regarding TW and the ESOP, we have

- Researched relevant company specific, and market information, along with key economic and industry data.

- Analyzed TW's reviewed financial statements for the years ended December 31, 2011 through 2015.

- Analyzed TW's internally prepared income statement for the trailing twelve months ("TTM") ended October 31, 2016 (the most recent available) and copies of the Company's internally prepared balance sheet as of October 31, 2016 (the most recent available).

- Analyzed TW's internally prepared cash flow projections for the Company for the years ending December 31, 2017 through December 31, 2021.

- Reviewed the Summary Term Sheet between the Seller and the Company, dated December 28, 2016 (the "Term Sheet").

- Reviewed a copy of the Tri-Wire Employee Stock Ownership Trust Agreement, effective as of January 1, 2016.

- Reviewed a copy of the Tri-Wire Employee Stock Ownership Plan, effective as of January 1, 2016.

- Conducted such other studies, analyses, and inquiries deemed appropriate.

EMPIRE
VALUATION CONSULTANTS

Capital Trustees, LLC
December 30, 2016
Page 3

**Regarding the Proposed Transaction,** we reviewed and discussed appropriate aspects of the stock purchase agreement with the Trustee and its legal counsel. In addition, we have reviewed the following information:

- The closing document checklist with an effective date of December 28, 2016.

- The stock purchase agreement among the TW ESOT, Seller, and the Company, dated as of December 30, 2016 (the "TW Stock Purchase Agreement").

- The stock redemption agreement between the Company and the Seller, dated December 30, 2016.

- The loan agreement between the Company and the Trust, dated as of December 30, 2016 (the "ESOP Loan Agreement").

- The ESOP promissory note between the Company and the Trust (the "ESOP Note"), dated as of December 30, 2016.

- The pledge agreement between the Company and the Trust, dated as of December 30, 2016 (the "ESOP Pledge Agreement").

- The Company's Employment Agreement with John R. Wade, III, dated as of Decemer 30, 2016.

- The Tri-Wire Engineering Solutions, Inc. Phantom Stock Plan, dated as of December 30, 2016.

- The Tri-Wire Engineering Solutions, Inc. Stock Appreication Rights Plan, dated as of December 30, 2016.

- Deffered Compensation Plans with each of John Marsh, Marie Wade and Nick Tensen, dated as of December 30, 2016.

- Subordinated Loan Agreement by and between the Company and the Seller, dated December 30, 2016.

- Series A Subordinated Promissory Note issued by the Company to the Seller in the amount of $4,500,000, dated December 30, 2016 ("Series A Note").

- Series B Subordinated Promissory Note issued by the Company to the Seller in the amount of $13,000,000, dated December 30, 2016 ("Series B Note").

Capital Trustees, LLC
December 30, 2016
Page 4

- Warrant issue for 28,275.86 share equivalents by the Company to the Seller, dated December 30, 2016, in connection with the Series A Note (the "Series A Warrant").

- Warrant issue for 188,505.75 share equivalents by the Company to the Seller, dated December 30, 2016, in connection with the Series B Note (the "Series B Warrant").

- Credit Agreement between JPMorgan Chase Bank, N.A. and the Company, dated December 30, 2016.

- $15,500,000 Term Note issued by the Company to JPMorgan Chase Bank, N.A.

- $8,000,000 Revolving Note issued by the Company to JPMorgan Chase Bank, N.A.

- Note & Warrant Purchase Agreement between the Company and MCRC for the extension of $5,000,000 promissory note ("Mezz Note"), dated December 30, 2016.

- Stock Purchase Warrants for 31,417.62 share equivalents issued by the Company to MCRC in connection with the Mez Note ("Mezzannine Warrants").

Given the aforementioned and subject to the terms of the TW Stock Purchase Agreement, the Seller agrees to sell and the Trustee (on behalf of the Trust and the TW ESOP) agrees to purchase 820,000 shares of the common stock of TW for $20,500,000, or $25.00 per share.

For purposes of this Opinion, the most relevant facts of the Proposed Transaction are as follows.

In the first step of the Proposed Transaction, the Company will redeem an aggregate of 700,000 shares of the Company Common Stock from the Seller (collectively, the "Redemption Shares," and the transaction the "Redemption"). The ESOP will simultaneously purchase the remaining 820,000 shares for $20.5 million from the Seller. The 820,000 common shares will represent 100% of the issued and outstanding capital stock in the Company. The purchase price for the Redemption Shares will be $17.5 million ("Redemption Purchase Price"). The Redemption Price is to be paid through the Series B Note issued by the Company to the Seller in the aggregate sum of $13.0 million and the Series A Note issued by the Company to the Seller in the aggregate sum of $4.5 million (together the Series A Note and Series B Note referred to herein as the "Seller Note"). The Series B Note will be immediately due upon a change in control and for a term of ten years with interest only payable during the first seven years and principal and interest amortized over the ensuing three years. The interest rate will be the long-term applicable federal rate, plus 150 basis points. The Series B Note will be issued with detachable warrants (the "Series B Warrants") to purchase Company Common Stock equal to 15% of the outstanding fully diluted shares upon exercise. The strike price for the Series B Warrants will be $2.60 per share (the post-closing fair market value of one share of Company stock giving effect to

Capital Trustees, LLC
December 30, 2016
Page 5

the redemption, the financing, and the issuance of shares to the ESOP), and which will be the same strike price established for the Series A Warrants and Mezzanine Warrants. The Series B Warrants are exercisable immediately upon a change in control, and shall otherwise be exercisable in three equal tranches on the first three anniversaries of payment in full of the Series B Note.

The Company anticipates obtaining $15.5 million in funding for the Acquisition Loan through a term loan from JPMorgan Chase Bank, N.A. (the "Senior Loan"). The Senior Loan will accrue interest at LIBOR + 4.25% and will have a five year term with monthly installments of payments calculated over a five-year amortization schedule as follows: (i) Year 1 through 2 principal installments of $129,167; (ii) Year 3-4 principal installments of $193,750; and (iii) Year 5 principal installments of $258,333. The Company anticipates further financing in the form of an unsecured Note and Warrant Purchase Agreement (the "Mezzanine Loan") to the Company in the amount of $5 million. The Mezzanine Loan and the Series A Note will bear interest at a rate of 12% per annum and shall be payable as an 11% current cash interest payment and a 1% paid in kind ("PIK") interest that will be added to the underlying principal of the loan. There will also be warrants attached to the Mezzanine Loan for the purchase of 2.5% of Company Common Stock of the Company (the "Mezzanine Warrants") with a strike price equal to $2.60 per share of Company Common Stock. The Series A Warrants attached to the Series A Note will be issued for 2.25% of the Common Stock of the Company. There will be no principal payments on the Mezzanine Loan during the term of the Senior Loan and the Company anticipates retiring the Mezzanine Loan at the earlier of five years or payment in full of the Senior Loan. The Seller's Series A Note in the amount of $4.5 million will be extended under the same terms as the Mezzanine Loan.

The purchase price payable by the ESOP to the Company for the ESOP Shares will be at the same per share value as the Redemption and will be $20,500,000 ("ESOP Purchase Price") resulting in the ESOP holding 100% of the Company's 820,000 authorized shares. The ESOP Purchase Price is also subject to a working capital adjustment. The Company will loan the ESOP Purchase Price amount to the ESOP (the "Acquisition Loan"). The Acquisition Loan will be for a term of twenty years, will be secured by a pledge by the ESOP to the Company (the "Pledge") of the unallocated Company Common Stock acquired by the ESOP with the proceeds. The Acquisition Loan will be payable in an initial payment on December 31, 2016 equal to approximately $2,514,315, followed by equal annual installments of principal plus interest and shall bear interest at a rate equal to the long-term applicable federal rate in effect on the Transaction Date. The Acquisition Loan shall be pre-payable without penalty and non-recourse.

If the Company achieves a cumulative Adjusted EBITDA of $34 million from 2017-2021 (the "Adjusted EBITDA Target"), the price for all of the shares will be increased by 50% of the amount of the cumulative EBITDA in excess of $34 million up to a maximum earnout

Capital Trustees, LLC
December 30, 2016
Page 6

payment of $2 million (the "Earnout Amount") and the Earnout Amount will be added to the Seller Note effective as of the Closing Date. There shall also be a clawback to the base Purchase Price (the "Clawback") if the Company does not achieve the cumulative Adjusted EBITDA Target for the 2017-2021 fiscal years. The Clawback amount will be 50% of the amount that the cumulative Actual Adjusted EBITDA for the 2017-2021 fiscal years is less than the Adjusted EBITDA Target, up to a maximum of $2 million. "Actual Adjusted EBITDA" shall mean the EBITDA reported on the Company's accountant-prepared financial statements plus the amount of any non-cash expense shown in connection with the Company's ESOP and all professional fees related to the creation or maintenance of the ESOP.

The Company is adopting Phantom Stock and Stock Appreciation Rights management incentive plans for the benefit of eligible executive employees other than Seller and his family members. The management incentive plans will provide for award of performance stock appreciation rights ("SARs") units up to 5% of the fully diluted Company stock and phantom stock units up to 10% of the fully diluted Company Common Stock designed to replicate the economic benefits of the Company Common Stock. The exercise price for the SARs units will be the current fair market value of one share of Company Common Stock as of the date of the award. The awards will be subject to vesting and other restrictions. The performance SARs awards will also be subject to performance vesting to be approved by the Board of Directors at the time of granting any such awards and will be granted to key employees in the discretion of the Board of Directors.

## B. Limiting Conditions

In connection with our analysis, we have relied upon and assumed, without independent verification, the accuracy and completeness of all financial or other information provided to us or publicly available. We have also relied on the assurance of TW's management that there have been no material adverse changes in the Company's operations or financial conditions since the date of the last available financial statements of the Company, October 31, 2016.

We have only made a visit to the Company's headquarters/offices in Tewksbury, MA; we have not done an independent appraisal of any tangible assets of TW. Our Opinion is necessarily based on business, economic, market, and other conditions as they existed as of the date of this letter.

We have also relied upon and assumed, without independent verification, that the financial projections which were provided by TW and their financial advisors have been reasonably prepared and reflect the best currently available estimates of the future financial results and condition of the Company, and we do not assume any responsibility for their accuracy. Nevertheless, nothing has come to Empire's attention that would render the use of, and

EMPIRE
VALUATION CONSULTANTS

Capital Trustees, LLC
December 30, 2016
Page 7

reliance upon, the aforementioned projections and other information provided by the Company's management as being unreasonable. This Opinion does not take into consideration any tax consequences related to the Company's Seller as a result of the Proposed Transaction.

This letter should not be construed as creating any fiduciary duty by us to any party.

### C. Fairness Opinion

Based upon the foregoing, and in reliance thereon, it is our Opinion, as financial advisors to the Trustee with respect to the ESOP that:

1. the overall terms of the Proposed Transaction and the Redemption are fair to the ESOP from a financial point of view;

2. the total consideration to be paid by the ESOP in the Proposed Transaction of 820,000 shares of Common Stock of TW is not more than "fair market value" as defined in Section 3(18)(B) of ERISA and Section 2510.3-18 of the Proposed Labor Regulations and does not exceed "adequate consideration"; and

3. the financial terms of the ESOP Loan Agreement is at least as favorable to the ESOP as would be the terms of a comparable loan resulting from arm's-length negotiations between independent parties;

4. the interest rate provided for in the ESOP Loan Agreement is not in excess of a reasonable rate of interest;

5. the exercise price of the Warrants is not less than 90-percent of the post-Transaction fair market value of the Company's common stock.

Respectfully submitted,

**Empire Valuation Consultants, LLC**

_____
Charles E. Coyne, ASA
Managing Director