## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN R. WADE, III, SHARON WADE, JOHN WADE IV, AND TAYLOR WADE, | ) CASE NO. 1:20-cv-10523-DLC |
| | ) |
| Plaintiffs, | ) MAGISTRATE JUDGE DONALD L. |
| | ) CABELL |
| v. | ) |
| | ) |
| TRI-WIRE EMPLOYEE STOCK OPTION TRUST, SCOTT PERRY, ROBERT R. NEWELL, ROBERT LANDRY, DAVID GESMONDI, CAPITAL TRUSTEES, LLC, SPINNAKER TRUST, ROBERT GOULD, JEANINE PENDERGAST, EMPIRE VALUATION CONSULTANTS, LLC, SES WINDING UP CORPORATION F/K/A SES ADVISORS, INC., SES ESOP STRATEGIES, LLC, AS SUCCESSOR TO SES ADVISORS, INC., BELLMARK PARTNERS, LLC, JOHN MARSH, LORI WENETTA, AND RUBEN KLEIN, | ) **DEFENDANT SPINNAKER TRUST'S** ) **ANSWER TO PLAINTIFFS'** ) **COMPLAINT, COUNTERCLAIM** ) **AGAINST JOHN R. WADE, III, AND** ) **JURY DEMAND** ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Defendant Spinnaker Trust ("Spinnaker"), by and through counsel, and for its Answer to

Plaintiffs John R. Wade, III, Sharon Wade, John Wade IV, and Taylor Wade's ("Plaintiffs")

Complaint[1], states as follows:

## I.    NATURE OF THE ACTION

1.    To the extent the allegations in Paragraph 1 are alleged against Spinnaker,

Spinnaker denies the allegations in Paragraph 1 of the Complaint.

2.    To the extent the allegations in Paragraph 2 are alleged against Spinnaker,

Spinnaker denies the allegations in Paragraph 2 of the Complaint.

---

[1] Defendant Spinnaker Trust is simultaneously filing a Motion for Judgment on the Pleadings. Defendants Gould and Pendergast, who are employees of Spinnaker, have simultaneously filed a Motion to Dismiss.

3.     To the extent the allegations in Paragraph 3 are alleged against Spinnaker, Spinnaker denies the allegations in Paragraph 3 of the Complaint.

## II.     JURISDICTION AND VENUE

4.     The allegations in Paragraph 4 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 4 of the Complaint.

5.     The allegations in Paragraph 5 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 5 of the Complaint.

6.     The allegations in Paragraph 6 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 6 of the Complaint.

## III.     FACTUAL BACKGROUND

7.     In response to the allegations in Paragraph 7, Spinnaker admits that Wade is the founder of the Company, that he served as the Company's CEO and Board Chairman since 1999, that until December 30, 2016 he was the majority shareholder of the Company, at which time he sold his shares to the Employee Stock Ownership Plan ("ESOP") and that he remains a creditor as a result of the sale. Spinnaker denies the remaining allegations in Paragraph 7 of the Complaint.

8.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint, and, therefore, denies the same.

9.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint, and, therefore, denies the same.

10.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint, and, therefore, denies the same.

11.     There are no allegations in Paragraph 11 of the Complaint, so no response is required.

12.     In response to the allegations in Paragraph 12 of the Complaint, Spinnaker states that the ESOT [sic] is not actually the Tri-Wire Employee Stock *Option* Trust, but is rather the Tri-Wire Employee Stock *Ownership* Trust, but admits the remaining allegations.

13.     In response to the allegations in Paragraph 13, Spinnaker admits that Scott Perry served as a director of the Company since June 2017. Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 of the Complaint, and, therefore, denies the same.

14.     In response to the allegations in Paragraph 14, Spinnaker admits Robert R. Newell served as a director of the Company since June 2017. Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14 of the Complaint, and, therefore, denies the same.

15.     In response to the allegations in Paragraph 15, Spinnaker admits Robert Landry served as a director of the Company since February 28, 2019. Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15 of the Complaint, and, therefore, denies the same.

16.     In response to the allegations in Paragraph 16, Spinnaker admits David Gesmondi served as a director of the Company from June 2017 until July 2019. Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16 of the Complaint, and, therefore, denies the same.

17.     In response to the allegations in Paragraph 17, Spinnaker admits John Marsh is an executive-level employee and officer of the Company. Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17 of the Complaint, and, therefore, denies the same.

18.     In response to the allegations in Paragraph 18, Spinnaker admits Ruben Klein has been employed by the Company as its Chief Financial Officer since October 2018. To the extent the allegations in Paragraph 18 are alleged against Spinnaker, Spinnaker denies same. Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 of the Complaint, and, therefore, denies the same.

19.     In response to the allegations in Paragraph 19, Spinnaker admits Lori Wenetta is an executive-level employee and officer of the Company. Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19 of the Complaint, and, therefore, denies the same.

20.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and, therefore, denies the same.

21.     In response to the allegations in Paragraph 21, Spinnaker admits it has been trustee of the ESOP since March 2017. It also admits that it has a registered address and principal place of business in Maine and that it entered into contractual agreements with the ESOP and the Company. Spinnaker denies the remaining allegations in Paragraph 21 of the Complaint.

22.     In response to the allegations in Paragraph 22, Spinnaker admits Gould is an Executive Vice President of Spinnaker and a resident of Massachusetts. Spinnaker denies the remaining allegations in Paragraph 22 including, but not limited to, that Gould is an individual fiduciary.

23.     In response to the allegations in Paragraph 23, Spinnaker admits Pendergast is a Senior Vice President of Spinnaker and a resident of Maine. Spinnaker denies the remaining allegations in Paragraph 23 including, but not limited to, that Pendergast is an individual fiduciary.

24.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint, and, therefore, denies the same.

25.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint, and, therefore, denies the same.

26.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint, and, therefore, denies the same.

27.     Spinnaker admits the allegations in Paragraph 27 of the Complaint.

28.     Spinnaker admits the allegations in Paragraph 28 of the Complaint.

29.     In response to the allegations in Paragraph 29 of the Complaint, Spinnaker admits Smith served as a director from February 28, 2019 to August 2, 2019. Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29 of the Complaint, and, therefore, denies the same.

30.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint, and, therefore, denies the same.

31.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint, and, therefore, denies the same.

32.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the Complaint, and, therefore, denies the same.

33.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint, and, therefore, denies the same.

34.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint, and, therefore, denies the same.

35.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint, and, therefore, denies the same.

36.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint, and, therefore, denies the same.

37.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint, and, therefore, denies the same.

38.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint, and, therefore, denies the same.

39.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint, and, therefore, denies the same.

40.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Complaint, and, therefore, denies the same.

41.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint, and, therefore, denies the same.

42.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint, and, therefore, denies the same.

43.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint, and, therefore, denies the same.

44.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Complaint, and, therefore, denies the same.

45.      Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Complaint, and, therefore, denies the same.

46.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of the Complaint, and, therefore, denies the same.

47.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the Complaint, and, therefore, denies the same.

48.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint, and, therefore, denies the same.

49.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 of the Complaint, and, therefore, denies the same.

50.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of the Complaint, and, therefore, denies the same.

51.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of the Complaint, and, therefore, denies the same.

52.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint, and, therefore, denies the same.

53.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 of the Complaint, and, therefore, denies the same.

54.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint, and, therefore, denies the same.

55.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of the Complaint, and, therefore, denies the same.

56.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Complaint, and, therefore, denies the same.

57.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint, and, therefore, denies the same.

58.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Complaint, and, therefore, denies the same.

59.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Complaint, and, therefore, denies the same.

60.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Complaint, and, therefore, denies the same.

61.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Complaint, and, therefore, denies the same.

62.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Complaint, and, therefore, denies the same.

63.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the Complaint, and, therefore, denies the same.

64.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 of the Complaint, and, therefore, denies the same.

65.     To the extent Plaintiffs purport to characterize or restate the information contained in the Trust Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 65 of the Complaint.

66.     To the extent Plaintiffs purport to characterize or restate the information contained in the Trust Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 66 of the Complaint.

67.     To the extent Plaintiffs purport to characterize or restate the information contained in the Trust Agreement, the agreement itself is the best evidence of its content and Spinnaker

denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 67 of the Complaint.

68.     To the extent the allegations in Paragraph 68 are alleged against Spinnaker, they are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 68 of the Complaint.

69.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 of the Complaint, and, therefore, denies the same.

70.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 of the Complaint, and, therefore, denies the same.

71.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 of the Complaint, and, therefore, denies the same.

72.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 of the Complaint, and, therefore, denies the same.

73.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 of the Complaint, and, therefore, denies the same.

74.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the Complaint, and, therefore, denies the same.

75.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 of the Complaint, and, therefore, denies the same.

76.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 of the Complaint, and, therefore, denies the same.

77.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 of the Complaint, and, therefore, denies the same.

78.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 of the Complaint, and, therefore, denies the same.

79.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 of the Complaint, and, therefore, denies the same.

80.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Redemption Agreement or Notes, the agreements themselves are the best evidence of their content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 80 of the Complaint.

81.     To the extent Plaintiffs purport to characterize or restate the information contained in the Redemption Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 81 of the Complaint.

82.     To the extent Plaintiffs purport to characterize or restate the information contained in the Subordinated Loan Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 82 of the Complaint.

83.     To the extent Plaintiffs purport to characterize or restate the information contained in the Subordinated Loan Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 83 of the Complaint.

84.     To the extent Plaintiffs purport to characterize or restate the information contained in the Subordinated Loan Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 84 of the Complaint.

85.     To the extent Plaintiffs purport to characterize or restate the information contained in the Subordinated Loan Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 85 of the Complaint.

86.     To the extent Plaintiffs purport to characterize or restate the information contained in the Subordinated Loan Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 86 of the Complaint.

87.     To the extent Plaintiffs purport to characterize or restate the information contained in the Note, the note itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 87 of the Complaint.

88.     To the extent Plaintiffs purport to characterize or restate the information contained in the Note Agreement, the note itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 88 of the Complaint.

89.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 of the Complaint, and, therefore, denies the same.

90.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 of the Complaint, and, therefore, denies the same.

91.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 91 of the Complaint.

92.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 92 of the Complaint.

93.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 93 of the Complaint.

94.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 94 of the Complaint.

95.     In response to the allegations in Paragraph 95 of the Complaint, Spinnaker states that it did review the financial statements but the decision was approved by the board and not Spinnaker and, therefore, denies the remaining allegations in Paragraph 95 of the Complaint.

96.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 96 of the Complaint.

97.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 97 of the Complaint.

98.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 98 of the Complaint.

99.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 99 of the Complaint.

100.    To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 100 of the Complaint.

101.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 of the Complaint, and, therefore, denies the same.

102.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102 of the Complaint, and, therefore, denies the same.

103.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103 of the Complaint, and, therefore, denies the same.

104.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104 of the Complaint, and, therefore, denies the same.

105.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105 of the Complaint, and, therefore, denies the same.

106.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106 of the Complaint, and, therefore, denies the same.

107.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107 of the Complaint, and, therefore, denies the same.

108.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 108 of the Complaint.

109.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 109 of the Complaint.

110.     To the extent Plaintiffs purport to characterize or restate the information contained in the Stock Purchase Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 110 of the Complaint.

111.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111 of the Complaint, and, therefore, denies the same.

112.     Spinnaker denies the allegations in Paragraph 112 of the Complaint.

113.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113 of the Complaint, and, therefore, denies the same.

114.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114 of the Complaint, and, therefore, denies the same.

115.     To the extent Plaintiffs purport to characterize or restate the information contained in the Executive Employment Agreement, the agreement itself is the best evidence of its content

and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 115 of the Complaint.

116.     To the extent Plaintiffs purport to characterize or restate the information contained in the Employment Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 116 of the Complaint.

117.     To the extent Plaintiffs purport to characterize or restate the information contained in the Employment Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 117 of the Complaint.

118.     Spinnaker denies the allegations in Paragraph 118 of the Complaint.

119.     In response to the allegations in Paragraph 119, Spinnaker admits that it was hired as the Trustee of the ESOP in March 2017. To the extent Plaintiffs purport to characterize or restate the information contained in the Trust Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 119 of the Complaint.

120.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120 of the Complaint, and, therefore, denies the same.

121.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 121 of the Complaint, and, therefore, denies the same.

122.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122 of the Complaint, and, therefore, denies the same.

123.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123 of the Complaint, and, therefore, denies the same.

124.     In response to the allegations in Paragraph 124 of the Complaint, Spinnaker states that Wade did relay these concerns to it but denies the characterization of the allegations and as a result denies the allegations in Paragraph 124.

125.     Spinnaker denies the allegations in Paragraph 125 of the Complaint.

126.     Spinnaker denies the allegations in Paragraph 126 of the Complaint.

127.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127 of the Complaint, and, therefore, denies the same.

128.     In response to the allegations in Paragraph 128, Spinnaker admits it was contacted by Gesmondi and Wade. Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 128 of the Complaint, and, therefore, denies the same.

129.     Spinnaker denies the allegations in Paragraph 129 of the Complaint.

130.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130 of the Complaint, and, therefore, denies the same.

131.     To the extent the allegations in Paragraph 131 are alleged against it, Spinnaker denies the allegations in Paragraph 131 of the Complaint. Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 121 of the Complaint, and, therefore, denies the same.

132.     In response to the allegations in Paragraph 132 of the Complaint, Spinnaker states that it did receive approval from the board to add a fifth seat to the Board and to elect Maurice Hryshko. Spinnaker denies the remaining allegations in Paragraph 132 of the Complaint.

133.     Spinnaker denies the allegations in Paragraph 133 of the Complaint.

134.     To the extent Plaintiffs purport to characterize or restate the information contained in the February 14, 2019 letter, the letter itself is the best evidence of its content and Spinnaker

denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 134 of the Complaint.

135.    To the extent Plaintiffs purport to characterize or restate the information contained in the February 16, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 135 of the Complaint.

136.    To the extent Plaintiffs purport to characterize or restate the information contained in the February 16, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 136 of the Complaint.

137.    To the extent Plaintiffs purport to characterize or restate the information contained in the February 17, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 137 of the Complaint.

138.    To the extent Plaintiffs purport to characterize or restate the information contained in the February 17, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 138 of the Complaint.

139.    To the extent Plaintiffs purport to characterize or restate the information contained in the February 19, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 139 of the Complaint.

140.     In response to the allegations in Paragraph 140 of the Complaint, Spinnaker admits that it agreed upon a memorandum of understanding with Wade, but denies the remaining allegations of Paragraph 140.

141.     To the extent Plaintiffs purport to characterize or restate the information contained in the Executive Employment Agreement, the agreement itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 141 of the Complaint.

142.     Spinnaker denies the allegations in Paragraph 142 of the Complaint.

143.     Spinnaker denies the allegations in Paragraph 143 of the Complaint.

144.     In response to the allegations in Paragraph 144 of the Complaint, Spinnaker admits that it did investigate the actions of Wade but denies the remaining allegations.

145.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145 of the Complaint, and, therefore, denies the same.

146.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146 of the Complaint, and, therefore, denies the same.

147.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 147 of the Complaint, and, therefore, denies the same.

148.     Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148 of the Complaint, and, therefore, denies the same.

149.     To the extent Plaintiffs purport to characterize or restate the information contained in the May 2, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 149 of the Complaint.

150.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 150 of the Complaint, and, therefore, denies the same.

151.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151 of the Complaint, and, therefore, denies the same.

152.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 152 of the Complaint, and, therefore, denies the same.

153.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153 of the Complaint, and, therefore, denies the same.

154.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 154 of the Complaint, and, therefore, denies the same.

155.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 155 of the Complaint, and, therefore, denies the same.

156.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 156 of the Complaint, and, therefore, denies the same.

157.    To the extent Plaintiffs purport to characterize or restate the information contained in the May 2, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 157 of the Complaint.

158.    To the extent Plaintiffs purport to characterize or restate the information contained in the May 2, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 158 of the Complaint.

159.    To the extent Plaintiffs purport to characterize or restate the information contained in the May 2, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies

any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 159 of the Complaint.

160.    To the extent Plaintiffs purport to characterize or restate the information contained in the May 2, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 160 of the Complaint.

161.    To the extent Plaintiffs purport to characterize or restate the information contained in the May 2, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 161 of the Complaint.

162.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162 of the Complaint, and, therefore, denies the same.

163.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163 of the Complaint, and, therefore, denies the same.

164.    To the extent Plaintiffs purport to characterize or restate the information contained in the May 14, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 164 of the Complaint.

165.    To the extent Plaintiffs purport to characterize or restate the information contained in the May 17, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 165 of the Complaint.

166.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166 of the Complaint, and, therefore, denies the same.

167.    In response to the allegations in Paragraph 167 of the Complaint, Spinnaker states that Wade did attempt to set up board meetings but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

168.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168 of the Complaint, and, therefore, denies the same.

169.    Spinnaker admits the allegations in Paragraph 169 of the Complaint but states that it did not follow the instructions because there was not a quorum of the board.

170.    In response to the allegations in Paragraph 170, Spinnaker admits it was directed by the board to remove Wade from the board. Spinnaker denies the remaining allegations in Paragraph 170.

171.    To the extent Plaintiffs purport to characterize or restate the information contained in the August 2, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 171 of the Complaint.

172.    In response to the allegations in Paragraph 172, Spinnaker admits it was directed by the board to remove Wade from the board. Spinnaker denies the remaining allegations in Paragraph 172.

173.    In response to the allegations in Paragraph 173, Spinnaker admits Smith did resign. Spinnaker denies the remaining allegations in Paragraph 173 of the Complaint.

174.    Spinnaker denies the allegations in Paragraph 174 of the Complaint.

175.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175 of the Complaint, and, therefore, denies the same.

176.    The allegations in Paragraph 176 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 176 of the Complaint.

177.    In response to the allegations in Paragraph 177, Spinnaker admits that the shares of the Company appear to have been sold for more than fair market value. Spinnaker denies the remaining allegations in Paragraph 177 of the Complaint.

178.    Spinnaker denies the allegations in Paragraph 178 of the Complaint.

179.    Spinnaker denies the allegations in Paragraph 179 of the Complaint.

180.    To the extent Plaintiffs purport to characterize or restate the information contained in the August 2, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 180 of the Complaint.

181.    Spinnaker denies the allegations in Paragraph 181 of the Complaint'.

182.    Spinnaker denies the allegations in Paragraph 182 of the Complaint.

183.    Spinnaker denies the allegations in Paragraph 183 of the Complaint.

184.    Spinnaker denies the allegations in Paragraph 184 of the Complaint.

185.    Spinnaker denies the allegations in Paragraph 185 of the Complaint.

186.    Spinnaker denies the allegations in Paragraph 186 of the Complaint.

187.    Spinnaker denies the allegations in Paragraph 187 of the Complaint.

188.    Spinnaker denies the allegations in Paragraph 188 of the Complaint.

189.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189 of the Complaint, and, therefore, denies the same.

190.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 190 of the Complaint, and, therefore, denies the same.

191.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191 of the Complaint, and, therefore, denies the same.

192.    Spinnaker is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192 of the Complaint, and, therefore, denies the same.

193.    To the extent Plaintiffs purport to characterize or restate the information contained in the October 1, 2019 letter, the letter itself is the best evidence of its content and Spinnaker denies any inconsistent characterization of the same. Spinnaker denies the remaining allegations contained in Paragraph 193 of the Complaint.

## IV.    CLAIMS

### COUNT I - RICO ACT: WIRE FRAUD PREDICT [SIC] ACT AGAINST ALL DEFENDANTS

194.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

195.    The allegations in Paragraph 195 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 195 of the Complaint.

196.    The allegations in Paragraph 196 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 196 of the Complaint.

197.    Spinnaker denies the allegations in Paragraph 197 of the Complaint.

198.    Spinnaker denies the allegations in Paragraph 198 of the Complaint.

199.    Spinnaker denies the allegations in Paragraph 199 of the Complaint.

200.    Spinnaker denies the allegations in Paragraph 200 of the Complaint.

201.    Spinnaker denies the allegations in Paragraph 201 of the Complaint.

202.     Spinnaker denies the allegations in Paragraph 202 of the Complaint.

203.     Spinnaker denies the allegations in Paragraph 203 of the Complaint.

204.     The allegations in Paragraph 204 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 204 of the Complaint.

205.     Spinnaker denies the allegations in Paragraph 205 of the Complaint.

206.     Spinnaker denies the allegations in Paragraph 206 of the Complaint.

207.     Spinnaker denies the allegations in Paragraph 207 of the Complaint.

208.     The allegations in Paragraph 208 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 208 of the Complaint.

## COUNT II - FRAUD AGAINST ALL DEFENDANTS

209.     Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

210.     Spinnaker denies the allegations in Paragraph 210 of the Complaint.

211.     Spinnaker denies the allegations in Paragraph 211 of the Complaint.

212.     Spinnaker denies the allegations in Paragraph 212 of the Complaint.

213.     Spinnaker denies the allegations in Paragraph 213 of the Complaint.

214.     Spinnaker denies the allegations in Paragraph 214 of the Complaint.

215.     The allegations in Paragraph 215 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 215 of the Complaint.

## COUNT III - BREACH OF FIDUCIARY DUTIES AGAINST SECOND TRUSTEE, GOULD AND PENDERGAST

216.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

217.    The allegations in Paragraph 217 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 217 of the Complaint.

218.    Spinnaker denies the allegations in Paragraph 218 of the Complaint.

219.    The allegations in Paragraph 219 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 219 of the Complaint.

220.    The allegations in Paragraph 220 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 220 of the Complaint.

221.    The allegations in Paragraph 221 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 221 of the Complaint.

222.    The allegations in Paragraph 222 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 222 of the Complaint.

## COUNT IV - BREACH OF FIDUCIARY DUTIES AGAINST BOARD DEFENDANTS

223.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

224.     The allegations in Paragraph 224 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 224 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 224 of the Complaint

225.     The allegations in Paragraph 225 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 225 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 225 of the Complaint.

226.     The allegations in Paragraph 226 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 226 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 226 of the Complaint.

227.     The allegations in Paragraph 227 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 227 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 227 of the Complaint.

228.     The allegations in Paragraph 228 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 228 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 228 of the Complaint.

229.     The allegations in Paragraph 229 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 229 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 229 of the Complaint.

230.    The allegations in Paragraph 230 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 230 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 230 of the Complaint.

## COUNT V - KNOWING PARTICIPATION IN THE BREACH OF FIDUCIARY DUTIES AGAINST THE BOARD DEFENDANTS AND THE OFFICERS

231.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

232.    The allegations in Paragraph 232 are not alleged against Spinnaker, so no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 232 of the Complaint.

233.    The allegations in Paragraph 233 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 233 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 233 of the Complaint.

234.    The allegations in Paragraph 234 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 234 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 234 of the Complaint.

235.    The allegations in Paragraph 235 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 235 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 235 of the Complaint.

236.     The allegations in Paragraph 236 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 236 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 236 of the Complaint.

## COUNT VI - BREACH OF FIDUCIARY DUTIES UNDER COMMON LAW AGAINST SECOND TRUSTEE, GOULD AND PENDERGAST

237.     Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

238.     The allegations in Paragraph 238 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 238 of the Complaint.

239.     The allegations in Paragraph 239 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 239 of the Complaint.

240.     Spinnaker denies the allegations contained in Paragraph 240 of the Complaint.

241.     The allegations in Paragraph 241 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 241 of the Complaint.

242.     The allegations in Paragraph 242 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 242 of the Complaint.

## COUNT VII - BREACH OF FIDUCIARY DUTIES AGAINST THE BOARD DEFENDANTS AND OFFICERS

243.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

244.    The allegations in Paragraph 244 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 244 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 244 of the Complaint.

245.    The allegations in Paragraph 245 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 245 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 245 of the Complaint.

246.    The allegations in Paragraph 246 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 246 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 246 of the Complaint.

## COUNT VIII - WASTE, MISMANAGEMENT AND MISAPPROPRIATION OF CORPORATE ASSETS AGAINST THE COMPANY, THE BOARD AND THE OFFICERS

247.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

248.    The allegations in Paragraph 248 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 248 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 248 of the Complaint.

249.    The allegations in Paragraph 249 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 249 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 249 of the Complaint.

250.    The allegations in Paragraph 250 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 250 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 250 of the Complaint.

251.    The allegations in Paragraph 251 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 251 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 251 of the Complaint.

## COUNT IX - UNJUST ENRICHMENT AGAINST THE BOARD DEFENDANTS AND THE OFFICERS

252.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

253.    The allegations in Paragraph 253 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 253 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 253 of the Complaint.

254.    The allegations in Paragraph 254 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 254 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 254 of the Complaint.

## COUNT X - AIDING AND ABETTING TORTIOUS CONDUCT AGAINST THE BOARD DEFENDANTS AND THE OFFICERS

255.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

256.    The allegations in Paragraph 256 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 256 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 256 of the Complaint.

257.    The allegations in Paragraph 257 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 257 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 257 of the Complaint.

258.    The allegations in Paragraph 258 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 258 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 258 of the Complaint.

## COUNT XI - CIVIL CONSPIRACY AGAINST SECOND TRUSTEE, GOULD, PENDERGAST, THE BOARD DEFENDANTS, THE OFFICERS AND EMPIRE

259.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

260.    Spinnaker denies the allegations contained in Paragraph 260 of the Complaint.

261.    Spinnaker denies the allegations contained in Paragraph 261 of the Complaint.

262.    The allegations in Paragraph 262 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 262 of the Complaint.

## COUNT XII - DEFAMATION AGAINST SECOND TRUSTEE, GOULD, PENDERGAST, AND THE BOARD DEFENDANTS

263.     Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

264.     In response to the allegations in Paragraph 264, Spinnaker admits Wade was the CEO for twenty years. Spinnaker denies the remaining allegations contained in Paragraph 264 of the Complaint.

265.     Spinnaker denies the allegations contained in Paragraph 265 of the Complaint.

266.     Spinnaker denies the allegations contained in Paragraph 266 of the Complaint.

267.     The allegations in Paragraph 267 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 267 of the Complaint.

## COUNT XIII - BREACH OF FIDUCIARY DUTIES AGAINST FIRST TRUSTEE

268.     Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

269.     The allegations in Paragraph 269 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 269 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 269 of the Complaint.

270.     The allegations in Paragraph 270 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 270 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 270 of the Complaint.

271.    The allegations in Paragraph 271 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 271 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 271 of the Complaint.

272.    The allegations in Paragraph 272 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 272 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 272 of the Complaint.

273.    The allegations in Paragraph 273 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 273 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 273 of the Complaint.

274.    The allegations in Paragraph 274 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 274 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 274 of the Complaint.

**COUNT XIV - BREACH OF FIDUCIARY DUTY AGAINST FIRST TRUSTEE AND EMPIRE**

275.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

276.    The allegations in Paragraph 276 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 276 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 276 of the Complaint.

277.    The allegations in Paragraph 277 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 277 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 277 of the Complaint.

278.    The allegations in Paragraph 278 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 278 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 278 of the Complaint.

279.    The allegations in Paragraph 279 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 279 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 279 of the Complaint.

280.    The allegations in Paragraph 280 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 280 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 280 of the Complaint.

281.    The allegations in Paragraph 281 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 281 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 281 of the Complaint.

## COUNT XV - BREACH OF CONTRACT AGAINST THE COMPANY

282.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

283.    The allegations in Paragraph 283 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 283 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 283 of the Complaint.

284.    The allegations in Paragraph 284 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 284 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 284 of the Complaint.

285.    The allegations in Paragraph 285 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 285 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 285 of the Complaint.

286.    The allegations in Paragraph 286 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 286 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 286 of the Complaint.

287.    The allegations in Paragraph 287 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 287 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 287 of the Complaint.

288.    The allegations in Paragraph 288 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 288 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 288 of the Complaint.

289.     The allegations in Paragraph 289 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 289 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 289 of the Complaint.

290.     The allegations in Paragraph 290 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 290 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 290 of the Complaint.

291.     The allegations in Paragraph 291 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 291 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 291 of the Complaint.

292.     The allegations in Paragraph 292 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 292 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 292 of the Complaint.

### COUNT XVI - INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST SECOND TRUSTEE, GOULD, PENDERGAST, THE BOARD DEFENDANTS AND THE OFFICERS

293.     Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

294.     The allegations in Paragraph 294 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 294 of the Complaint.

295.    Spinnaker denies the allegations contained in Paragraph 295 of the Complaint.

296.    Spinnaker denies the allegations contained in Paragraph 296 of the Complaint.

297.    Spinnaker denies the allegations contained in Paragraph 297 of the Complaint.

298.    The allegations in Paragraph 298 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 298 of the Complaint.

299.    The allegations in Paragraph 299 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 299 of the Complaint.

## COUNT XVII - WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY AGAINST THE COMPANY

300.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

301.    The allegations in Paragraph 301 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 301 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 301 of the Complaint.

302.    The allegations in Paragraph 302 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 302 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 302 of the Complaint.

303.    The allegations in Paragraph 303 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 303 are legal

conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 303 of the Complaint.

304.     The allegations in Paragraph 304 are not alleged against Spinnaker, so no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 304 of the Complaint.

305.     The allegations in Paragraph 305 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 305 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 305 of the Complaint.

306.     The allegations in Paragraph 306 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 306 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 306 of the Complaint.

307.     The allegations in Paragraph 307 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 307 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 307 of the Complaint.

308.     The allegations in Paragraph 308 are not alleged against Spinnaker, so no response is required. To the extent a response is required, the allegations in Paragraph 308 are legal conclusions, again to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 308 of the Complaint.

**COUNT XVIII - WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY AGAINST SECOND TRUSTEE, THE BOARD DEFENDANTS AND THE OFFICERS**

309.     Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

310.     The allegations in Paragraph 310 do not appear to be alleged against Spinnaker. To the extent they are, they are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 310 of the Complaint.

311.     The allegations in Paragraph 311 do not appear to be alleged against Spinnaker. To the extent they are, they are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 311 of the Complaint.

312.     The allegations in Paragraph 312 do not appear to be alleged against Spinnaker. To the extent they are, they are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 312 of the Complaint.

313.     The allegations in Paragraph 313 do not appear to be alleged against Spinnaker. To the extent they are, they are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 313 of the Complaint.

**COUNT XIX - UNFAIR AND DECEPTIVE TRADE PRACTICES AGAINST ALL DEFENDANTS**

314.     Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

315.    The allegations in Paragraph 315 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 315 of the Complaint.

316.    The allegations in Paragraph 316 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 316 of the Complaint.

317.    The allegations in Paragraph 317 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 317 of the Complaint.

318.    The allegations in Paragraph 318 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 318 of the Complaint.

319.    The allegations in Paragraph 319 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 319 of the Complaint.

**COUNT XX - BUSINESS DEFAMATION AGAINST SECOND TRUSTEE, GOULD, PENDERGAST, AND THE BOARD DEFENDANTS**

320.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

321.    Spinnaker denies the allegations contained in Paragraph 321 of the Complaint.

322.    Spinnaker denies the allegations contained in Paragraph 322 of the Complaint.

323.    Spinnaker denies the allegations contained in Paragraph 323 of the Complaint.

324.     The allegations in Paragraph 324 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 324 of the Complaint.

325.     The allegations in Paragraph 325 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 325 of the Complaint.

326.     Spinnaker denies the allegations contained in Paragraph 326 of the Complaint.

327.     The allegations in Paragraph 327 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 327 of the Complaint.

**COUNT XXI - CONVERSION AGAINST SECOND TRUSTEE, GOULD, PENDERGAST, THE DIRECTOR DEFENDANTS AND THE OFFICERS**

328.     Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

329.     The allegations in Paragraph 329 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 329 of the Complaint.

330.     The allegations in Paragraph 330 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 330 of the Complaint.

331.     The allegations in Paragraph 331 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 331 of the Complaint.

## COUNT XXII - RICO ACT: THEFT OR TRADE SECRETS AGAINST ALL DEFENDANTS

332.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

333.    The allegations in Paragraph 333 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 333 of the Complaint.

334.    Spinnaker denies the allegations contained in Paragraph 334 of the Complaint.

335.    The allegations in Paragraph 335 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 335 of the Complaint.

336.    The allegations in Paragraph 336 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 336 of the Complaint.

337.    The allegations in Paragraph 337 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 337 of the Complaint.

338.    The allegations in Paragraph 338 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 338 of the Complaint.

339.    Spinnaker denies the allegations contained in Paragraph 339 of the Complaint.

340.    Spinnaker denies the allegations contained in Paragraph 340 of the Complaint.

341.    Spinnaker denies the allegations contained in Paragraph 341 of the Complaint.

342.    The allegations in Paragraph 342 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 342 of the Complaint.

343.    The allegations in Paragraph 343 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 343 of the Complaint.

## COUNT XXIII - COMPUTERS AND FRAUD ABUST ACT AGAINST ALL DEFENDANTS

344.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

345.    The allegations in Paragraph 345 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 345 of the Complaint.

346.    The allegations in Paragraph 346 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 346 of the Complaint.

347.    The allegations in Paragraph 347 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 347 of the Complaint.

348.    The allegations in Paragraph 348 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 348 of the Complaint.

349.    The allegations in Paragraph 349 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 349 of the Complaint.

**COUNT XXIV - NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS**

350.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

351.    Spinnaker denies the allegations contained in Paragraph 351 of the Complaint.

352.    Spinnaker denies the allegations contained in Paragraph 352 of the Complaint.

353.    Spinnaker denies the allegations contained in Paragraph 353 of the Complaint.

354.    The allegations in Paragraph 354 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 354 of the Complaint.

355.    The allegations in Paragraph 355 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 355 of the Complaint.

356.    The allegations in Paragraph 356 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 356 of the Complaint.

**COUNT XXV– INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS**

357.    Spinnaker incorporates its responses to each and every allegation incorporated by Plaintiff in this Paragraph as if fully set forth herein.

358.    Spinnaker denies the allegations contained in Paragraph 358 of the Complaint.

359.    Spinnaker denies the allegations contained in Paragraph 359 of the Complaint.

360.     The allegations in Paragraph 360 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 360 of the Complaint.

361.     The allegations in Paragraph 361 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 361 of the Complaint.

362.     The allegations in Paragraph 362 are legal conclusions to which no response is required. To the extent a response is required, Spinnaker denies the allegations contained in Paragraph 362 of the Complaint.

## GENERAL DENIAL

363.     Each and every allegation and request for relief not specifically admitted herein is denied.

## FIRST AFFIRMATIVE DEFENSE

364.     Plaintiffs' claims are barred in whole or in part because Spinnaker was not a fiduciary with respect to the challenged conduct.

## SECOND AFFIRMATIVE DEFENSE

365.     Plaintiffs' claims are barred because Spinnaker discharged its duties in accordance with the applicable agreements and ERISA, acting solely in the interests of the ESOP participants, and with the skill, care, prudence, and diligence that a prudent person acting in like capacity and familiar with such matters would use.

### THIRD AFFIRMATIVE DEFENSE

366.    To the extent that other Defendants or persons or entities failed to carry out their duties under ERISA, Plaintiffs' alleged damages, if any, were caused in whole or in part by the acts or omissions of such persons or parties.

### FOURTH AFFIRMATIVE DEFENSE

367.    Plaintiffs' common law claims are preempted by ERISA.

### FIFTH AFFIRMATIVE DEFENSE

368.    Plaintiffs' claims are barred as Plaintiffs failed to plead the fraud and RICO claims with the required level of specificity required by Federal Rule of Civil Procedure 9.

### SIXTH AFFIRMATIVE DEFENSE

369.    The Complaint fails to state a claim upon which relief can be granted.

### SEVENTH AFFIRMATIVE DEFENSE

370.    The claims are barred in whole or in part, by Plaintiffs' failure to mitigate their damages, if any.

### EIGHTH AFFIRMATIVE DEFENSE

371.    The Complaint is barred by the applicable statute of limitations and/or repose.

### NINTH AFFIRMATIVE DEFENSE

372.    The Complaint is barred as Plaintiffs' lack standing to pursue their claims.

### TENTH AFFIRMATIVE DEFENSE

373.    Plaintiffs' claims are barred, in whole or in part, by the applicable doctrines of waiver, laches, unclean hands, accord and satisfaction, and/or administrative or equitable estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

374.    Plaintiffs' claims are barred because there is no causation or connection between the alleged breaches and any alleged economic losses or damages, as well as being barred because any alleged causation or connection between the alleged breaches and any alleged damages is not attributable to Spinnaker.

## TWELFTH AFFIRMATIVE DEFENSE

375.    Plaintiffs' claims for losses or damages (if there are any losses or damages, which there are not) would improperly constitute unjust enrichment, and/or must be reduced by any setoff, offset, recoupment, or other provisions applicable for the reduction of amounts owed.

## THIRTEENTH AFFIRMATIVE DEFENSE

376.    Plaintiffs' claims are barred by John R. Wade III's own breaches of contract, fraud, and breaches of fiduciary duty, as set forth in Spinnaker's Counterclaims and incorporated by reference as if rewritten herein.

## FOURTEENTH AFFIRMATIVE DEFENSE

377.    Spinnaker hereby reserves the right to identify additional defenses or claims, including, but not limited to those which become apparent from further investigation and discovery.

## COUNTERCLAIM – JURY DEMAND REQUESTED

Defendant/Counterclaim Plaintiff Spinnaker Trust ("Spinnaker"), in its capacity as Trustee of the Tri-Wire Engineering Solutions, Inc. ("Tri-Wire" or "Company") Employee Stock Ownership Plan (the "ESOP") for its Counterclaim against Plaintiff/Counterclaim Defendant John R. Wade, III ("Wade"), states as follows:

## NATURE OF THE CASE

1.      This dispute arises out of Wade's manipulation, control, deceit, fraud, material misrepresentations, and material omissions in connection with Wade's redemption and sale of 100% of the shares of the Company. As the sole "owner, director and officer" of Tri-Wire in 2016, as admitted by Wade in Paragraph 54 of his Complaint, Wade exerted unilateral and extreme control over the Company and its employees.

2.      Wade used his manipulation, control, deceit, fraud, material misrepresentations, and material omissions to materially and artificially inflate the value of the shares, which has in turn imposed a significant debt obligation on the ESOP. Based on Spinnaker's and the Company's investigation to date, Wade unilaterally controlled the dissemination of information to the valuation firm and independent trustees retained for purposes of the Transaction, so he could manipulate the perceived financial state of Tri-Wire, and ultimately the share price, to his exclusive benefit.

3.      On December 30, 2016, Wade sold 100% of the issued and outstanding shares of the Company (the "Transaction") in two interrelated transactions: (a) Wade sold 700,000 shares of Tri-Wire stock to the Company under a Stock Redemption Agreement ("SRA"); and (b) Wade sold 820,000 shares of Tri-Wire stock to the newly-created ESOP under a Stock Purchase Agreement ("SPA"). As a result, the Company's employees became the 100% owner of the business.

4.      In connection with the Transaction, Wade received $20,500,000 in cash at the closing, entered into a Subordinated Loan Agreement with the Company providing for $17,500,000 (a $13 million subordinated loan and a $4.5 million mezzanine loan) at the closing, and later received a working capital adjustment in excess of $1,500,000, for total consideration in excess of $39,500,000 (plus payment of cash interest of at least $1,600,000 to date on the loans).

5.      Both the SPA and SRA contain numerous representations and warranties by Wade, including (among other things) his representation that all of the Company's liabilities have been disclosed, that all of the Company's insurance premiums have been paid or properly accrued, that since December 31, 2015 there have been no obligations incurred that could be materially adverse, that the Company's internally prepared financial statements through October 31, 2016 were prepared in good faith, and that the Company's financial projections contain no "knowingly false information or material omissions and were prepared in good faith."

6.      Prior to Spinnaker's own investigation, a Special Committee of the Company's Board (the "Special Committee") conducted an initial investigation. Spinnaker conducted its own investigation and many of the facts alleged herein were learned during those investigations.

7.      The Special Committee and Spinnaker uncovered that not only were Wade's representations in the SPA and SRA materially false, but that Wade intentionally withheld the truth from the ESOP's trustees and financial advisor in order to materially inflate the value of Tri-Wire's shares to his own benefit and to the detriment of the ESOP.

8.      As set forth below, Wade lied about the Company's auto insurance, lied about his intention to start a new division of the Company (that would require a lot of money to get started), covered up a double payment from a customer of over $1 million, and paid himself undisclosed bonuses (to name just four issues) in order to materially inflate the purchase price of the Company and the amounts he received in the Transaction.

49

9.       Had the truth been properly disclosed by Wade, the terms of the Transaction would have been materially different. Based on the information obtained to date, the Company was overvalued in the Transaction by in excess of $18 million as a result of Wade's acts and omissions, and he should not have received the working capital adjustment of $1.5 million, or interest paid on his notes of more than $1.6 million.

## THE PARTIES

10.      Spinnaker is a non-depository trust company organized under the laws of Maine with its principal place of business in Portland, Maine.

11.      As part of its business, Spinnaker provides independent trustee, fiduciary, custodial and investment management services for employee stock ownership plans.

12.      Spinnaker was appointed as the Trustee of the Tri-Wire ESOP on March 22, 2017, and in that role is authorized to pursue these claims on behalf of the ESOP.  Spinnaker replaced Capital Trustees, LLC ("Capital Trustees") as Trustee of the ESOP following the Transaction, and was not involved in the Transaction.

13.      Upon information and belief, Wade is an individual who resides in New York. Prior to the Transaction, Wade was the sole shareholder of the Company, as admitted by Wade in Paragraph 54 of his Complaint.  Wade was also formerly Tri-Wire's Chief Executive Officer, as well as the Chairman of the Company's Board.

## JURISDICTION AND VENUE

14.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000.

15.      Spinnaker is a fiduciary of the ESOP and has standing to maintain this action in its capacity as such.

16.     Venue is properly in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District.

## WADE'S CONTROL OF TRI-WIRE AND SCHEME TO DEFRAUD THE EMPLOYEES

17.     Wade founded Tri-Wire in 1999.

18.     Tri-Wire is a business that focuses on residential telecommunications installations. Currently, the Company has over 550 employees in the eastern part of the United States.

19.     Wade was the sole shareholder of the Company up to the time of the Transaction, served as the Company's Chief Executive Officer, and was the sole member of the Company's Board – as admitted by Wade in Paragraph 54 of this Complaint.

20.     As the Company's CEO, sole shareholder, and sole decision-maker, Wade had access to and direct and complete control over Tri-Wire's bank accounts, e-mail servers, Quickbooks and/or other accounting systems, American Express and/or other credit accounts, and all other accounts and property.

21.     Between 2006 and 2015, Wade explored different options for selling his shares in the Company, ultimately resulting in Wade's exploration of a sale of the Company in or about 2015.

22.     Upon information and belief, Wade came to believe that the way he could maximize his payout in connection with the sale of the Company was to manipulate the Company's value and sell his shares to an ESOP.

23.     Wade hired advisors to represent the ESOP for purposes of the Transaction.

24.     Wade originally hired a different trustee (not Capital Trustees or Spinnaker) to serve as the representative for the ESOP participants in the Transaction, as admitted by Wade in Paragraph 64 of his Complaint. That trustee in turn hired Empire Valuation Consultants LLC

("Empire"), as the valuation firm to assist in the determination of the fair market value of the shares of Tri-Wire in connection with the Transaction.

25.     After a September 12, 2016 due diligence meeting with the initial trustee at which Wade was the sole source of information from the Company as well as the selling shareholder, and indicative of his manipulation and control, Wade fired that trustee. Wade then hired Capital Trustees on or about November 11, 2016. Empire continued to serve as the valuation firm.

26.     Capital Trustees conducted an additional due diligence meeting on November 14, 2016. Wade was again the sole source of information from the Company.

27.     In addition, all of the responses to the due diligence questions that provided information about the Company (whether communicated verbally or in writing) were provided by Wade.

28.     Wade's unilateral control over the advisors hired by the Company to act on behalf of the ESOP, the content and availability of information (particularly projections and financial statements), and the due diligence process generally, resulted in Empire and Capital Trustees using incorrect assumptions and information to value Tri-Wire, resulting in an over-valuation of the Company's shares.

## THE ESOP TRANSACTION

29.     At the time of the Transaction, Wade owned all 1,520,000 issued and outstanding shares of the Company.

30.     On or about December 30, 2016, the Company redeemed and retired 700,000 shares obtained from Wade pursuant to the SRA.

31.     At the same time, the ESOP purchased 100% of the remaining issued and outstanding shares of Tri-Wire (820,000 shares) from Wade pursuant to the SPA.

32.     As a result, on December 30, 2016, the ESOP became the Company's sole shareholder.

33.     In connection with the Transaction, and based on the information given to Capital Trustees and Empire by Wade, the Company's shares were valued at $25.00 per share. Accordingly, the Company paid approximately $17,500,000 to redeem 700,000 of Wade's shares, and the ESOP paid approximately $20,500,000 to purchase the remaining 820,000 shares.

34.     The total consideration paid or owed to Wade as a result of the Transaction is in excess of $39,500,000.  Wade received $20,500,000 in cash at the closing of the Transaction, and two subordinated notes totaling $17,500,000 (the "Subordinated Notes").

35.     The cash paid to Wade at closing was financed by, inter alia, a Credit Agreement between the Company and JP Morgan Chase Bank, N.A. in the amount of $15,500,000 and a subordinated Note and Warrant Purchase Agreement between the Company and Massachusetts Capital Resource Company in the amount of $5,000,000.

36.     Following the close of the Transaction, in or about September and October 2017, Wade received payment of a Working Capital Adjustment in the amount of approximately $1,500,000.  Per the SPA, this amount was deemed additional purchase price in exchange for Wade's shares.

37.     However, but for Wade's material misrepresentations and omissions described throughout this Counterclaim, Wade would not have received such a payment. Instead, Wade would have *owed the Company* a Working Capital Adjustment of approximately $1,600,000.

38.     In addition, knowing of the material misrepresentations and omissions described throughout this Counterclaim, and knowing that the Company incurred tens of millions of dollars of debt in connection with the Transaction that it would not have incurred had Wade honestly disclosed the true facts, Wade caused the Company to take on approximately $1,800,000 of

additional debt in order to finance the fraudulently-procured Working Capital Adjustment payment.

## **REPRESENTATIONS AND WARRANTIES BY WADE THAT WADE KNEW OR SHOULD HAVE KNOWN WERE FALSE**

39.     As part of the Transaction, in the SPA, Wade made certain representations and warranties to the ESOP, including but not limited to:

      a.    SPA section 4.11(a), representing and warranting that the financial statements of Tri-Wire "**fairly present as of the date indicated the financial condition, assets and liabilities and results of operations of the Company**" and "[a]ll internally-prepared **financial statements have been prepared in good faith** in a matter consistent with past practice";

      b.    SPA section 4.11(d), representing and warranting that Tri-Wire had **no undisclosed liabilities or obligations**, other than those listed in Schedule 4.11(d) of the SPA;

      c.    SPA section 4.12, representing and warranting that the provisions made for taxes on the balance sheet "are **sufficient for the payment of all accrued and unpaid federal, foreign, state, county and local taxes** of the Company";

      d.    SPA section 4.20, representing and warranting that "[a]ll such **insurance premiums in respect of such coverage have been, and to the Closing Date will be paid, or if not due, properly accrued on the books of the Company as of the Closing date**";

      e.    SPA section 4.24(a), representing and warranting that the between the warranty date and the date of the Transaction the Company has not incurred any obligation or liability other than in the "ordinary course" of the Company's business, and that any of those obligations or liabilities would be "**not materially adverse**" to the Company's business; and

      f.    SPA section 4.32, representing that Tri-Wire's "**financial projections provided to the Trustee's independent financial advisor contain no knowingly false information or material omissions and were prepared in good faith**." (emphasis added).

40.     Section 3.7 of the SRA incorporates by reference each of the representations set forth in Article 4 of the SPA and states that the representations in the SPA "are true, accurate and complete on and as of the date hereof."

41.     Section 3.8 of the SRA also includes the representation by Wade that "[n]o information, report, financial statement, exhibit or schedule prepared or furnished by or on behalf of [Wade] . . . contained or contains any material misstatement of fact, or omitted or omits to state any material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading."

42.     In addition, on December 30, 2016, Wade certified that the Company's financial projections provided in connection with the Transaction "contain no knowingly false, incomplete, or misleading statements or omissions."

43.     Pursuant to Article 9 of the SPA, Wade agreed to indemnify the ESOP for "any loss, cost, expense or other damage, including attorney's fees, suffered by the [...ESOP...], resulting from, arising out of or incurred with respect to misrepresentation or breach of any representation, warranty, or covenant made by the Company of the Seller herein or made by the Seller in the Stock Redemption Agreement." A parallel provision is contained in Article 8 of the SRA, providing for Wade's indemnification of the Company.

**WADE'S FAILURE TO DISCLOSE MATERIAL INFORMATION**

44.     As described in more detail below, Wade withheld and/or actively concealed material information in order to intentionally inflate the value of Tri-Wire's stock and as a result inflate the consideration paid to him by the ESOP in connection with the Transaction.

45.     Wade intentionally and fraudulently withheld this material information from Capital Trustees and Empire, including during the due diligence meetings that occurred on September 12 and November 14, 2016. He never provided the "unfettered access" he alleges in Paragraph 70 of his Complaint.

46.     Wade also fraudulently failed to accurately reflect the items described below in Tri-Wire's financial statements and manipulated the financial projections relied on by Capital Trustees and Empire in determining the fair market value of the shares.

47.     On December 30, 2016, Wade signed a Certificate warranting that the financial projections submitted to Capital Trustees and Empire "contain no knowingly false, incomplete or misleading statements or omissions."

48.     The full extent of the fraud and concealment is not yet known, and may never be known. But to date, the below actions have been uncovered by the investigation of Spinnaker.

***Wade Concealed Material Information Concerning Tri-Wire's Auto Insurance Expense.***

49.     In connection with the Transaction, Wade withheld information regarding the nature of Tri-Wire's auto insurance policy and the potential for significant, additional retroactive premiums to be incurred after the Transaction – but owed for pre-Transaction years.

50.     For the policy years leading up to 2015, Tri-Wire's automobile insurance policy was a fixed-premium policy, with no cap on claims that could be submitted.

51.     At the conclusion of policy year 2014, (i.e., December 31, 2014) the Company's insurer informed Tri-Wire that if it wished to continue with a fixed premium policy, the premium would roughly double to approximately $3,200,000 per year, due to the high level of claims in the preceding years.

52.     In order to avoid significantly increasing the Company's automobile insurance premiums in 2015, and to push additional automobile insurance premiums until after the Transaction, for policy year 2015 (beginning February 1, 2015), Wade caused the Company to purchase an automobile insurance policy that initially cost the Company only slightly more than what the fixed premium policies previously cost – but included the possibility of retroactive premiums that would be assessed in future years based on claims made against the policy.

53.     Likewise, for policy year 2016 Wade again caused the Company to purchase a retroactive insurance policy – a policy that would initially cost less than what a fixed premium policy would cost, but included the possibility of retroactive premiums that would be assessed in future years based on claims made against the policy.

54.     For 2016, the estimate of losses used to determine the initial premium for the Company's retroactive insurance policy was even lower than the estimate used for 2015.  The Company had fewer autos in 2016 than in 2015 (a 12% vehicle reduction) – but the Company used a 29% lower loss estimate to lower its initial premium even further, and shift even more risk that additional premiums for pre-Transaction policies would be paid after the Transaction.

55.     As set forth in his Complaint at paragraphs 101-105, Wade admits that in 2015 "numerous insurance carriers either refused to bid to insure the Company or denied the Company's request for coverage," ultimately resulting in the Company purchasing "retrospective auto insurance" policies that included a "Loss Pick." If the amounts paid by the insurance company were higher than the Loss Pick, "the Company's premiums for that period would be adjusted upward."

56.     Wade further admits that he knew that at the time of the decision to purchase retroactive insurance in 2015 – that Wade "fully understood the mechanics of the Company's auto insurance policy" when it was purchased, as admitted at paragraph 103 of his Complaint.

57.     But only Wade attended on behalf of the Company the September 12 and November 14, 2016 due diligence meetings with representatives acting on behalf of the ESOP. Empire's fairness opinion – the December 30, 2016 Empire letter attached as Exhibit 4 to Wade's Complaint – identifies all of the people Empire "held discussions with" regarding the Transaction. The only employee of the Company listed is Wade.

58.     The ESOP's trustee and valuation firm came away with a very different understanding of the Company's auto insurance after meeting with Wade in 2016 than the facts set forth at paragraphs 101-105 of Wade's Complaint – because Wade disclosed none of the facts set forth at paragraphs 101-105 of his Complaint to any ESOP trustee or to Empire.

59.     The only insurance policy provided to the ESOP's trustee and to Empire, and included in the data room for the transaction – the document attached as Exhibit 4.20(a) to the SPA (and attached to Wade's Complaint at Exhibit 10, page 59) – did not disclose that it was a retroactive policy and not a fixed premium policy.  That document is simply a Certificate of Liability Insurance.

60.     The ESOP's trustees and Empire did ask Wade about the Company's auto insurance.  The trustees' and Empire's only understanding of the Company's auto insurance is reflected at page 6 of Empire's December 30, 2016 valuation report, that describes "cost savings initiatives to improve profitability" that included insurance savings. Empire's understanding of the Company's auto insurance at the time of the Transaction – which was obtained from Wade – was that the Company installed GPS devices in vehicles, which "resulted in a decrease in insurance and gas expense, as the Company's insurance company lowered its premiums for safer drivers and drivers were not able to claim as much for fuel reimbursement."

61.     Prior to the Transaction (December 30, 2016), Wade knew that the level of claims for policy years 2015 and 2016 would likely cause the Company to incur additional, retroactive premiums following the close of the Transaction, that some portion of such retroactive premiums should rightly be paid for by the pre-Transaction Company (i.e., those portions related to pre-Transaction years), and that such retroactive premiums were likely to be in material adverse amounts.

62.    Yet Wade did not disclose this information. Wade was asked about the Company's auto insurance policies by the ESOP's trustees and Empire, but never disclosed the change to a retroactive policy that occurred in 2015. Instead, he only mentioned cost savings from a new auto insurance company and GPS devices.

63.    Contrary to Wade's allegations in Paragraph 111 of his Complaint, the ESOP's trustees and Empire did question Wade about the auto insurance, and his "concerns" alleged in Paragraph 110 were absolutely not disclosed. The change to a retroactive insurance policy was not disclosed to the ESOP: it was not disclosed to the initial ESOP trustee; it was not disclosed to Capital Trustees; and it was not disclosed to Empire.

64.    The change to a retroactive insurance policy was also not disclosed to the Company's outside accountants. Because the retroactive nature of the Company's insurance was not disclosed to the accountants, the Company's financial statements did not disclose, as required, that auto claims in excess of the Loss Pick may occur, which could materially increase the Company's liabilities.

65.    And the change to a retroactive insurance policy was not reflected in the projections of the Company's estimated future performance, which Wade controlled and provided to those involved in the Transaction. Wade alleges in Paragraph 110 of his Complaint that he was concerned "that unknown and unexpected charges and insurance claims might become known in the future." But that concern was certainly not made known to those involved in the Transaction, reflected in the Company's financial statements, or included within the Company's projections – which projected increased profitability, but not additional auto insurance liabilities.

66.    In fact, prior to the Transaction, Wade was specifically put on notice of additional retroactive premiums, for the policy year 2015.  On or about October 18, 2016 – more than two months before the ESOP Transaction, and before the October 31, 2016 internal financial

statements were finalized and submitted to Empire – the Company received an invoice from its auto insurance company for the policy year 2015 in the amount of $230,184.

67.     On and after October 18, 2016, Wade was on notice, prior to the Transaction – and prior to the delivery of the October 31, 2016 internal financial statements provided to Empire, and prior to the November 14, 2016 due diligence meeting with Capital Trustees and Empire – that an analysis and accrual of future retroactive premiums would be necessary to accurately reflect the Company's current financial position.

68.     Moreover, prior to the Transaction, Wade had in his possession information from the Company's insurer from which Wade could have calculated an estimate of the retroactive premiums that might become due in future years.

69.     Wade actively concealed and/or failed to disclose the foregoing information in connection with the Transaction (including not disclosing the existence of the 2015 retroactive premium bill to Capital Trustees or Empire).

70.     Wade actively concealed the foregoing information by not itemizing automobile insurance premiums in the financial information provided in connection with the Transaction, by failing to disclose the true nature of the automobile insurance policies, and by telling Empire and Capital Trustees that there was a decrease in premium and overall automobile insurance costs to the Company due to the installation of GPS and other systems to determine and improve driver safety, as noted on page 6 of Empire's valuation for the Transaction.

71.     Even more, Wade affirmatively represented that all insurance premiums for pre-Transaction years were paid or properly accrued per section 4.20 of the SPA (and related section 3.7 of the SRA), which representation was false.

72.     Had Wade accurately disclosed the likelihood – or even the possibility – of retroactive premiums, Empire's valuation would have taken that material information into account.

73.     Wade concealed the foregoing information concerning the Company's automobile insurance policies and premiums in order to artificially inflate the value of the Company's shares and the consideration paid to him in connection with the Transaction.

74.     Predictably, after the Transaction the retroactive premiums continued to increase, culminating with a $1,981,441 retroactive premium invoice received in 2018.  To date, the Company has received invoices in excess of $2,800,000 for retroactive premiums for the policy years 2015 through 2017.  Of that amount, at least $1,700,000 relates to the pre-Transaction periods 2015 and 2016.

75.     Even though Wade was on notice of the likelihood of significant retroactive premiums for years prior to the Transaction (and in fact could have calculated a range of possible retroactive premiums), no portion of this $2,800,000 debt was properly included in the projections or accrued on the financial statements and as a result was not factored into Empire's valuation of the Company's shares. As such, this expense was paid for by the Company, and ultimately the ESOP, post Transaction.

76.     Had Wade revealed the truth regarding the auto insurance and accurately accrued the losses on the Company's financial statements, Capital Trustees and Empire would have taken that information into account for the Transaction, and it would have had a material negative impact on the valuation of the Company's shares and the consideration paid to Wade in connection with the Transaction.

***Wade Failed to Disclose His Intentions to Create a Construction Division.***

77.     Wade failed to disclose his intention to create a construction division of Tri-Wire that would require significant capital expenditures and working capital – and as a result should have materially impacted Tri-Wire's valuation and working capital calculation.

78.     As previously described, Tri-Wire is a company that performs residential telecommunications installation. It provides fulfillment services, in other words, bringing telecommunications services to the homes of customers.

79.     Upon information and belief, prior to the Transaction Wade decided to start a new division of the Company, which would involve the installation of fiber optic cables along utility poles in various communities. This new division (the "Construction Division") requires an entirely different set of trucks, equipment, skills and capital – to wire entire neighborhoods with fiber optic cables – than the cable fulfillment services required to install cable into homes.

80.     The Construction Division was created in early 2017 by Wade without disclosing those plans and their financial impact on the Company to Capital Trustees or Empire in the period leading up to the December 30, 2016 closing of the Transaction, and without accounting for this new division in the financial statements or projections relied upon for purposes of the Transaction.

81.     The ESOP's trustees and Empire asked Wade about growth initiatives and the Company's prospects for the future.  Wade's answer was reflected in Empire's valuation report, at page 16, which mentions adding "home security" to the Company's installation services, and that "the Company is also preparing to enter the fiber industry." Those references were to customer-focused growth initiatives – delivering these products from poles into homes – and not the industry-focused purpose of what Wade actually was planning, where the Construction Division would install wires on poles throughout neighborhoods.

82.     Consistent with the customer-focused nature of the growth initiatives, Wade asserted, as reported by Empire at page 16 of its report, that the Company had no capital expenditures, that its depreciation expense was zero, and its working capital needs would be consistent with its historical performance.  In truth, the creation of a Construction Division would

require additional expenditures, and cause the Company to incur significant initial financial losses for a new line of business.

83.     Had the true facts regarding the Construction Division been disclosed by Wade and accurately reflected in the Company's financial statements and projections, the valuation of the Company in connection with the Transaction would have been significantly reduced. In addition, Empire's estimate of the capital required to operate the Company would have significantly increased.

***Wade Intentionally Concealed Duplicate Payments and Swept the Cash at the Close of the Transaction.***

84.     In 2016, Wade was made aware of potential duplicate payments received from a Tri-Wire customer. Rather than disclosing this fact in connection with the Transaction, Wade instead told employees of Tri-Wire's accounting department that he would handle the situation, but he never did. Instead, Wade manipulated the financial statements to maximize the amount of cash he received as part of the Transaction. As a result, Wade received in excess of $1,000,000 more cash in the Transaction than he should have.

85.     On January 25, 2016, an individual in the Company's accounting department emailed Wade, forwarding an email with the Company's bank about a potential reversal of a duplicate payment and said "Please note, the deposit of $997,895.04 on 1/20/15 [sic – 1/19/2016] should be reversed."    In the same January 25, 2016 email, this individual wrote "I received notification of a payment today in the amount of $1,330,894.20 for the majority of the same invoices.  So this is a duplicate payment…."

86.     Wade did not take or direct any action to return the overpayment.

87.     Six months later, on July 12, 2016, the same accounting employee emailed Wade and another accounting employee to follow up and again inform Wade of "duplicate payments

from [the customer]" in the amount of $1,021,299, including the $980,093.30, which was listed as "duplicate payment on 1/19/16."

88.    The other recipient of the email referenced in the preceding paragraph (i.e., not Wade, but another accounting employee) responded, stating "This could be awkward.  A million dollars is a significant amount.  Since these are all 2016 duplicate payments, [the customer] may not get around to auditing until Q1 2017.  Theoretically, the ESOP should be closed by then.  We will have to account for both the liability and the cash during the transaction."

89.    Wade responded saying: "Has everybody got their 2 cents in now?  I already told both of you we will reconcile it before year's end."  In other words, Wade told the Company's employees that he would deal with the overpayment prior to the Transaction.

90.    That reconciliation, however, never took place. Wade did not take or direct any action to return the overpayments, alert the customer to the overpayments, or appropriately reflect the issue in the financial information provided to the advisors in connection with the Transaction.

91.    In addition to failing to bring the overpayment to the customer's attention, Wade made efforts to conceal the fact of the overpayment internally and externally.  For example, Wade instructed the accounting employees referenced above not to mention the overpayment to the customer or other Company executives, directed that the overpayment be booked as a negative receivable rather than a liability, and intentionally omitted the negative receivable from internal accounts receivable reports.

92.    Further, Wade instructed accounting employees to mislead the Company's outside accounting firm by telling the accountants that the negative receivable was "an unapplied payment and we're working on it with" the customer.  That statement was not true, as the Company was not actually "working on it" with the customer but, at Wade's direction, doing nothing.

93.     Wade took similar steps with regard to a separate $138,000 overpayment received from the same customer in September 2016.

94.     Again, Wade failed to disclose the foregoing information to Capital Trustees and/or Empire (or otherwise) in connection with the Transaction.

95.     Further, Wade concealed this issue by failing to net the amount of the overpayments against the cash paid to him at the closing of the Transaction.  As a result, Wade received an additional $1,118,093.30 in cash in the Transaction, and left the ESOP and the Company with a corresponding debt.

***Wade Paid Himself and Others Unapproved and Undisclosed Bonuses.***

96.     Leading up to and immediately following the Transaction, Wade issued undisclosed and/or unauthorized bonuses to himself and to others in amounts that totaled $2,835,500: $1,685,000 to himself on November 21, 2016, and $250,500 on December 17, 2016, both just before the Transaction; and $900,000 on December 31, 2016, the day after the Transaction.

97.     These unauthorized bonuses in the amount of $2,835,500 were never disclosed to the advisors nor properly accounted for in connection with the Transaction. They were not paid in the ordinary course of the Company's business, or properly disclosed on the Company's financial statements or projections for the Transaction.

98.     In addition, these unauthorized and/or undisclosed bonuses drained the Company's working capital in the period following the Transaction, including up to the date of this Complaint.

***Wade Failed to Disclose Certain Taxes and Debts Owed by the Company Prior to the Transaction.***

99.     Wade further failed to disclose certain taxes and debts that were owed by the pre-Transaction Company, including (i) sales and use tax owed to the state of Connecticut in the

amount of $62,233.52; (ii) unemployment taxes owed to the state of Vermont in the amount of $23,004.25 and the state of Connecticut in the amount of $40,788.55; (iii) underpaid federal incomes taxes for 2013 and 2014 in the amount of $15,928.26; and (iv) uncashed payroll checks that should have been, but were not, remitted to the Commonwealth of Massachusetts, in the amount of $69,414.00.

100.    Wade knew or should have known of the foregoing debts owed by the Company.

101.    These debts (totaling $211,368.58) should have been paid prior to the Transaction, but instead were paid with post-Transaction funds, to the benefit of Wade and to the detriment of the ESOP and the Company.

### THE DAMAGE TO THE ESOP

102.    Based on the information set forth above, and other information obtained to date, the over-valuation of the Company's shares is likely in excess of $18,000,000.

103.    In addition, as referenced above, Wade received a working capital adjustment distribution of approximately $1,5000,000. But had all the foregoing information been properly disclosed by Wade, he would have owed the Company approximately $1,600,000 at the time the working capital adjustment in mid-2017 was issued (a difference of over $3,000,000). Furthermore, Wade caused the Company to borrow approximately $1,800,000 in the fall of 2017, in order to pay this working capital adjustment, highlighting how under-capitalized Wade left the Company following the Transaction.

104.    Spinnaker has also incurred costs and expenses (including attorney fees, as provided for in the SRA and SPA) with respect to the investigations necessary to uncover Wade's fraud and to undertake this litigation, and also seek to recover all compensatory and punitive damages, pre- and post-judgment interest, disgorgement, and other amounts that will be determined at trial.

105.    Not only would the value of the Company have been materially different had the truth been disclosed by Wade, but the terms of the Transaction would have been dramatically different, including that Wade would not have received cash in the amount of $20,500,000, Notes that totaled $17,500,000, or a Working Capital Adjustment in excess of $1,500,000, in connection with the Transaction. And he would not have received interest payments on the Notes, which to date totals $1,664,419.

106.    In addition, and also as a result of the foregoing issues, the Company's outside accountants have restated the Company's financial statements for 2016.  In addition, due to the foregoing and related issues, the Company's outside accountant has not yet delivered the Company's finalized financial statements for the period ended December 31, 2017.

### DISCOVERY OF WADE'S ACTIONS, WADE'S ATTEMPT TO COVER UP HIS FRAUD, AND THE REMOVAL OF WADE

107.    In or about August 2018, Tri-Wire received invoices for significant additional, retroactive insurance premiums for certain prior policy years including the pre-Transaction years 2015 and 2016.  The receipt of these invoices caused Spinnaker and the Company's Board to begin to review certain of the issues described above and led to the discovery of others.

108.    In addition, in the fall of 2018, several employee complaints concerning Wade surfaced to Spinnaker and the Board. These circumstances caused the Board to form the Special Committee to formally investigate the growing list of issues concerning Wade and his actions as the Company's Chairman and Chief Executive Officer.

109.    In or about February 2019, Wade ultimately agreed to take a leave of absence as CEO of the Company after he was suspended as CEO, as admitted by Wade in his Complaint at paragraph 140. But Wade refused to go quietly. After his suspension as CEO, Wade removed the Company's finance personnel from having administrative control over the Company's American

Express account, and refused to delegate control of the Company's bank accounts to the Company's CFO.

110.    In addition, and also in or about February 2019, Wade surreptitiously took over administrative control of the Company's email servers – he removed the Company's IT manager as having administrative control of the servers, installed himself as the person with administrative control, changed the password (as well as the security question and answer needed to change the password), and changed the credit card to which the Company's email server charges were billed. These actions prevented the Company from having any control of its email server, and allowed Wade to monitor all Company emails and delete any emails on the server.

111.    Wade also used his access to the Company's email server in February 2019 to ensure that emails sent or received by certain Company employees would be secretly copied and sent to an email address Wade created to monitor email communications: net@triwire.net.

112.    Wade took these actions, and likely took other actions unknown at this time, to inhibit any investigation into his conduct and prevent the truth of Wade's fraud from being revealed.

113.    Based on facts uncovered during the initial investigation, on April 19, 2019, the Special Committee terminated Wade as the Company's CEO.

114.    On May 2, 2019, the Special Committee requested that Wade repay outstanding debt in the amount of $1,412,611.88, related to the duplicate payments, certain tax liabilities, and other amounts owed to the Company.

115.    The investigation continued and more facts were uncovered. On August 2, 2019, Spinnaker and the Special Committee demanded that Wade immediately reimburse Tri-Wire in an amount in excess of $18,000,000, on account of all of his fraudulent conduct described above; agree to revise the Transaction documents in accordance with the true financial and legal terms

that should have been known and disclosed; and resign as Chairman and as a Member of Tri-Wire's Board.

116.    Wade failed to take any action in response to the foregoing demands. Instead, Wade attempted to assault the integrity of certain Board members and to remove certain Board members without cause.

117.    As a result of all of the foregoing, the Board directed that Wade be removed as Chairman and as a member of the Company's Board.

118.    Despite the passage of several months since Wade was put on notice by the Special Committee and Spinnaker in May 2019 and August 2019, and many failed attempts by Spinnaker and the Special Committee to try to resolve this matter, Wade has failed and refused to repay the amounts owed, or restructure the Transaction to reflect the true value of the Company as of the Transaction date. Instead, Wade preemptively filed the Complaint in this matter, asserting that everyone who had anything to do with the ESOP Transaction or the Company (other than himself, his wife, and his two children) engaged in a conspiracy to defraud *him*, before and after the Transaction. Wade's Complaint is nothing more than an attempt to deflect attention from himself – the true source of all of the legal violations and fraud in this matter.

## COUNT I
## FRAUD/FRAUDULENT INDUCEMENT

119.    Spinnaker incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

120.    In connection with the execution of the SPA and SRA, and the Transaction otherwise, Wade represented and warranted to the ESOP that:

>    a.    the financial statements of Tri-Wire "fairly present as of the date indicated the financial condition, assets and liabilities and results of operations of the Company" and "[a]ll internally-prepared financial statements have been prepared in good faith in a matter consistent with past practice";

b.   Tri-Wire had no undisclosed liabilities or obligations, other than those listed in Schedule 4.11(d) of the SPA;

c.   the Company has not incurred any obligation or liability since December 31, 2015 other than in the "ordinary course" of the Company's business, and that any of those obligations or liabilities would be "not materially adverse" to the Company's business;

d.   the provisions made for taxes on the balance sheet "are sufficient for the payment of all accrued and unpaid federal, foreign, state, county and local takes of the Company";

e.   "[a]ll such insurance premiums in respect of such coverage have been, and to the Closing Date will be paid, or if not due, properly accrued on the books of the Company as of the Closing date"; and

f.   the "financial projections provided to the Trustee's independent financial advisor contain no knowingly false information or material omissions and were prepared in good faith."

121.   Wade further represented, in section 3.8 of the SRA, that "[n]o information, report, financial statement, exhibit or schedule prepared or furnished by or on behalf of [Wade] . . . contained or contains any material misstatement of fact, or omitted or omits to state any material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading."

122.   In addition, on December 30, 2016, Wade certified that the Company's financial projections provided in connection with the Transaction "contain no knowingly false, incomplete, or misleading statements or omissions."

123.   Notwithstanding these representations, as described herein, Wade knew in fact that the foregoing representations were false and/or failed to state material facts known to Wade and necessary to make these statements not misleading, including but not limited to:

a.   Wade stated that all insurance premiums were paid or properly accrued, while failing to disclose to the relevant advisors the truth that the Company had and would receive invoices for retroactive premiums.  Wade further manipulated the financial statements and projections to not accrue the invoice received on October 18, 2016 in the amount of $230,184 for policy

70

year 2015 or to account for the likelihood of future retroactive premiums which now total in excess of $2,800,000;

b.      Wade failed to disclose the creation of a Construction Division, and did not incorporate the capital expenditures necessary for this division in the financial projections he provided in connection with the Transaction and upon which the valuation of the Company's shares and calculation of its necessary working capital relied;

c.      In 2016, Wade was aware of duplicate payments received from a Tri-Wire customer. Rather than disclosing this fact in connection with the Transaction as he told the accounting employees he would, he never did, and instead manipulated the financial statements and projections to maximize the amount of cash he received as part of the Transaction;

d.      Wade failed to disclose the payment of bonuses before and immediately after the Transaction in the amount of $2,835,500; and

e.      Wade failed to disclose certain taxes and debts owed by the Company, again artificially inflating the value of his shares.

124.    Despite knowledge of each of these misrepresentations, Wade did not disclose the true information to the ESOP and/or the advisors to the ESOP and did not otherwise notify the ESOP and/or the advisors to the ESOP (or himself decide) to materially reduce the purchase price to reflect the true terms.

125.    The foregoing representations were made with the intent to induce the ESOP to enter into the Transaction.

126.    Wade knew that the ESOP's decision to enter into the Transaction and execute the SPA would be materially based on Wade's representations and the projections prepared by Wade.

127.    The ESOP justifiably relied on Wade's representations and projections.

128.    Prior to the Transaction, only Wade had access to the information concerning the material misrepresentations and/or he exclusively controlled the dissemination of the information to the advisors charged with determining the fair market value of the shares.

129.    As a direct and proximate result of Wade's false representations and intentional material omissions, the ESOP has suffered and will continue to suffer damages, in excess of

$18,000,000, plus punitive damages, pre- and post-judgment interest, disgorgement, multiple damages, attorney fees, and other monetary and equitable relief as may be appropriate.

## COUNT II
## INTENTIONAL MISREPRESENTATION

130.    Spinnaker incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

131.    Wade made false representations of material fact regarding the financial state of Tri-Wire.

132.    These representations were false when made, and Wade intentionally made such false representations.

133.    These representations had the purpose of inducing the Transaction.

134.    In justifiable reliance on these false representations, the ESOP entered the Transaction, to its detriment.

135.    As a direct and proximate result of Wade's conduct, the ESOP has suffered and will continue to suffer damages, in excess of $18,000,000, plus punitive damages, pre- and post-judgment interest, disgorgement, multiple damages, attorney fees, and other monetary and equitable relief as may be appropriate.

## COUNT III
## BREACH OF CONTRACT

136.    Spinnaker incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

137.    Wade made the following representations and warranties to the ESOP, included in the SPA and incorporated by reference in the SRA, as part of the Transaction:

        a.    SPA section 4.11(a), representing and warranting that the financial statements of Tri-Wire "fairly present as of the date indicated the financial condition, assets and liabilities and results of operations of the Company"

and "[a]ll internally-prepared financial statements have been prepared in good faith in a matter consistent with past practice";

b.  SPA section 4.11(d), representing and warranting that Tri-Wire had no undisclosed liabilities or obligations, other than those listed in Schedule 4.11(d) of the SPA;

c.  SPA section 4.12, representing and warranting that the provisions made for taxes on the balance sheet "are sufficient for the payment of all accrued and unpaid federal, foreign, state, county and local takes of the Company";

d.  SPA section 4.20, representing and warranting that "[a]ll such insurance premiums in respect of such coverage have been, and to the Closing Date will be paid, or if not due, properly accrued on the books of the Company as of the Closing date";

e.  SPA section 4.24(a), representing and warranting that the between the warranty date and the date of the Transaction the Company has not incurred any obligation or liability other than in the "ordinary course" of the Company's business, and that any of those obligations or liabilities would be "not materially adverse" to the Company's business; and

f.  SPA section 4.32, representing that Tri-Wire's "financial projections provided to the Trustee's independent financial advisor contain no knowingly false information or material omissions and were prepared in good faith."

138.    Section 3.8 of the SRA includes the representation by Wade that "[n]o information, report, financial statement, exhibit or schedule prepared or furnished by or on behalf of [Wade] . . . contained or contains any material misstatement of fact, or omitted or omits to state any material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading."

139.    Wade breached the SPA and SRA as these representations and warranties are in fact false and/or misleading, and by failing to indemnify the ESOP.

140.    As a result of Wade's breaches, Spinnaker, in its capacity as Trustee and on behalf of the ESOP has been damaged in an amount in excess of $18,000,000.

141.    The ESOP performed its obligations under the Transaction documents.

142.    Spinnaker, in its capacity as Trustee and on behalf of the ESOP is entitled to compensatory damages as a remedy for these breaches under the SPA and SRA, including attorney's fees.

**COUNT IV**
**VIOLATION OF MASSACHUSETTS UNFAIR AND DECEPTIVE BUSINESS**
**PRACTICES ACT (M.G.L. CH. 93A, §§ 2, 11)**

143.    Spinnaker incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

144.    Wade engaged in unfair or deceptive acts or practices in connection with the Transaction, as described herein.

145.    Wade was engaged in trade or commerce in Massachusetts in connection with the Transaction, within the meaning of Chapter 93A.

146.    As a result of Wade's actions, in connection with the Transaction, the ESOP paid to Wade amounts for the shares of the Company far in excess of fair market value.

147.    As a direct and proximate result of the foregoing, Spinnaker, in its capacity as Trustee and on behalf of the ESOP, has been damaged in an amount to be determined at trial, but which upon information and belief exceeds $18,000,000, plus pre- and post- judgment interest, disgorgement, multiple damages, attorney fees, and other monetary and equitable relief as may be appropriate.

**COUNT V**
**SPECIFIC PERFORMANCE**

148.    Spinnaker incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

149.    Under the SPA and SRA, Wade agreed to indemnify the ESOP for losses resulting from any misrepresentation or breach of the agreements.

74

150.     Under the SPA and SRA, Spinnaker is entitled to seek specific performance with respect to the indemnification provisions.

151.     No adequate remedy exists at law to compensate the ESOP for Wade's failure to provide indemnification.

152.     Spinnaker, in its capacity as Trustee and on behalf of the ESOP, is entitled to a decree of specific performance obligating Wade to indemnify the ESOP as an equitable remedy for his misrepresentations and breach of the agreements.

<u>**COUNT VI**</u>
<u>**DECLARATORY JUDGMENT**</u>

153.     Spinnaker incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

154.     Spinnaker requests that the Court declare the parties' rights under the SPA and SRA with respect to these claims and specifically declare that:

> a.      the ESOP and the Company are entitled to indemnification under the SPA and SRA for these claims;
>
> b.      Wade's duty to indemnify the ESOP and the Company applies to breaches of the representations in the SPA, and breaches of representations incorporated or made in the SRA;
>
> c.      the exclusive remedy provisions of the SPA (sections 9.4, 9.6, 9.7) and the SRA (sections 8.3, 8.5, 8.6) are void and unenforceable as a result of the fraudulent conduct alleged herein, through which Wade procured the SPA and SRA.

155.     The parties dispute whether these claims form a basis for indemnification under the SPA and SRA, or whether the exclusive remedy provisions of the SPA and SRA may be enforced.

156.     Further, Spinnaker requests that the Court declare Wade is not entitled to seek indemnification or contribution from the Company or any third parties under ERISA.

157.    Justiciable controversies exists between the parties that meets the requirements of the Declaratory Judgment Act.

158.    The Court's resolution of this dispute will resolve the uncertainty between the parties to this action in that Spinnaker, in its capacity as Trustee and on behalf of the ESOP, and the Company, are entitled to a declaration that their claims provide the basis for indemnification under the SPA and SRA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Spinnaker, in its capacity as Trustee and on behalf of the ESOP, respectfully requests that this Court enter the following Orders:

159.    A decree of specific performance requiring Wade to indemnify the ESOP;

160.    For Wade to compensate the ESOP for all damages suffered as a result of his breaches of the SPA and SRA, fraud, and misrepresentation, in an amount to be proven at trial;

161.    For Wade to compensate the ESOP for all damages suffered as a result of his violation of Massachusetts General Laws Chapter 93A, including an award of double or treble damages as the Court may deem appropriate;

162.    Declaration that (i) Wade is required to indemnify the ESOP and (ii) the exclusive remedy provisions of paragraphs 9.4, 9.6 and 9.7 of the Stock Purchase Agreement and paragraphs 8.3, 8.5 and 8.6 of the Stock Redemption Agreement are void and unenforceable as a result of Wade's fraudulent conduct as alleged herein;

163.    An order awarding Spinnaker its reasonable attorneys' fees and costs incurred in his action; and

164.    Such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Defendant Spinnaker Trust hereby demands a trial by jury on all claims and counterclaims so triable.

Respectfully submitted,

SPINNAKER TRUST, in its capacity as
Trustee of the TriWire Engineering Solutions,
Inc. Employee Stock Ownership Plan,

By its attorneys,

/s/ Nicholas B. Carter
Nicholas B. Carter (BBO #561147)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel:       (617) 720-2626
Fax:       (617) 227-5777
Email:     ncarter@toddweld.com

Scott J. Stitt (0073943)
TUCKER ELLIS LLP
175 S. Third St.
Suite 520
Columbus, OH 43215
Telephone:  614.358.9717
Facsimile:  614.358.9712
E-Mail:     scott.stitt@tuckerellis.com
(*pro hac vice* application pending)

Chelsea Mikula (0086453)
Tucker Ellis LLP
950 Main Avenue
Suite 1100
Cleveland, OH 44113
Tel:       216.592.5000
Fax:       216.592.5009
E-mail:    chelsea.mikula@tuckerellis.com
(*pro hac vice* application pending)

*Attorneys for Defendant Spinnaker Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2020, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


/s/ Nicholas B. Carter
*One of the Attorneys for Defendant Spinnaker Trust*