IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN R. WADE, III, SHARON WADE, JOHN WADE IV, AND TAYLOR WADE, | ) ) | CASE NO. 1:20-cv-10523-DLC |
| | ) | |
| Plaintiffs, | ) ) | MAGISTRATE JUDGE DONALD L. CABELL |
| | ) | |
| v. | ) | |
| | ) | |
| TRI-WIRE EMPLOYEE STOCK OPTION TRUST, SCOTT PERRY, ROBERT R. NEWELL, ROBERT LANDRY, DAVID GESMONDI, CAPITAL TRUSTEES, LLC, SPINNAKER TRUST, ROBERT GOULD, JEANINE PENDERGAST, EMPIRE VALUATION CONSULTANTS, LLC, SES WINDING UP CORPORATION F/K/A SES ADVISORS, INC., SES ESOP STRATEGIES, LLC, AS SUCCESSOR TO SES ADVISORS, INC., BELLMARK PARTNERS, LLC, JOHN MARSH, LORI WENETTA, AND RUBEN KLEIN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM IN SUPPORT OF DEFENDANT SPINNAKER TRUST'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| | ) | |
| Defendants. | ) ) ) | |

## INTRODUCTION

Plaintiffs' Complaint spans 82 pages, contains 362 allegations, and yet fails to allege a single viable cause of action against Defendant Spinnaker Trust ("Spinnaker"). As courts have recognized, "[a] complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir.), cert. denied, 522 U.S. 966 (1997). Plaintiffs' Complaint is a classic example – Plaintiffs sued everyone that had any association with Tri-Wire, their former employer. Plaintiffs make numerous conclusory allegations in their 25 causes of action, without identifying the specific acts of individual Defendants, including Spinnaker.

As demonstrated by Plaintiffs' opening paragraph of their Complaint, this case relates to

actions surrounding a December 30, 2016 transaction (the "Transaction") in which John Wade sold 100% of his shares in Tri-Wire, resulting in an employee stock ownership plan (the "ESOP") as the 100% owner after the Transaction. Spinnaker was *not* involved in that Transaction. Spinnaker assumed the role of independent trustee of the ESOP on March 22, 2017, three months later. ERISA requires an ESOP trustee to act in the best interests of its participants, not simply to do whatever the loudest voice demands. But Spinnaker was not the trustee at the time of the Transaction – in other words, it was not the trustee for the events giving rise to the gravamen of Plaintiffs' Complaint, but has now been improperly placed in the crosshairs of Plaintiffs' kitchen-sink Complaint. The prolix, yet improperly and/or insufficiently pled allegations against Spinnaker should be dismissed.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Tri-Wire is a Massachusetts corporation founded by Plaintiff John R. Wade III. (Document No. ("Doc. No.") 1 at ¶ 27). Tri-Wire provides installation, maintenance, and other technical support services to the cable and telecommunications industries. (*Id.* at ¶ 52). On December 30, 2016, John R. Wade III transferred his ownership interest in Tri-Wire to the ESOP. (*Id.* at ¶¶ 1, 53).

For purposes of this Motion, the relevant facts are simple. Spinnaker was not the trustee for purposes of the December 30, 2016 Transaction.[1]  Spinnaker replaced a prior trustee and took over as trustee for the ESOP on March 22, 2017. (*Id.* at ¶ 21). In its role as trustee of the ESOP, Spinnaker is a "fiduciary" and is required to meet its obligations under ERISA, namely it must act prudently and in the exclusive interest of the ESOP participants. 29 U.S.C. § 1104. As recognized by Plaintiffs, after it was engaged as Trustee, Spinnaker conducted an independent

---

[1] The details of the Transaction and related facts are more fully set forth in Defendant Spinnaker's Counterclaim, filed simultaneously herewith.

investigation into the Transaction and uncovered certain acts by John Wade III that harmed the ESOP participants. (*Id.* at ¶ 131). As a result of that investigation,  and in anticipation of litigation, counsel for both Spinnaker and John R. Wade III, engaged in pre-suit negotiations, some of which are attached as exhibits to Plaintiffs' Complaint (*see e.g.*, Exhibit 16), and some of which are not. Wade refused to take action in response to the demands by counsel, and instead filed the instant lawsuit.

Plaintiffs have filed 25 causes of action against 17 different Defendants. The below causes of action, that are the subject of this Motion for Judgment on the Pleadings, are alleged against Spinnaker:

| Count | Cause of Action |
|---|---|
| Count I and XXII | RICO (wire fraud and trade secrets) |
| Count II | Fraud |
| Count III | ERISA |
| Count VI | Breach of Fiduciary Duty |
| Count XI | Conspiracy |
| Count XII and XX | Defamation and Business Defamation |
| Count XVI | Tortious Interference |
| Count XVIII | Wrongful Termination |
| Count XIX | Deceptive Trade Practices |
| Count XXI | Conversion |
| Count XXIII | Computer and Fraud Abuse |
| Count XXIV | Negligent Misrepresentation |
| Count XXV | Intentional Interference with Prospective Economic Advantage |

## LAW AND ARGUMENT

Under Rule 12(c), a motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano,* 520 F.3d 26, 29 (1st Cir. 2008) (citing *Curran v. Cousins,* 509 F.3d 36, 43-44 (1st Cir. 2007)). Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom. . . ." *R.G. Fin. Corp. v. Vergara-Nunez,* 446 F.3d 178, 182 (1st Cir. 2006).

But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Walter & Shuffain, P.C. v. CPA Mut. Ins. Co. of Am. Risk Retention Grp*., 660 F. Supp. 2d 116, 124 (D. Mass. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Further, it requires "the reviewing court to draw on its judicial experience and common sense," and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* Here, no material issues of fact exist with respect to Plaintiffs' Complaint. Therefore, Spinnaker is entitled to judgment on the pleadings with respect to those claims alleged against it as a matter of law.

## I.   PLAINTIFFS' ALLEGATIONS ON BEHALF OF THE COMPANY AND ON BEHALF OF PLAINTIFFS OTHER THAN JOHN R. WADE III FAIL AS A MATTER OF LAW

At the outset, several times throughout the Complaint, Plaintiffs refer to damage done to "the ESOT [sic], Plaintiffs, and *the Company*." (emphasis added). Plaintiffs do not have standing to bring suit on behalf of the Company and as a result these allegations fail as a matter of law.

Further, the Complaint is brought on behalf of four Plaintiffs: John R. Wade III, his wife Sharon Wade, his son John Wade IV, and his daughter Taylor Wade – yet the substance of

4

Plaintiffs' 25 causes of action relate to John Wade III with little to no reference to the other Plaintiffs. For example, Count I (RICO) states that Defendants "formed and participated in a scheme or artifice to defraud *Plaintiff* of his ownership interest and property interest" and goes on to only discuss John R. Wade III's interests. (Doc. No. 1 at ¶ 197) (emphasis added). Count II (Fraud) discusses ousting John R. Wade III and asserting false claims against him with no reference to the other Plaintiffs. (Doc. No. 1 at ¶ 210).

Rather than address these issues in every cause of action, Spinnaker raises at the outset that any allegations on behalf of the Company should be denied as a matter of law, and that Plaintiffs other than John R. Wade III have not even attempted to support causes of action against Spinnaker and their claims should be dismissed.

## II.   <u>STATE LAW CLAIMS ARE PREEMPTED BY ERISA</u>

ERISA preempts Plaintiffs' state law claims against Spinnaker:  Count II (fraud); Count VI (conspiracy); Counts XII and XX (defamation and business defamation); Count XVI (tortious interference); Count XVIII (wrongful termination); Count XIX (deceptive trade practices); Count XXI (conversion); and Count XXIV (tortious interference). Spinnaker is only named in this action because it was appointed as the successor trustee for the Tri-Wire ESOP on March 22, 2017. (Doc. No. 1 at ¶ 21). In its role as a trustee, there is no question it is a "fiduciary" under ERISA. (*Id.* at ¶ 65). As a result, Spinnaker's actions are exclusively governed by ERISA. For these reasons, each of the state law causes of action alleged by Plaintiffs are preempted by ERISA.

When Congress enacted ERISA in 1974, it created "six carefully integrated civil enforcement provisions" that were intended to supplant all state law remedies with respect to claims that relate to employee benefit plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). In

passing 29 U.S.C. § 1144(a), Congress intended to "ensure that plans and plan sponsors would be subject to a uniform body of benefits law . . . [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656-57 (1995) (citing *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 142 (1990)). And the Supreme Court has said that "[t]he deliberate case with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Pilot Life*, 481 U.S. at 41. The First Circuit has stated that ERISA's objectives include providing a "uniform national administration of ERISA plans" and avoiding inconsistent state regulation of such plans. *Danca v. Private Health Care Sys., Inc.,*, 185 F.3d 1, 7 (1st Cir. 1999).

The First Circuit has held that a law relates to an ERISA plan where a plaintiff, in order to prevail, must plead, and the court must find, that an ERISA plan exists. *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir. 1994) (citing *Ingersoll-Rand, Co. v. McClendon*, 498 U.S. 133, 140 (1990)). The First Circuit has further articulated the preemption standard by stating that a state law claim "relates to" an ERISA plan and is preempted if "the trier of fact necessarily would be required to consult the ERISA plan to resolve the plaintiffs' claims." *See Harris v. Harvard Pilgrim Health Care*, 208 F.3d 274, 281 (1st Cir. 2000); *see also Vartanian*, 14 F.3d at 700 (holding that state law claim for misrepresentation is preempted where "in order to prevail, [a plaintiff] must plead, and the court must find, that an ERISA plan exists"). Further, a state law is considered to be "related to" a benefit plan—and thus preempted—"even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Hampers v. W.R.*

*Grace & Co.,* 202 F.3d 44, 49 (2000); *see also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).

The First Circuit has specifically addressed preemption of state law claims in several cases. In *Dudley Supermarket Inc. v. Transamerica Life Ins. and Annuity Co.*, 302 F.3d 1 (1st Cir. 2002), the Court held that because the gravamen of plaintiff's complaint related to a fiduciary's role in providing advice and services to a plan, all state law claims were preempted. In *Zipperer v. Raytheon Co., Inc.*, 493 F.3d 50, 54 (1st Cir. 2007), the First Circuit held that all state law claims were preempted by ERISA because the responsibilities criticized "were part and parcel of . . . plan administration." And, in *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 794 (1st Cir. 1995), the Court held that state law claims are preempted when they are inseparably connected to the ERISA plan. In *Carlo*, the plaintiff filed state law misrepresentation claims and the Court found they were preempted because the claims would "ultimately depend on an analysis" of the ERISA plan at issue. *Id.*; *see also Degnan v. Publicker Indus., Inc.*, 83 F.3d 27 (1st Cir. 1996) (affirming dismissal, on preemption grounds, of plaintiff's state law misrepresentation claims against a former employer who allegedly reneged on certain promises it made regarding plaintiff's retirement benefits).

Every action Spinnaker has taken in this matter has been in its capacity as ESOP trustee since March 22, 2017. Just like the plaintiffs in *Dudley Supermarket*, Plaintiffs' allegations against Spinnaker can only arise under ERISA, because the gravamen of the claims are Spinnaker's actions as a fiduciary. *Dudley Supermarket*, 302 F.3d at 4-5.  And like the plaintiffs in *Zipperer* and *Carlo,* in order to prevail on their claims against Spinnaker, Plaintiffs "must prove the existence of, or specific terms of, an ERISA plan." There is no question Plaintiffs' allegations arise solely in Spinnaker's role with respect to the plan – the ESOP – and its

administration. Allowing Plaintiffs' state law claims to survive would provide them with alternative enforcement mechanisms to remedy an alleged breach of ERISA, something which the Supreme Court and the First Circuit observed is not permissible. Spinnaker, therefore, is entitled to judgment as a matter of law on every state law claim asserted: Counts II (fraud); VI (conspiracy); XII and XX (defamation and business defamation); XVI (tortious interference); XVIII (wrongful termination); XIX (deceptive trade practices); XXI (conversion); and XXIV (tortious interference).

## III.   STATE LAW CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In addition to being preempted by ERISA, each of the state law claims fail to state a claim upon which relief can be granted.

### A.   Plaintiffs' Fraud and Negligent Misrepresentation Claims Fail to Meet the Heightened Pleading Standard

Counts II and XXIV of Plaintiffs' Complaint, alleging fraud and negligent misrepresentation, should be dismissed. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The heightened pleading standard applies to negligent misrepresentation claims as well as fraud. *Plante & Moran, PLLC v. Andover Healthcare, Inc.*, No. 17-CV-10093-DJC, 2018 WL 935423, at *5 (D. Mass. Feb. 16, 2018). To satisfy this standard, Plaintiffs must "specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). "Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)).

Plaintiffs do not meet this standard. Plaintiffs aver that "Defendants intentionally,

knowingly, fraudulently, and with an intent to deceive, have made false and misleading statements designed to injure Plaintiffs[.]" (Doc. No. 1 at ¶ 210). But they do not identify what those statements were, when or to whom they were made, how Plaintiffs relied on them, or how Plaintiffs' reliance caused them harm. This lack of specificity is fatal. *See Alternative Sys. Concepts*, 374 F.3d at 30 (affirming dismissal where plaintiff "did not provide any details as to who allegedly uttered the misleading statements, to whom they were made, where they were made, when they occurred, and what actions they engendered"). Nor do Plaintiffs identify which of the sixteen named Defendants – if any – made the alleged misrepresentations. This, too, is fatal. *Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 224 (D. Mass. March 13, 2017) (dismissing misrepresentation and fraud claims for failure to comply with Rule 9(b); "where there are multiple defendants, the specific role of each must be alleged"). Plaintiffs conclusory allegations that "Defendants knew the representations to be false" are insufficient as well. *Hayduk*, 775 F.2d at 444-45 ("[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated.").

In addition to not meeting the heightened pleading standard, Plaintiffs fail to allege that they justifiably relied on the false statements. To state a claim for fraud or misrepresentation, Plaintiffs must plausibly allege that they relied on false statements made by Spinnaker. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 193 (1st Cir. 1996) ("[T]o state a claim for fraudulent misrepresentation, the plaintiff must allege . . . that the plaintiffs reasonably relied on the statement"); *Edlow v. RBW, LLC*, 688 F.3d 26, 36 (1st Cir. 2012) ("[A] negligent misrepresentation plaintiff must prove . . . their justifiable reliance upon the information.") (quotation mark omitted). A plaintiff cannot merely aver that he relied where the record or

allegations show otherwise. *See Rodi v. S. New Eng. Sch. of Law*, 532 F.3d 11, 16 (1st Cir. 2008).

While Plaintiffs allege in a conclusory fashion that "Wade did, in fact, reasonably and justifiably rely upon the foregoing material misrepresentations," earlier in the Complaint Plaintiffs allege Wade knew "that the complaints were demonstrably false" so he could not have relied on statements which he himself claims are false. (Doc. No. 1 at ¶ 213 compared to ¶ 122).

Finally, Plaintiffs' only effort to "specify the who, what, where, and when" of the alleged misrepresentations is to allege that the "false allegations . . . are detailed in the e-mails attached to this Complaint as Exhibits 13, 15 and 16." (Doc. No. 1 at ¶ 211). Those exhibits cannot support Plaintiffs' fraud claims against Spinnaker, because they are protected by the litigation privilege.[2]

For these reasons, Counts II and XXIV fail to state a claim and should be dismissed.

**B.      Plaintiffs' Breach of Fiduciary Duty Claim Fails as Spinnaker Did Not Owe Plaintiffs Such a Duty**

Count VI of Plaintiffs' Complaint fails to state a claim for breach of fiduciary duty because Spinnaker did not owe Plaintiffs any fiduciary duty. "To establish a breach of fiduciary duty, there must be a duty owed to the plaintiff by the defendant and injury to the plaintiff proximately caused by the breach." *Estate of Moulton v. Puopolo*, 467 Mass. 478, 492 (2014) (citing *Zimmerman v. Bogoff*, 402 Mass. 650, 660 (1988)); *see also Keros v. Massachusetts Mut. Life Ins. Co.*, 958 F. Supp. 2d 306, 310 (D. Mass. Aug. 5, 2013). As trustees of the ESOP, Spinnaker owes a fiduciary duty only to the ESOP participants. 29 U.S.C. § 1104; Contrary to

---

[2] "[S]tatements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding." *Sriberg v. Raymond*, 370 Mass. 105, 108 (1976); *see also Hollis v. JPMorgan Chase Bank, N.A.*, 2014 WL 12792255, at *11 (D. Mass. Dec. 10, 2014) (dismissing claims for deceit because statements made in an affidavit and answer were absolutely privileged). The privilege extends to "conferences and other communications preliminary to litigation." *Sriberg*, 370 Mass. at 109; *see also Visnick v. Caulfield*, 73 Mass. App. Ct. 809 (2009).

the allegations in the Complaint, no Plaintiff was ever an ESOP participant.  (*See supra* p. 26-27). Count VI therefore fails to state a claim and should be dismissed.

### C.      Plaintiffs' Conclusory Allegations of a Conspiracy Fail as a Matter of Law

Count XI fails to allege a conspiracy with anything but conclusory allegations, which is insufficient at the pleading stage. To establish the existence of a civil conspiracy under Massachusetts law "a plaintiff must demonstrate that 'a combination of persons [acted] pursuant to an agreement to injure the plaintiff.'"  *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 415 (2002) (citing J.R. Nolan & L.J. Sartorio, *Tort Law* § 99, at 136 (2d ed. 1989)).  To satisfy this burden at the pleading stage, a plaintiff is required to allege the existence of an agreement with more than mere "labels and conclusions."  *Byrnes v. Lukes*, No. 2009-1403, 2009 WL 8500163, p. 9-10 (Mass. Super., Oct. 27, 2009) (dismissing civil conspiracy claim, finding the "allegation that the defendants acted in concert is merely a 'label[] and conclusion[]' insufficient to survive a motion to dismiss"); *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 307 (D. Mass. July 25, 2017) (dismissing § 1983 conspiracy claim, stating that the "plaintiffs cannot defeat a motion to dismiss based on conclusory allegations of conspiracy that are not supported by references to material facts. The plaintiffs plead no facts to support the existence of an agreement between parties to violate their federal constitutional rights, so they fail to cross the plausibility threshold.").  In other words, "conclusory allegations of conspiracy"—like those in the Complaint—"are insufficient to support a cause of action." *Cristo v Worcester County Sheriff's Office*, No. 1185CV01732, 2011 WL 13262257, at *4 (Mass. Super. Dec. 14, 2011).

Here, the Complaint fails adequately to allege any facts that establish any agreement, instead relying only on the prohibited conclusory allegations and recitals of the elements of causes of action.  In the 82-page, 362 paragraph Complaint, the allegations of agreement or concerted action are limited to the following conclusory statements:

➢ Doc. No. 1 at ¶ 2: alleging certain Defendants "engaged in a concerted campaign" to harm Wade;

➢ Doc. No. 1 at ¶ 18: alleging Klein "acted in concert" with Newell, Perry and Marsh;

➢ Doc. No. 1 at ¶ 205: alleging "Defendants intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity" and "Defendants . . . agreed to the commission of those acts to further the schemes;"

➢ Doc. No. 1 at ¶ 218(j): alleging the Spinnaker Defendants and other Defendants "[w]ork[ed] in concert" to "cause the Company to breach its obligations…, to attack and harm Wade personally, and to permit the Directors and Officers to incur debts that the Company cannot afford, to raise their own pay, and to engage in self-dealing behavior;"

➢ Doc. No. 1 at ¶ 260: alleging participation "in an actionably (sic) conspiracy via either an explicit or tacit agreement;"

➢ Doc. No. 1 at ¶ 261: alleging "concerted action with the intent to accomplish an unlawful objective[.]"

Those are the only allegations of agreement or concerted action in the entire Complaint. Such conclusory allegations are insufficient to adequately allege civil conspiracy. Count XI thus fails to state a claim and should be dismissed.

**D.  Plaintiffs' Claims for Defamation and Business Defamation Should be Dismissed Because the Complaint Fails Adequately to Plead Facts Establishing the Publication of a Defamatory Statement.**

Plaintiffs' Defamation and Business Defamation claims each fail to state a claim against Spinnaker because the Complaint contains no factual allegations that Spinnaker (or any Defendant) published any false or defamatory statements about any Plaintiff to anyone.

"To prove defamation, the plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community . . . ." *Grant v. Target Corp.*, 126 F. Supp. 3d 183, 192 (D. Mass. Sept. 3, 2015). As for the publication element, it "requires that the defendant communicate the

defamatory statement to a third party." *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66, 809 N.E.2d 1034, 1036 (2004).[3]  To survive a motion to dismiss, a plaintiff "is required to set forth allegations in support of its defamation claim that are sufficient to give the defendant fair notice of its claim and the grounds upon which it rests." *Whyman v. Whalen*, No. 16-cv-10049, 2018 WL 3130630, at *8, n.8 (D. Mass. June 22, 2018).  This means the complaint must "explain the essential who, what, when, and where" associated with the allegedly defamatory statement(s).  *Grant*, 126 F. Supp. 3d at 193.

Rather than allege specific facts demonstrating the publication of a defamatory statement, Plaintiffs make the following vague and conclusory allegations:

> ➢ Spinnaker, Gould and Pendergast, along with the Current Board and Empire allegedly "published defamatory statements to others involved in the ESOP Transaction and to the Company's clients, including Comcast, by falsely alleging, among other things, that Wade defrauded the Company and the ESOT and Wade engaged in self-dealing behavior to the detriment of the Company and the ESOT. Those statements have irreparably injured Wade's once sterling reputation in the cable industry…."  (Doc. No. 1 at ¶ 188);

> ➢ The same Defendants allegedly "wrongly and publicly disseminated unsubstantiated accusations regarding Wade's conduct to others involved in the ESOP transaction and to the Company's clients, including Comcast, by falsely alleging that Wade defrauded the Company and the ESOT, engaged in self-dealing behavior to the detriment of the Company and the ESOT, mismanaged the Company, concealed and/or misrepresented material information to inflate the value of his ownership interest in the Company, and misappropriated and/or diverted Company assets for his own benefit[,]" knowing such statements to be false.  (Doc. No. 1 at ¶¶ 265, 266);

> ➢ And, that "Wade's business" was allegedly defamed by the same group of Defendants, based on substantially the same alleged statements "made to . . . third persons, both including Wade's own employee's but also, upon information and belief, Wade's customers."  (Doc. No. 1 at ¶¶ 321-24).

---

[3] "Business defamation is committed when a false and defamatory statement is communicated which prejudices the plaintiff in the conduct of its business and deters others from dealing with it." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 952 F. Supp. 884, 888 (D. Mass. 1997), *aff'd*, 142 F.3d 26 (1st Cir. 1998). "In all other respects, the elements of a business defamation claim are those of ordinary defamation[.]" *Id.* (citing *McAvoy v. Shufrin*, 401 Mass. 593, 597 (1987)).

The Complaint, however, contains no factual allegations that support these vague, conclusory statements.  For example, the Complaint fails to identify <u>who</u> published the allegedly false statements, <u>what</u> specifically those statements said that was false, <u>how</u> those statements were made (orally or in writing, and if the latter, in what writing), or specifically <u>to whom</u> or <u>when</u> the statements were made.  Merely alleging unspecified false statements were made "to others involved in the ESOP Transaction and to the Company's clients, including Comcast" or to "third parties" including "employees" and "customers" is simply not enough.  These are not factual allegations; they are vague conclusions that lack factual support and should be dismissed.

### E.      Tortious Interference and Intentional Interference with Prospective Economic Advantage

To state claims for intentional interference with contract or prospective economic advantage, Plaintiffs must allege that Spinnaker's purported interference with a relationship or contract "was improper in motive or means."  *Lemelson v. Bloomberg LP*, 253 F. Supp. 3d 333, 341 (D. Mass. May 19, 2017), *aff'd* 903 F.3d 19 (1st Cir. 2018); *Blackstone v. Cashman*, 448 Mass. 255, 260 (2007).  "Where the defendant is a corporate official acting in the scope of his corporate responsibilities, a plaintiff has a heightened burden of showing the improper motive or means constituted actual malice, that is, a spiteful, malignant purpose, unrelated to the legitimate corporate interest."  *Psy–Ed Corp. v. Klein*, 459 Mass. 697, 716, 947 N.E.2d 520, 536 (2011).  Plaintiffs must therefore allege actual malice, which requires more than conclusory allegations.  *Lashgari v. Zoll Medical*, 84 Mass. App. Ct. 1106, 2013 WL 4029211, at *2 (Aug. 9, 2013); *Britton v. Athenahealth, Inc.*, 31 Mass. L. Rptr. 182, 2013 WL 2181654, at *9 (Mass. Super. Ct. Jan. 18, 2007), *aff'd* 87 Mass. App. Ct. 1139, 2015 WL 4726872 (unpublished).

Here, Plaintiffs merely label "malicious[]" actions that were "intended or designed to disrupt Wade's contractual relationship with  the Company." (Doc. No. 1 at ¶ 295). Those labels

are insufficient to plead actual malice.  Neither "[t]he motivation of personal gain, including financial gain" nor "personal dislike" can create an "inference of the requisite ill will."  *King v. Driscoll*, 418 Mass. 576, 587 (1994); *see also Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 665 (1981) (reversing judgment against terminated employee's supervisors because, even if the supervisors "wished [the employee] did not work under them … did not conduct an adequate investigation of the alleged rule violation and … there was no new or good reason to justify [the employee's] discharge … [a]n inference of the probability of malice, action motivated by spite, does not reasonably follow").

Further, Plaintiffs have not alleged a prospective economic advantage. To state a claim for intentional interference with prospective economic advantage, Plaintiffs must allege that Spinnaker interfered with "a business relationship or contemplated contract of economic benefit."  *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 48 (1st Cir. 2002) (affirming summary judgment where plaintiff only "speculate[d] about future business relationships").

Here, Plaintiffs only allege that Spinnaker interfered with Wade's undefined "prospective contractual relationships" or "prospective contracts."  (Doc. No. 1 at ¶¶ 358-59).  The closest Plaintiffs come to support these bald statements is to allege that certain "statements have irreparably injured Wade's once sterling reputation in the cable industry . . . and have adversely affected Wade's ability to earn a living."  (Doc. No. 1 at ¶ 188).  That allegation does not support Plaintiffs' claim. For these reasons, Counts XVI and XXV fail to state a claim and should be dismissed.

### F.    Plaintiffs Cannot Allege Wrongful Termination Against Spinnaker

In Count XVIII of the Complaint, Plaintiffs allege their employment was terminated in violation of public policy.  (Doc. No. 1 at ¶¶ 300-13).  First, other than the title of the cause of

action, the allegations in Count XVIII do not relate to Spinnaker in substance, and for this reason alone this Count should be dismissed. Second, Plaintiffs were not employed by Spinnaker so such a claim fails as to Spinnaker. Third, each Plaintiff was an at-will employee, and thus could be terminated for any reason not prohibited by law.[4]   As such, Plaintiffs' claims for wrongful termination in violation of public policy against Spinnaker fails to state a valid claim and should be dismissed.

### G.   Plaintiffs Cannot Establish a Deceptive Trade Practices Claim Against Spinnaker

Plaintiffs allege generally in Count XIX that they and the Defendants were "engaged in the conduct of a trade or commerce."  (Doc. No. 1 at ¶¶ 315-16).  But no specific allegations in the Complaint show such conduct.  Rather, Plaintiffs' allegations relate to their employment relationships with the Company, and Chapter 93A is "not available to parties in a strictly private transaction."  *Debnam v. FedEx Home Delivery*, 766 F.3d 93, 96-97 (1st Cir. 2014) (affirming dismissal of claims where plaintiff alleged he was either an employee or contracted exclusively with the defendant).  Specifically, Chapter 93A "does not provide a remedy for disputes arising out of an employer-employee relationship or for disputes that occur within a single company." *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 720 (2011) (affirming judgment against former executive on Ch. 93A claims where "the dispute arose out of a private transaction between the . . . board and . . . a former employee and shareholder of the company"); *Selmark Assocs., Inc. v. Ehrlich*, 467 Mass. 525, 550 (2014) (holding Ch. 93A claim failed because it was "based on the consequences of the alleged wrongful termination of [plaintiff's] employment . . . and the breach of a stock conversion agreement relating to [employer's] stock").

---

[4] Exhibit 11 to the Complaint is Wade's at-will Employment Agreement.  There are no allegations in the Complaint that any of the Plaintiffs were anything other than at-will employees.

Plaintiffs' Complaint relates solely to an intra-company dispute. Ultimately, Wade complains about the alleged terminations of his and his family members' employment, and concerns about the sale of his shares back to the Company. (*See, e.g.*, Doc. No. 1 at ¶¶ 147, 150, 199). Plaintiffs' terminations and Wade's dispute with the Board over control of the Company cannot form the basis of a Chapter 93A claim, and so Count XIX fails to state a claim and must be dismissed.

### H. Plaintiffs' Conversion Claim Fails as No Personal Property Rights are Alleged to be Wronged

Wade alleges in Count XXI of the Complaint that Defendants, including Spinnaker, "caused Wade to be stripped of his rights to control the Company" and that such acts were "in denial of, or inconsistent with Wade's title or rights therein or in derogation, exclusion or defiance of such title or rights." (Doc. No. 1 at ¶¶ 329-30). This confusing attempt to plead a conversion claim, however, fails at its most basic element – there are no allegations concerning any personal property over which any Defendant wrongfully exercised ownership, dominion or control or otherwise deprived from Wade.

In Massachusetts, the "elements of conversion require that a defendant be proved to have 'intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . .'" *Grand Pac. Fin. Corp. v. Brauer*, 57 Mass. App. Ct. 407, 412 (2003) (quoting *Abington Natl. Bank v. Ashwood Homes, Inc.*, 19 Mass.App.Ct. 503, 507 (1985)). Plaintiffs complain that Wade was denied his right to "control the Company[,]" (Doc. No. 1 at ¶ 329), the implication being that was done by the termination of his employment and/or his removal from the Board. An individual, however, does not have a property interest in at-will employment. *See, e.g., Costello v. Sch. Comm. of Chelsea*, 27 Mass. App. Ct. 822, 828 (1989) ("[A]s the plaintiff has no legitimate claim of

17

entitlement to continued employment, the severance of his employment relationship does not constitute a deprivation of a property interest, and thus no claim can be made that property has been taken without due process."). For these reasons, Count XXI fails to state a claim and should be dismissed.

## IV.  PLAINTIFFS' RICO CLAIMS FOR WIRE FRAUD AND THEFT OF TRADE SECRETS ARE DEVOID OF THE NECESSARY ELEMENTS AND THE REQUIRED SPECIFICITY

Plaintiffs have asserted two RICO claims: one for wire fraud (Count I) and one for theft of trade secrets (Count XXII). The essence of Plaintiffs' wire fraud claim is that "Defendants intentionally formed and participated in a scheme or artifice to defraud Plaintiff of his ownership and property interest in, including, among other things: (1) the Company; (2) his position as Chairman of the Board; and (3) his position as CEO by making false allegations regarding his behavior and management of the Company." (Doc. No. 1, at ¶ 197). The essence of Plaintiffs' theft of trade secrets claim (Count XXII) is that "Defendants knowingly, willfully, maliciously, and without authorization, used third parties to download, copy, or duplicate and thereby steal and without authorization appropriate and take, Wade's and/or the Company's trade secrets." (*Id.* at ¶ 334).

To state a RICO claim, "a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Efron v. Embassy Suites, Inc.,* 223 F.3d 12, 14-15 (1st Cir. 2000) (internal quotations omitted).[5] Because Plaintiffs' Complaint fails to sufficiently allege any of the required elements, both RICO claims should be dismissed.

---

[5] To allege wire fraud, the plaintiff must state: (1) a scheme to defraud by means of false pretenses, (2) defendant's knowing and willful participation in the scheme with the intent to defraud, and (3) the use of interstate wire communications in furtherance of a fraudulent scheme. *United States v. Cassiere,* 4 F.3d 1006, 1011 (1st Cir. 1993).

### A.    Civil RICO Claims are Closely Scrutinized

"Civil RICO is an unusually potent weapon - the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir. 1991). The "mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as Defendants. In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Algeria,* 896 F.2d 645, 650 (1st Cir. 1990); *see also Wilkes v. City of Rochester*, No. 98-1143, 1998 WL 1085789, at *1 (1st Cir. 1998). Courts closely scrutinize RICO claims, particularly those based on allegations of mail fraud, "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000). Here, Plaintiffs' RICO allegations are baseless. This is the very type of frivolous RICO case that should be dismissed at this early stage of the litigation.

### B.    Plaintiffs Have Not Alleged an Enterprise

Plaintiffs have not even attempted to allege an enterprise, a necessary element of any RICO claim. To allege a RICO enterprise, a plaintiff must plead that the enterprise was either (1) a legal entity or (2) an association in fact. *See* 18 U.S.C. § 1961(4). The alleged RICO "enterprise" must be "an entity separate and apart from the pattern of activity in which it engages." *Libertad v. Welch,* 854 F. Supp. 19, 26 (D.P.R. Nov. 1, 1993) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)); *see also Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999) (holding that if the "enterprise" requirement were not necessary, then "every fraud that requires more than one person to commit [would be] a RICO violation"). A RICO enterprise may be established by evidence of "an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit" with a common purpose. *Turkette*, 452 U.S. at 583. In the First Circuit, a complaint must be dismissed if it contains "no

19

allegations articulating how any of the [defendants] may have comprised part of an 'ongoing organization' or 'function[ed] as a continuing unit.'" *See Feinstein v. Resolution Trust Corp.*, 942 F.2d at 34, 42, n.7 (1st Cir. 1991) (quoting *Turkette*, 452 U.S. at 583) (district court's decision to dismiss such a complaint was "unassailable"). Plaintiffs' Complaint contains absolutely no reference to an "enterprise" and no facts alleging how any supposed enterprise functioned. Without this element, Plaintiffs' RICO claims fails as a matter of law.

### C.     Plaintiffs Have Failed to Allege a Pattern of Racketeering Activity

Plaintiffs have also failed to allege a pattern of racketeering activity – certainly not one that can meet the continuity requirement of RICO. The pattern element "requires a plaintiff to show at least two predicate acts of 'racketeering activity,' which is defined to include violations of specified federal laws, such as the mail and wire fraud statutes." *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003). To constitute a "pattern," the racketeering activities must be continuous, must pose a threat of continued activity, and must bear some relationship to one another. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14 (1985); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

It is unclear what Plaintiffs allege as the predicate acts. To the extent a predicate act is the theft of trade secrets (Count XXII), no trade secrets are identified anywhere in the Complaint. Spinnaker is simply unaware of any trade secrets possessed by Plaintiffs, let alone trade secrets it misappropriated. It appears Plaintiffs acknowledge they may not possess any trade secrets, as they alleged that the trade secrets belong to either "Wade and/or the Company." (Doc. No. 1, at ¶ 335). To the extent the supposed trade secrets belong to the Company, Plaintiffs have no standing to bring suit to protect trade secrets of the Company, as discussed above. But no trade secrets are identified anywhere in the Complaint, so this allegation cannot support a predicate act of a RICO claim.

With respect to the mail fraud claim, Plaintiffs have simply alleged, in a conclusory fashion, that "[a]ll of the predicate acts were and are related, establishing a pattern of racketeering under 18 U.S.C § 1962(c), as their common purpose was to defraud and take money and property, through unlawful means, from Plaintiffs." (Doc. No. 1 at ¶ 204). Assuming the predicate acts are the letters sent by Spinnaker's counsel – not Spinnaker – such letters setting forth legal claims in preparation for litigation do not support RICO, just as documents filed in litigation do not support a RICO claim. Courts have expressly found that, as a matter of law, litigation activities cannot be the basis of a wire fraud claim under the RICO statute. *See, e.g., Winters v. Jones*, No. CV 16-9020, 2018 WL 326518, at *9 (D.N.J. Jan. 8, 2018) (rejecting effort to use Pacer filings as basis for predicate acts); *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 915 (W.D. Mo. Dec. 2, 2010) ("A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility."); *Snyder v. U.S. Equities Corp.*, No. 12-CV-6092 CJS, 2014 WL 317189, at *8 (W.D.N.Y. Jan. 28, 2014) ("the reasons articulated by other courts, as to why litigation activities should not be actionable under the Civil RICO statute, are equally applicable here.").[6]

Further, while it is unclear what the predicate acts are, whatever Plaintiffs intended, they do not come close to meeting the continuity requirement of a pattern under RICO. Continuity is satisfied by alleging a pattern of activity that extends for a significant period of time. Several circuits have held that alleged predicate acts extending between ten and eleven months is

---

[6] *See also Luther v. Am. Nat'l Bank of Minnesota*, No. CIV. 12-1085, 2012 WL 5471123, at *6 (D. Minn. Oct. 11, 2012), report and recommendation adopted, 2012 WL 5465888 (D. Minn. Nov. 9, 2012) ("Even if any litigation documents that were filed by the Defendant's counsel in the state court proceedings were false or fraudulent, as numerous courts around the country have held, such documents, generally, cannot be the basis of a RICO claim."); *Speight v. Benedict*, No. 5:05CV542(FJS/GHL), 2007 WL 951492, at *6 (N.D.N.Y. Mar. 28, 2007) ("[S]uborning perjury, perjury, filing a court action, filing a false affidavit, and giving false testimony do not constitute predicate acts within the meaning of the RICO statute.").

insufficient to establish the continuity requirement. *Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1215-16 (8th Cir. 1993) (noting the "growing body of case law" in which other circuits have consistently found that continuity requirement is not met "when the predicate acts extend less than a year"); *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 407 (8th Cir. 1999); *see also Uni Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir. 1992) (finding that predicate acts occurring over seven to eight month time period insufficient to establish continuity).[7] Here Plaintiffs have alleged no activity that spans multiple years. For this further reason, they cannot establish a pattern of racketeering activity.

Finally, "[s]ection 1964(C)) requires that the defendant's specified acts of racketeering were the proximate cause of the plaintiffs' injury." *George Lussier, Inc. v. Subaru of New England,* 393 F.3d 36, 51 (1st Cir. 2004). Plaintiffs have failed to allege that either the theft of trade secrets or the letters sent by Spinnaker's counsel were the proximate cause of their injuries.

### D.    Plaintiffs Fail To Plead RICO With the Required Level of Specificity

In addition to failing to allege an enterprise, or any conduct that could constitute a pattern of racketeering activity, Plaintiffs have failed to plead their RICO claim with the required level of specificity. Similar to fraud, to properly allege a RICO claim, the plaintiff must state the "time, place and content" of the alleged fraudulent scheme. *Giuliano v. Fulton,* 399 F.3d 381, 388-89 (1st Cir. 2005) (quoting *North Bridge Assocs., Inc. v. Boldt,* 274 F.3d 38, 43 (1st Cir. 2001)). Further, where a plaintiff claims that multiple defendants committed fraud, plaintiff "must make particularized allegations against each individual defendant." *White v. Union Leader*

---

[7] *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 609-11 (3rd Cir. 1991) (concluding that "twelve months is not a substantial period of time" to establish continuity); *American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 354-55 (6th Cir. 1990) (concluding that six months is insufficient); *Dana Corp v. Blue Cross & Blue Shield Mut. of Ohio*, 900 F.2d 882, 887 (6th Cir. 1990) (concluding that predicate acts occurring over seventeen years sufficient); *Walk v. Baltimore and Ohio R.R.*, 890 F.2d 688, 690 (4th Cir. 1989) (finding predicate acts occurring over ten years sufficient); *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 447 (1st Cir. 1990) (finding four and a half years sufficient).

*Corp.,* 2001 WL 821527, at *4 (D. N.H. July 13, 2001). "It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave identification of the predicate acts to the time of trial." *Boldt,* 274 F.3d at 43 (quoting *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991); *accord Craighead v. E.F. Hutton Co.,* 899 F.2d 485, 489 (6th Cir. 1990) ("[G]eneralized and conclusory allegations that the defendant's conduct was fraudulent do not satisfy Rule 9(b)."). In fact, courts have dismissed RICO claims where the complaint fails to plead the required time, place and content of the alleged fraud. *Cordero Hernandez v. Hernandez Ballesteros,* 333 F. Supp. 2d 6, 11 (D. P.R. Aug. 31, 2004) ("A complaint that alleges numerous instances of wire fraud without specifying which defendant made use of the wires on those particular occasions, the dates of use, as well as the exact frequency of such use [does] not sufficiently plead predicate acts under RICO").

Plaintiffs do not even come close to satisfying this stringent standard of establishing a RICO claim here. Plaintiffs' basis for wire fraud is that "Defendants engaged in multiple acts of wire fraud in violation of 18 U.S.C. § 1343, by transmitting and causing to be transmitted by means of wire communication in interstate commerce, writing, signs, signals, pictures or sounds for the purpose of executing the scheme." (Doc. No. 1, at ¶ 202). And the basis for the theft of trade secrets is that "Defendants stole Wade's and/or the Company's trade secrets stealing or taking without authorization, and through fraudulent means, Wade's and/or the Company's trade secrets in violation of 18 U.S.C. § 1832(a)(1)." (Doc. No. 1, at ¶ 335). Such conclusory allegations certainly do not meet the time, place, and content requirement for heightened pleading. Counts I and XXII contain no allegations about the time and place, or more specifically, which Defendants committed which acts – let alone what Spinnaker did to justify a RICO claim. Spinnaker is entitled to judgment in its favor on Plaintiffs' RICO claims, Counts I

and XXII of the Complaint.

## V.     PLAINTIFFS' COMPUTER AND FRAUD ABUSE CLAIM IS MERITLESS

Count XXIII of Plaintiffs' Complaint attempts to allege violations of the Computer Fraud & Abuse Act, 18 USC §§ 1030(a)(2), 1030(a)(4), 1030(a)(5) and 1030(b) (conspiracy to violate 1030(a)).  Although the enumerated statute provides for a limited private right of action, it is one that cannot be met in this case. *See* 18 USC 1030(g) ("A civil action for violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV) or (V) of subsection (c)(4)(A)(i).").  Of the enumerated subsections in Section 1030(g), only the factor in subsection (c)(4)(A)(i)(I) could possibly apply here – "loss to 1 or more persons during any one year period . . . aggregating at least $5,000 in value."  The other factors relate to modification or impairment of medical information [(c)(4)(A)(i)(II)], physical injury to a person [(c)(4)(A)(i)(III)], a threat to public health or safety [(c)(4)(A)(i)(IV)] and damage to computer used by the United States government for certain limited purposes [(c)(4)(A)(i)(V)].

There are simply no facts pled in the Complaint that establish the use of any computer, or any such loss. The vague allegations about denying Wade access to his email would certainly be insufficient – there are simply no facts alleged to plausibly satisfy the computer usage requirement, or how whatever is being alleged constituted a $5,000 loss. This claim fails as a matter of law and should be dismissed.

## VI.    PLAINTIFFS' ERISA CLAIMS FAIL AS A MATTER OF LAW

In Count IV, Plaintiffs assert that Spinnaker breached ERISA fiduciary duties owed to Plaintiffs by virtue of their duties to the ESOP and Plaintiffs' alleged status as "ESOP participants and beneficiaries[.]" (Doc. No. 1 at ¶¶ 224-225).  These claims fail as a matter of law, however, because Plaintiffs are not participants in the ESOP and thus lack standing to assert ERISA claims as if they were participants in the ESOP.

ESOP "participants" are "employees in, or reasonably expected to be in, currently covered employment, or former employees who have . . . a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-118 (1989) (citations and internal quotations omitted); *Crawford v. Lamantia*, 34 F.3d 28, 32-33 (1st Cir. 1994) (former employee with no prospect of returning to employment and no claim to vested benefits lacked standing).  Here, Plaintiffs are neither current employees in covered employment, nor former employees with a claim to vested benefits.  As such, they lack standing to bring claims under ERISA.

Section 3.1 of the TriWire ESOP Plan sets forth the requirements for initial eligibility for participation in the ESOP.  *See* Exhibit A, to Doc. No. 47.  Assuming, *arguendo*, that as employees of TriWire, Plaintiffs met those requirements, Wade's election under Section 1042 nevertheless meant that no Plaintiff ever received any allocation of Company stock in the ESOP.  Indeed, where stock is transferred to an ESOP pursuant to Section 1042, like Wade elected to do here, shares of the ESOP *cannot* be (and here were not) allocated to the seller or certain relatives of the seller (including spouse and lineal descendants, *i.e.*, all Plaintiffs). *See* 26 U.S.C. §1042; 26 U.S.C. § 409(n) (excluding from participating in an ESOP the taxpayer who sold shares to the ESOP and "any individual who is related to the taxpayer" who elects § 1042 treatment); 26 U.S.C. §§ 267(b), (c)(4) (defining "any individual who is related to the taxpayer" to include spouse (Sharon) and lineal descendants (Taylor and John, Jr.)); Treas. Reg. § 1.1042-IT A-2(3); Exhibit A to Doc. No. 47 (TriWire Employee Stock Ownership Plan, § 5.8); *See* Exhibit B, to Doc. No. 47 (TriWire Employee Stock Ownership Plan Annual Allocation Report, as of December 31, 2016, at 5) ("Shares acquired by the Plan in an [Internal Revenue Code] Section 1042 transaction cannot be allocated to the seller and his/her family members…. John R. Wade

and his family members (Sharon Wade, Marie Wade, Taylor Wade, John R. Wade, IV and Lori Gagne) are excluded from allocations due to 1042 restrictions").

Moreover, assuming Plaintiffs met the eligibility requirements under section 3.1 of the ESOP Plan, when Plaintiffs' each ceased their employment with the Company in 2019, *see* (Doc. No. 1 at ¶¶ 148 (Wade), ¶ 8 (Sharon), ¶ 9 (Taylor), ¶ 10 (John, Jr.)), they ceased to be participants in the ESOP as of December 31, 2019 and, because Plaintiffs never received any allocations in the ESOP, they have no vested interest in the ESOP going forward.  *See* Exhibit A, to Doc. No. 47 (ESOP Plan, § 6.3) ("a Participant who has no vested interest shall be deemed to have received a complete distribution of his or her vested interest as of the last day of the Plan Year in which the Participant terminates employment"); § 2.37 ("*Plan Year* means the twelve-month period beginning each January 1 and ending each December 31.") (emphasis in original).

As a result, Plaintiffs are not participants in the ESOP at least as of December 31, 2019, and cannot now bring ERISA claims on the basis that they are participants in the ESOP.[8]  Counts IV and V must be dismissed. *See, e.g., Nahigian v. Leonard*, 233 F. Supp. 2d 151, 169 (D. Mass. Nov. 22, 2002) (dismissing, pursuant to R. 12(b)(1), plaintiffs ERISA claims because not participants in the ERISA plan at issue); *LaLonde v. Textron, Inc.*, 418 F. Supp. 2d 16, 19-22 (D. R.I. March 1, 2006) (same).

## <u>CONCLUSION</u>

For each of the reasons stated above, Plaintiffs' Complaint should be dismissed with prejudice.

---

[8] Plaintiffs are also not (and do not allege any facts suggesting they are) "beneficiaries," as defined in ERISA: "a person designated by a plan participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

Respectfully submitted,


/s/ *Nicholas B. Carter*_____
Nicholas B. Carter (BBO #561147)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel:      (617) 720-2626
Fax:      (617) 227-5777
Email:    ncarter@toddweld.com

Scott J. Stitt (0073943)
TUCKER ELLIS LLP
175 S. Third St.
Suite 520
Columbus, OH 43215
Telephone:  614.358.9717
Facsimile:  614.358.9712
E-Mail:      scott.stitt@tuckerellis.com
(*pro hac vice* application pending)

Chelsea Mikula (0086453)
Tucker Ellis LLP
950 Main Avenue
Suite 1100
Cleveland, OH 44113
Tel:          216.592.5000
Fax:          216.592.5009
E-mail:      chelsea.mikula@tuckerellis.com
(*pro hac vice* application pending)

*Attorneys for Defendant Spinnaker Trust*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2020, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


/s/ Nicholas B. Carter

*One of the Attorneys for Defendant Spinnaker Trust*