UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN R. WADE, III, SHARON WADE,<br>JOHN WADE IV and TAYLOR WADE, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Civil Action No. 20-10523 |
| TRI-WIRE EMPLOYEE STOCK OPTION<br>TRUST, SCOTT PERRY, ROBERT R. NEWELL,<br>ROBERT LANDRY, DAVID GESMONDI,<br>CAPITAL TRUSTEES, LLC, SPINNAKER<br>TRUST, ROBERT GOULD, JEANINE<br>PENDERGAST, EMPIRE VALUATION<br>CONSULTANTS, LLC, SES WINDING UP<br>CORPORATION f/k/a SES ADVISORS, INC.,<br>SES ESOP STRATEGIES, LLC,<br>as successor to SES ADVISORS, INC.,<br>BELLMARK PARTNERS, LLC, JOHN MARSH,<br>LORI WENETTA, and RUBEN KLEIN, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

Defendants BellMark Partners, LLC ("BellMark") and David Gesmondi ("Gesmondi") (collectively, "Defendants") submit this memorandum of law in support of their *Motion to Dismiss* the *Complaint and Jury Demand* ("*Complaint*") filed by plaintiffs John R. Wade, III ("Wade"), Sharon Wade ("Sharon"), John Wade IV ("John Jr.") and Taylor Wade ("Taylor") (collectively, "Plaintiffs"). Despite the fact that the *Complaint* is 82 pages with 362 allegations and 25 causes of action, it fails to set forth a single viable cause of action against BellMark or Gesmondi. The *Complaint* should be dismissed for failure to meet the minimum pleading standard and for failure to state a claim upon which relief can be granted because Plaintiffs fails to allege any facts to support any of the numerous claims asserted against BellMark or Gesmondi.

1

**RELEVANT FACTS**[1]

The following facts are alleged in the *Complaint*, or set forth in "documents the authenticity of which are not disputed by the parties, official public records, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint." *Wilborn v. Walsh*, 584 F. Supp. 2d 384, 386 (D. Mass. 2008) (quoting *Watterson v. Page*, 897 F.2d 1, 3-4 (1st Cir. 1993)).[2]

This case arises from a December 30, 2016 transaction (the "Transaction") in which Wade sold 100% of his shares in TriWire Engineering Solutions, Inc. ("TriWire"), a company that he founded in 1999.[3] *Compl.* ¶¶ 7, 27, 49. The Transaction resulted in an employee stock ownership plan (the "ESOP") as the 100% owner of TriWire after the Transaction.

For purposes of this *Motion to Dismiss*, the relevant facts are simple. Gesmondi served as a director of TriWire between June 2017 and July 2019. *Id.* ¶ 16. During this time, Wade was removed from his position as TriWire's CEO. Gesmondi is also a Managing Director at BellMark. *Id.* BellMark is alleged to have "guided, counseled, and assisted" TriWire and Wade in "structuring, negotiating, and executing the ESOP Transaction." *Id.* ¶ 26. The *Complaint* further alleges that in the summer of 2016, Wade engaged BellMark as TriWire's financial advisor and to provide financial advisory services in connection with the ESOP Transaction, including, among

---

[1] Gesmondi and BellMark hereby incorporate herein by reference the facts set forth in the Board and Management Defendants' Memorandum of Law in Support of their Motion to Dismiss for Failure to State a Claim and for Lack of Subject Matter Jurisdiction. [ECF No. 46].

[2] The facts, as set forth herein, are, as they must be, taken in the light most favorable to Plaintiffs for purposes of the *Motion to Dismiss*, but are neither admitted nor denied by way of this filing by Defendants.

[3] Plaintiff Sharon is Wade's wife and was employed by TriWire until approximately May 2019. *Compl.* ¶ 8. Plaintiff Taylor is Wade's daughter and was employed by TriWire as acting Human Resources Manager until approximately May 2019. *Id.* ¶ 9. Plaintiff John Jr. is Wade's son and was employed by TriWire as Operations Manager in Brooklyn, New York, until approximately February 2019. *Id.* ¶ 10.

83036964v.2

other things:

1)      assisting TriWire to determine how to carry out the ESOP transaction;

2)      development of financial and capitalization models to illustrate the ESOP transaction structures;

3)      assisting both TriWire and Wade to meet their goals by illustrating and assessing the ESOP transaction;

4)      assisting to coordinate, prepare for, develop materials, and participate in the due diligence process;

5)      assisting TriWire with development, structuring, negotiating, and implementation of the ESOP transactions;

6)      reviewing documents and provide advice; and

7)      assisting with similar efforts to provide necessary information to financial institutions to obtain debt financing.

*Id.* ¶ 56.  The *Complaint* alleges that over the next several months, with the assistance of BellMark and Gesmondi, among others, TriWire and Wade finalized the transaction.  *Id.* ¶ 57.  Defendant Spinnaker Trust ("Spinnaker") was not the trustee for purposes of the Transaction.  Spinnaker replaced a prior trustee and took over as trustee for the ESOP on March 22, 2017.  *Id.* at ¶ 21.

### A.      Specific Allegations Against Gesmondi and BellMark.

As against Gesmondi and BellMark, the *Complaint's* allegations are conclusory, thin and lack factual detail.  Even taken as true, the factual allegations against Gesmondi and BellMark do nothing more than paint a picture of internal disagreements over the management of TriWire, and can fairly be summarized as follows:

▪      Upon the advice of Gesmondi and BellMark among others, Wade agreed, on behalf

3

of TriWire, to establish the ESOP and name Capital Trustees, LLC as trustee of the TriWire Employee Stock Ownership Trust ("ESOT") effective January 1, 2017. *Compl.* ¶ 64.

- During the time prior to the ESOP Transaction, at the end of December 2016, Gesmondi and BellMark, among others, along with their chosen professionals, performed the due diligence that they believed necessary to carry out the ESOP Transaction.  *Id.* ¶ 69.

- Gesmondi and BellMark were interviewed as part of the due diligence process. *Compl.* ¶ 73.

- BellMark, among others, closely managed the transaction closing payments. *Compl.* ¶ 181.

- Gesmondi and Wade objected to other TriWire director's behavior in early January 2018 and advised Spinnaker about it and set up an emergency board meeting to try to resolve the recent months' events.  *Compl.* ¶ 128.

- At the April 20, 2019 TriWire board meeting, Gesmondi and four other directors voted to terminate Wade "Without Cause" as the Company's CEO, President, Treasurer, and Secretary "citing nothing specific." *Compl.* ¶ 128.

- At the beginning of July 2019, Gesmondi resigned from the TriWire board of directors.  *Id.* ¶ 168.

There are no allegations against BellMark that concern any time after the Transaction closed December 31, 2016.  In fact, there are no allegations of **<u>any</u>** wrongdoing that could possibly be attributed to BellMark anywhere in the *Complaint*.  As to Gesmondi, the only allegations that concern him and any alleged wrongdoing are against "Board Defendants."  There are a number of

4

allegations directed at "Board Defendants" (*see, e.g., Compl.* ¶¶ 6, 18, 121, 127-130, 233, 236, 244-246, 253, 256, 257, 260, 261, 265-267, 295-299, 302, 310 and 321, and Counts IV, V, VII, IX, X, XI, XII, XVI, XVIII, XX), but that term is not defined anywhere in the *Complaint*.  For the purposes of this *Motion*, it is assumed that Board Defendants encompasses Gesmondi as a former member of the TriWire board of directors, but a number of the allegations directed at the Board Defendants clearly do not encompass Gesmondi due to timing (for instance, taking place after he left the board) or because they concern conduct of other board members who are not Gesmondi. The lack of specificity is just yet another example of how the *Complaint* fails to meet the minimum pleading standards set forth in *Fed. R. Civ. P.* 8.

      **B.**     **Current Litigation.**

      Plaintiffs have filed 25 causes of action against 16 different defendants. The below causes of action, that are the subject of this *Motion to Dismiss*, are alleged against BellMark and/or Gesmondi:

| Count | Cause of Action |
|---|---|
| Count I and XXII | RICO (wire fraud and theft of trade secrets) |
| Count II | Fraud |
| Count VI | Breach of Fiduciary Duty |
| Count V | Knowing Participation of Breach of Fiduciary Duty |
| Count VII | Breach of Fiduciary Duties under Common Law |
| Count VIII | Waste Mismanagement and Misappropriation of Corporate Assets |
| Count IX | Unjust Enrichment |
| Count XI | Civil Conspiracy |
| Count XII and XX | Defamation and Business Defamation |
| Count XVI | Tortious Interference |
| Count XVIII | Wrongful Termination |
| Count XIX | Deceptive Trade Practices, Chapter 93A |
| Count XXI | Conversion |

| Count XXIII | Computer and Fraud Abuse |
| Count XXIV | Negligent Misrepresentation |
| Count XXV | Intentional Interference with Prospective Economic Advantage |

For all the reasons stated herein and in the various motions filed by other Defendants, Plaintiffs' claims are without merit and should be dismissed.

## STANDARD OF REVIEW

*Federal Rule of Civil Procedure* 8(a)(2) sets forth the minimum pleading requirements. Where a complaint fails to meet such requirements, dismissal for failure to comply with Rule 8 is appropriate. *Szulik v. State St. Bank & Trust Co.*, 935 F. Supp. 2d 240, 253 (D. Mass. 2013).

Dismissal pursuant to *Fed. R. Civ. P.* 12(b)(6) is appropriate when a complaint fails to allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility requires factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court does not presume the trust of bare assertions of law. *Id.* at 681. On a motion to dismiss, the court must presume that all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Fitzgerald v. Harris*, 549 F.3d 46, 52 (1st Cir. 2008). In contrast, legal conclusions are not entitled to a presumption of truth, and a plaintiff's factual allegations must constitute "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. This Court is not required to "credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, or subjective characterization, optimistic predictions, or problematic suppositions." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir. 1993)) (internal quotations omitted).

Requiring a plaintiff to establish a plausible entitlement to relief to avoid dismissal is the only way a court can "hope to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence.'" *Twombly*, 550 U.S. at 559, quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S. Ct. 1627, 1634 (2005). If a complaint does not allege sufficient facts to set forth a plausible claim for relief on its own, a plaintiff's optimism that she will unearth evidence through discovery is "insufficient to preclude dismissal" and would "dispense with any showing of a 'reasonably founded hope' that a plaintiff would be able to make a case." *Twombly*, 550 U.S. at 561-562; quoting *Dura,* 544 U.S. at 347.

## ARGUMENT

I.   **THE *COMPLAINT* SHOULD BE DISMISSED IN ITS ENTIRETY AND AT THE OUTSET BECAUSE IT FAILS TO MEET THE MINIMUM PLEADING STANDARD.**

*Federal Rule of Civil Procedure* 8(a)(2) states that a "pleading that contains a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this requirement, the complaint must "give the defendant fair notice of the claim and its factual basis," and "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *S.E.C. v. Tambone*, 550 F.3d 106, 118 (1st Cir. 2008) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) and *Twombly*, 550 U.S. at 557). It further must afford the defendant a "meaningful opportunity to mount a defense." *Benyamin v. Comm. Med. UMass Med. Ctr., Inc.*, No. CIV.A. 11-40126-FDS, 2011 WL 2681195, at *2 (D. Mass. July 6, 2011). Where a complaint is "confused, ambiguous, vague, or otherwise unintelligible," dismissal for failure to comply with Rule 8 is appropriate. *Szulik,* 935 F. Supp. 2d at 253.

Here, the *Complaint* fails to set forth a "short and plain" statement demonstrating any entitlement to relief against BellMark or Gesmondi. Despite being 82-pages long and containing 362 paragraphs and 25 counts, the *Complaint* does not allege any facts to support the 18 claims asserted against Gesmondi or BellMark. As detailed further below, the *Complaint* only contains improperly and/or insufficiently pleaded allegations against Gesmondi and BellMark. It should be dismissed on this ground alone.

## II.    THE *COMPLAINT* FAILS TO STATE A CLAIM FOR WIRE FRAUD AND THEFT OF TRADE SECRETS (COUNTS I AND XXII) BECAUSE IT DOES NOT PLEAD THE NECESSARY ELEMENTS WITH THE REQUIRED SPECIFICITY.

Plaintiffs have asserted two RICO claims against BellMark and Gesmondi: one for wire fraud (Count I) and one for theft of trade secrets (Count XXII). The basis of Plaintiffs' wire fraud claim is that "Defendants intentionally formed and participated in a scheme or artifice to defraud Wade of his ownership and property interest in, including, among other things: (1) the Company; (2) his position as Chairman of the Board; and (3) his position as CEO by making false allegations regarding his behavior and management of the Company." *Compl.* ¶ 197. Similarly, the basis of Plaintiffs' theft of trade secrets claim is that "Defendants knowingly, willfully, maliciously, and without authorization, used third parties to download, copy, or duplicate and thereby steal and without authorization appropriate and take, Wade's and/or the Company's trade secrets." *Id.* at ¶ 334.

To state a RICO claim, "a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Efron v. Embassy Suites (P.R.), Inc.,* 223 F.3d 12, 14-15 (1st Cir. 2000).[4] "Civil RICO is an unusually

---

[4] To allege wire fraud, the plaintiff must state: (1) a scheme to defraud by means of false pretenses, (2) defendant's knowing and willful participation in the scheme with the intent to defraud, and (3)

potent weapon – the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir. 1991).  The "mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as Defendants.  In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Algeria,* 896 F.2d 645, 650 (1st Cir. 1990); *see also Wilkes v. City of Rochester*, 187 F.3d 624, 1998 WL 1085789, at *1 (1st Cir. 1998).  Courts closely scrutinize RICO claims, particularly those based on allegations of mail fraud, "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  *Efron*, 223 F.3d at 20.

The *Complaint* fails to sufficiently allege any of the required elements and is thus precisely the type of frivolous RICO case that should be dismissed at this early stage of the litigation.

**A.      The *Complaint* fails to allege an enterprise.**

The *Complaint* does not even **attempt** to allege an enterprise, a necessary element of any RICO claim.  To allege a RICO enterprise, a plaintiff must plead that the enterprise was either (1) a legal entity or (2) an association in fact.  *See* 18 U.S.C. § 1961(4).  A complaint must be dismissed if it contains "no allegations articulating how any of the [defendants] may have comprised part of an 'ongoing organization' or 'function[ed] as a continuing unit.'"  *Feinstein v. Resolution Trust Corp.*, 942 F.2d at 34, 42 n.7 (1st Cir. 1991) (*quoting United States v. Turkette*, 452 U.S. 576, 583 (1981)) (noting that the district court's decision to dismiss such a complaint was "unassailable")).  The *Complaint* is completely devoid of any reference to an "enterprise," and there are no facts alleging how such enterprise might have functioned.  Because the *Complaint* fails to plead an

---

the use of interstate wire communications in furtherance of a fraudulent scheme.  *United States v. Cassiere,* 4 F.3d 1006, 1011 (1st Cir. 1993).

9

enterprise, the RICO claims (Counts I and XXII) fail as a matter of law.

**B.    The *Complaint* also fails to allege a pattern of racketeering activity.**

The *Complaint* also fails to allege a pattern of racketeering activity, which is statutorily mandated and requires a plaintiff to show at least two predicate acts of racketeering activity, which is defined to include violations of specified federal laws.  *Efron*, 223 F.3d at 15.  To constitute a "pattern," the racketeering activities must be "related" and "amount to or pose a threat of continued criminal activity."  *Apparel Art Intern., Inc. v. Jacobson*, 967 F.2d 720, 722 (1992) (*quoting H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 239 (1989)).  To establish that a series of acts amounted to a pattern, a plaintiff must prove a series of related predicates extending over a substantial period of time – "a few weeks or months do not satisfy this requirement."  *Efron*, 223 F.3d at 15.  A pattern of racketeering activity likewise "does not encompass a single criminal event, a single criminal episode ... even if that single episode involves behavior that amounts to several crimes." *Apparel Art*, 967 F.2d at 722-23.

It is impossible based on this *Complaint* to determine any <u>pattern</u> because the underlying alleged racketeering acts themselves cannot be identified. Because the *Complaint* does not allege a <u>pattern</u>, it should be dismissed.

**C.    The *Complaint* fails to allege a predicate act.**

Beyond the lack of an enterprise or a pattern, Plaintiffs fail to plausibly allege the commission of any predicate act.  No lengthy argument is required because the *Complaint* contains no allegations of predicate acts as to BellMark or Gesmondi.  To the extent a predicate act is the theft of trade secrets (Count XXII), no trade secrets are identified in the *Complaint*, much less any trade secrets possessed by Plaintiffs.  The *Complaint* similarly fails to identify any predicate acts to support their wire fraud claim (Count I).  Because it sounds in fraud, Plaintiffs must state their

claim with particularity and must identify the specific fraudulent communications.  *N. Bridge Assocs., Inc. v. Boldt*, 274 F.3d 38, 43 (1st Cir. 2001).  The *Complaint* should be dismissed for failure to allege a predicate act.

**III.    THE *COMPLAINT* FAILS TO STATE A CLAIM FOR FRAUD AND NEGLIGENT MISREPRESENTATION (COUNTS II AND XXIV) BECAUSE IT DOES NOT MEET THE HEIGHTENED PLEADING STANDARD, IT FAILS TO PLEAD REASONABLE RELIANCE AND THE ONLY DOCUMENTS REFERENCED THAT PURPORTEDLY CONTAIN FRAUDULENT STATEMENTS ARE ABSOLUTELY PRIVILEGED.**

Counts II and XXIV of the *Complaint* attempt to state claims for fraud and negligent misrepresentation against "all Defendants," but they fail because they are not pleaded with the particularity required by *Fed. R. Civ. P.* 9(b).  The party alleging fraud must specify "(1) the allegedly fraudulent statements; (2) the identity of the speaker; (3) where and when the statements were made; and (4) why the statements were fraudulent."  *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 325 (D. Mass. 2002).  "Generally, there are three purposes behind Rule 9(b)'s particularity requirement: (1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations."  *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 170 (D. Mass. 2003) (*quoting New Eng. Data Servs., Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987)).  The heightened pleading standard applies to negligent misrepresentation claims as well as fraud.  *Plante & Moran, PLLC v. Andover Healthcare, Inc.*, No. 17-CV-10093-DJC, 2018 WL 935423, at *5 (D. Mass. Feb. 16, 2018).

**A.      Plaintiffs fail to plead with particularity as required by *Fed. R. Civ. P.* 9(b).**

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  *Fed. R. Civ. P.* 9(b).  To satisfy the heightened pleading standard, a

11

plaintiff must "specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). "Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999) (*quoting Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)).

Plaintiffs make no attempt to meet this standard. Plaintiffs aver that "Defendants intentionally, knowingly, fraudulently, and with an intent to deceive, have made false and misleading statements designed to injure Plaintiffs[.]" *Compl.* ¶ 210. But they do not identify what those statements were, when or to whom they were made, how Plaintiffs relied on them, or how Plaintiffs' reliance caused them harm. This lack of specificity is fatal. *See Alternative Sys. Concepts*, 374 F.3d at 30 (affirming dismissal where plaintiff "did not provide any details as to who allegedly uttered the misleading statements, to whom they were made, where they were made, when they occurred, and what actions they engendered"). Nor do Plaintiffs identify which of the 16 named defendants – if any – made the alleged misrepresentations. This, too, is fatal. *See Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 224 (D. Mass. 2017) (dismissing misrepresentation and fraud claims for failure to comply with Rule 9(b); "where there are multiple defendants, the specific role of each must be alleged"). Plaintiffs' conclusory allegations that "Defendants knew the representations to be false" are insufficient as well. *Hayduk*, 775 F.2d at 444-45 ("[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusory to satisfy the particularity requirement, no matter how many times such accusations are repeated.").

B.      **Plaintiffs fail to adequately allege reliance.**

To state a claim for fraud or misrepresentation, Plaintiffs must plausibly allege that they relied on false statements made by Gesmondi and BellMark.  *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 193 (1st Cir. 1996) ("[T]o state a claim for fraudulent misrepresentation, the plaintiff must allege … that the plaintiffs reasonably relied on the statement"); *Edlow v. RBW, LLC*, 688 F.3d 26, 36 (1st Cir. 2012) ("[A] negligent misrepresentation plaintiff must prove … their justifiable reliance upon the information." (quotation mark omitted)).  Further, a plaintiff cannot merely aver that he relied where the record or allegations show otherwise.  *See Rodi v. S. New Eng. Sch. of Law*, 532 F.3d 11, 16 (1st Cir. 2008).

Here, Plaintiffs allege in conclusory fashion that "Wade … reasonably and justifiably rel[ied] upon the foregoing material misrepresentations as true and acted upon them by agreeing to the Company's suspension as CEO."  *Compl.* ¶ 213.  But Plaintiffs' own allegations reveal that not to be true.  Rather, Plaintiffs specifically allege that Wade considered the allegations false at the time.  *Compl.* ¶ 122 (Wade "dismissed the accusations" by other Board members "knowing that the complaints were demonstrably false"), ¶ 139 (describing the investigation into "the false allegations made about Wade"), ¶ 151 ("the Board's investigation into Wade's behavior and management of the Company following the ESOP Transaction proved meritless, <u>as Wade knew it would</u>") (emphasis added).  And with respect to Wade's "suspension," Plaintiffs allege: "In a second effort to avoid long, costly litigation … Wade negotiated a compromise with Gould that would result in Wade taking a 30 day leave, voiding Hryshko's invalid appointment, and bringing on two additional independent Board members to investigate whatever these unknown claims."  *Compl.* ¶ 140.  Thus, by his own allegations, Wade did not believe any statements when made, and he did not rely on any statements in agreeing to take leave – he negotiated a compromise in an

effort to avoid litigation.[5]  Thus, Wade's conclusory allegation of reliance is insufficient to support his claim for fraud and misrepresentation.[6]  As for the other Plaintiffs, the *Complaint* is entirely devoid of any allegations of reliance on any statement by these Defendants or anyone else for that matter.

### C.    The demand letters sent to Wade are protected by the litigation privilege.

Plaintiffs' only meager effort to "specify the who, what, where, and when" of the alleged misrepresentations is to allege that the "false allegations … are detailed in the e-mails attached to this *Complaint* as Exhibits 13, 15 and 16."  *Compl.* ¶ 211.  In addition to not making sense because the letters came after Wade's suspension, the letters cannot support Plaintiffs' fraud claims because they are protected by the litigation privilege.

"[S]tatements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding." *Sriberg v. Raymond*, 370 Mass. 105, 108 (1976); *see also Hollis v. JPMorgan Chase Bank, N.A.*, 2014 WL 12792255, at *11 (D. Mass. Dec. 10, 2014) (dismissing claims for deceit because statements made in an affidavit and answer were absolutely privileged).  The privilege extends to "conferences and other communications preliminary to litigation."  *Sriberg*, 370 Mass. at 109.

---

[5] Moreover, Wade's timeline is off and completely undermines his claims.  Wade alleges that he relied on the letters attached as Exhibits 15 and 16 to the *Complaint* and was thereby defrauded in accepting his suspension in February 2019, *Compl.* ¶¶ 144, 213, yet the letters at issue were not sent until April and August 2019, so Wade could not possibly have relied on them in the manner alleged.  *Compl.* Exh. 15, 16.

[6] In support of their misrepresentation claim, Plaintiffs also allege that "the Second Trustee and other members of the Board justifiably relied upon Defendants' false representations."  *Compl.* ¶ 354.  To the extent "other members of the Board" is intended to refer to Wade, as noted above Plaintiffs' own allegations show that Wade did not rely on any statements.  Further, any reliance by third parties is irrelevant – Plaintiffs "must prove ... **their** justifiable reliance."  *Edlow*, 688 F.3d at 36 (emphasis added).

In *Visnick v. Caulfield*, 73 Mass. App. Ct. 809 (2009), the Massachusetts Appeals Court reversed the denial of a motion for summary judgment in analogous circumstances.  There, the defendant sent a letter stating that she intended to file charges with the EEOC and MCAD and "pursue formal legal action" if her demands were not met.  *Id.* at 812.  The court held that the litigation privilege "extends to circumstances where the statements are made preliminary to a proposed or contemplated judicial proceeding as long as they bear some relation to the proceeding."  *Id.*  The letter was absolutely privileged because it "clearly contained statements made preliminary to a contemplated judicial proceeding."  *Id.*

Exhibits 15 and 16, the only letters relevant to Gesmondi as a member of the Special Committee of the Board, are demand letters sent to Wade's counsel by counsel to the Special Committee (*Compl.* Exhs. 15 and 16) and/or counsel to Spinnaker (*Compl.* Exh. 16).[7]  Like the letter in *Visnick*, these letters make "a money demand": "Mr. Wade owes … at least $1,412,611.88….  Mr. Wade must, consistent with his fiduciary duties to the Company and its shareholder, repay such debts immediately."  *Compl.* Exh. 15 at 1.  And, "[i]n light of the foregoing, the Special Committee and Spinnaker demand that Mr. Wade immediately … fully reimburse the Company and the ESOP, in cash, for the full amount of the damages noted above - $18,296,125…."  *Compl.* Exh. 16 at 2.  And like the *Visnick* letter, these letters contemplate the commencement of judicial proceedings: "Should Mr. Wade fail to take such actions, the Special Committee is prepared to recommend to the Board … claims against Mr. Wade …"  *Compl.* Exh. 15 at 6.  And, "[i]f Mr. Wade refuses, the Special Committee (on behalf of the Company) and

---

[7] Exhibit 13 is a letter sent only by counsel to Spinnaker, so it cannot form the basis for any claims against Gesmondi.

Spinnaker will take all necessary legal action against him."  As such, Exhibits 15 and 16 are absolutely privileged and cannot form the basis for any claims against Gesmondi.[8]

For these reasons, Counts II and XXIV fail to state a claim and should be dismissed.

## IV.   THE ERISA CLAIMS AGAINST GESMONDI (COUNTS IV AND V) SHOULD BE DISMISSED BECAUSE THE PLAINTIFFS ARE NOT PARTICIPANTS IN THE TRIWIRE ESOP.[9]

Count IV is styled as a breach of ERISA fiduciary duties owed to Plaintiffs by the TriWire board of directors, including Gesmondi, by virtue of their duties to the ESOP and Plaintiffs' alleged status as "ESOP participants and beneficiaries[.]"  *Compl.* ¶¶ 224-225.  In the context of Count IV, it appears that the board of directors only applies to current directors, which Gesmondi is not. Similarly, Count V alleges that the board of directors knew of and assisted Spinnaker's alleged breaches of ERISA duties, causing harm to the ESOP.  *Compl.* ¶¶ 234-235.  These claims fail as a matter of law for another reason, however, because Plaintiffs are not participants in the ESOP or beneficiaries of the participants, and thus lack standing to assert ERISA claims in the first place.

ESOP "participants" are "employees in, or reasonably expected to be in, currently covered employment, or former employees who have . . . a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-118 (1989) (citations and internal quotations omitted); *Crawford v. Lamantia*, 34 F.3d 28, 32-33 (1st Cir. 1994) (former employee with no prospect of returning to employment and no claim to vested benefits lacked standing).  Here, Plaintiffs are neither current

---

[8]  It also bears pointing out that Gesmondi resigned from the Board in early July 2019, approximately a month before the August 2, 2019 letter.  Thus, that correspondence was not sent on his behalf.

[9] These claims should be dismissed pursuant to *Fed. R. Civ. P.* 12(b)(1), as the Court lacks subject matter jurisdiction.

employees in covered employment, nor former employees with a claim to vested benefits.  As such, they are not participants and lack standing to bring claims under ERISA.

Section 3.1 of the TriWire ESOP Plan sets forth the requirements for initial eligibility for participation in the ESOP.  *See* Exhibit A, § 3.1 (TriWire Employee Stock Ownership Plan).  Assuming, *arguendo*, that as employees of TriWire, Plaintiffs met those requirements, Wade's election under Section 1042 nevertheless meant that no Plaintiff ever received any allocation of Company stock in the ESOP.  Indeed, where stock is transferred to an ESOP pursuant to Section 1042, like Wade elected to do here, shares of the ESOP *cannot* be (and here were not) allocated to the seller or certain relatives of the seller (including spouse and lineal descendants, *i.e.*, all Plaintiffs). *See* 26 U.S.C. §1042; 26 U.S.C. § 409(n) (excluding from participating in an ESOP the taxpayer who sold shares to the ESOP and "any individual who is related to the taxpayer" who elects § 1042 treatment); 26 U.S.C. §§ 267(b), (c)(4) (defining "any individual who is related to the taxpayer" to include spouse (Sharon) and lineal descendants (Taylor and John, Jr.)); *Treas. Reg.* §1.1042-IT A-2(3); Exhibit A, § 5.8; Exhibit B (TriWire Employee Stock Ownership Plan Annual Allocation Report, as of December 31, 2016, at 5) ("Shares acquired by the Plan in an [Internal Revenue Code] Section 1042 transaction cannot be allocated to the seller and his/her family members…. John R. Wade and his family members (Sharon Wade, Marie Wade, Taylor Wade, John R. Wade, IV and Lori Gagne) are excluded from allocations due to 1042 restrictions").

Moreover, even assuming Plaintiffs met the eligibility requirements under section 3.1 of the ESOP, when Plaintiffs each ceased their employment with TriWire in 2019, *see* Compl. ¶¶ 148 (Wade), ¶ 8 (Sharon), ¶ 9 (Taylor), ¶ 10 (John, Jr.), they ceased to be participants in the ESOP as of December 31, 2019 and, because Plaintiffs never received any allocations in the ESOP, they have no vested interest in the ESOP going forward.  *See* Exhibit, § 6.3) ("a Participant who has no

17

vested interest shall be deemed to have received a complete distribution of his or her vested interest

as of the last day of the Plan Year in which the Participant terminates employment"); § 2.37 ("*Plan*

*Year* means the twelve-month period beginning each January 1 and ending each December 31.")

(emphasis in original).

As a result, Plaintiffs are not participants in the ESOP at least as of December 31, 2019,

and cannot now bring ERISA claims on the basis that they are participants in the ESOP.[10]  Counts

IV and V must therefore be dismissed against Gesmondi.  *See, e.g., Nahigian v. Leonard*, 233 F.

Supp. 2d 151, 169 (D. Mass. 2002) (dismissing, pursuant to R. 12(b)(1), plaintiffs' ERISA claims

because not participants in the ERISA plan at issue); *LaLonde v. Textron, Inc.*, 418 F. Supp. 2d

16, 19-22 (D.R.I. 2006) (same).[11]

## V.     THE COMMON LAW BREACH OF FIDUCIARY DUTY CLAIM (COUNT VII) SHOULD BE DISMISSED BECAUSE GESMONDI DID NOT OWE PLAINTIFFS ANY FIDUCIARY DUTIES, DEPRIVING PLAINTIFFS OF STANDING.

"To establish a breach of fiduciary duty, there must be a duty owed to the plaintiff by the

defendant and injury to the plaintiff proximately caused by the breach."  *Estate of Moulton v.*

*Puopolo*, 467 Mass. 478, 492 (2014) (*citing Zimmerman v. Bogoff*, 402 Mass. 650, 660 (1988));

*see also Keros v. Mass. Mut. Life Ins. Co.*, 958 F. Supp. 2d 306, 310 (D. Mass. 2013).  As a director

---

[10] Plaintiffs are also not (and do not allege any facts suggesting they are) "beneficiaries," as defined in ERISA: "a person designated by a plan participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

[11] Moreover, even if Plaintiffs did have standing to bring ERISA claims against the Board and Management Defendants, those claims fail to state a claim because Plaintiffs fail adequately to allege loss to the ESOP or misuse of plan assets by the Board and Management Defendants. *See, e.g.*, 29 U.S.C. § 1109(a) (recovery under ERISA for breach of fiduciary duty is limited to "any losses to the plan resulting from such breach, and . . . any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary").  At best, the *Complaint* contains inadequate conclusory allegations of loss. *See, e.g.,* ¶¶ 126, 227, 235.  But Plaintiffs fail to plead any facts in support of those conclusory allegations and fail to plead facts establishing that any particular defendant, including Gesmondi, actually caused any particular loss to the ESOP.

18

of TriWire, Gesmondi owed fiduciary duties only to TriWire. Plaintiffs variously allege themselves to be a former director, former officer, former employees, participants in the ESOP (which they are not), and a creditor. *Compl.* ¶¶ 7-10, ¶¶ 82-91, Exh. 6 (Series B Note), Exh. 7 (Series A Note). Regardless of which of these may be accurate, none would create fiduciary duty owed to Plaintiffs by Gesmondi. Count VII therefore fails to state a claim and should be dismissed.

A director such as Gesmondi owes fiduciary duties **_only_** to TriWire. *See, e.g., Int'l Brotherhood of Elec. Workers Local No. 129 Benefit Fund v. Tucci*, 476 Mass. 553, 561 (2017) ("the general rule of Massachusetts corporate law is that a director of a Massachusetts corporation owes a fiduciary duty to the corporation itself, and not its shareholders"); *see also Jernberg v. Mann*, 358 F.3d 121, 135 (1st Cir. 2004). While clearly board members owe fiduciary duties to TriWire and, derivatively, its shareholder (the ESOP Trust), Plaintiffs are not shareholders or beneficiaries of the ESOP Trust. *See supra.*

Moreover, there is no authority for the notion that officers or directors of a Massachusetts Corporation owe any fiduciary duties to fellow officers and directors. As such, Wade lacks standing to assert a claim for breach of fiduciary duty in his capacity as a former officer or director of TriWire.

Similarly, Gesmondi does not owe fiduciary duties to TriWire's employees. *See Estate of Moulton*, 467 Mass. at 492 ("as [plaintiff's] employer, the director defendants, acting as a board, had no fiduciary duty to her"). Indeed, not even TriWire itself owes any fiduciary duties to its employees. *See id.* ("an employer generally does not owe a fiduciary duty to an employee").

With respect to Wade's capacity as a creditor of TriWire, a director of a solvent corporation like TriWire does not owe creditors any duties beyond those set forth in the relevant contractual agreements. *In re Romano*, 353 B.R. 738, 760 (D. Mass. 2006) (explaining that under

19

Massachusetts law, "corporate officers and directors owe duties to the corporation's creditors <u>when the corporation is insolvent</u>" but not before) (emphasis added); *Nisselson v. Lernout*, 568 F. Supp. 2d 137, 147 (D. Mass. 2008) (explaining that under Delaware law, "directors do not owe creditors duties beyond the relevant contractual terms").

Finally, to the extent Plaintiffs seek to bring a claim for breach of fiduciary duties owed by Gesmondi to TriWire, only TriWire or its shareholders (derivatively) could bring such a claim. *Jernberg*, 358 F.3d at 135. Plaintiffs are not participants in the ESOP Trust (which is the shareholder), *see supra* pp. 16-18, and in any event failed to make the demand required to assert any such claims derivatively. *See Fed. R. Civ. P.* 23.1.

## VI. PLAINTIFFS' CLAIMS FOR WASTE, MISMANAGEMENT AND MISAPPROPRIATION (COUNT VIII) AND UNJUST ENRICHMENT (COUNT IX) SHOULD BE DISMISSED BECAUSE ONLY TRIWIRE CAN ASSERT SUCH CLAIMS; PLAINTIFFS LACK STANDING HERE, TOO.

Count VIII for "Waste, Mismanagement and Misappropriation of Corporate Assets against Gesmondi," fails because only TriWire or its shareholders (derivatively) could pursue such a claim. *See Symmons v. O'Keeffe*, 419 Mass. 288, 299 (1995) (finding that an allegation of waste by a corporate officer and director belonged "to the corporation, not the plaintiffs" and could only be asserted "in a shareholders derivative suit"); *Mendelsohn v. Leather Mfg. Corp.*, 326 Mass. 226, 237 (1950) (finding that an allegation of misappropriation belonged to the corporation, that "the rights of a stockholder in such a situation are derivative[,] and that his remedy must be through a minority stockholders' suit brought on behalf of the corporation."). The Plaintiffs are not shareholders or participants in the ESOP, and cannot step into TriWire's shoes and pursue such a claim. *See Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005) (noting that "actions to enforce corporate rights or redress injuries to a corporation cannot be maintained by a stockholder in his own name"); *Taylor v. Moskow*, 2013 WL 5508157, at *3 (D. Mass. Oct. 1, 2013) ("[a]s a

20

general rule, 'a mere shareholder, officer, director, or member does not have standing to assert a claim on behalf of a business entity'") (*quoting Laverty v. Massad*, 661 F. Supp. 2d 55, 61 (D. Mass. 2009)).[12]

As for Count IX against Gesmondi, to "state a claim for unjust enrichment the plaintiff must demonstrate: (1) a benefit conferred on the defendant by the plaintiff, (2) an appreciation or knowledge of the benefit by the defendant, and (3) the acceptance or retention of the benefit by the defendant under circumstances which make acceptance or retention inequitable." *In re Telexfree Securities Litigation*, 389 F. Supp. 3d 101, 106 (D. Mass. 2019). In an effort to make out such a claim, Plaintiffs allege that "the Company, Board ... and Officers have been unjustly enriched at the expense of and to the detriment of Plaintiff and other Company shareholders ... as a result of the compensation and director remuneration they received while breaching their fiduciary duties." *Compl.* ¶ 253. This claim also fails because even assuming, *arguendo*, that Gesmondi's compensation was improper, only TriWire – not Plaintiffs – could assert such a claim. It is TriWire that is the party who provided the benefit (compensation) to Gesmondi, if at all, not Plaintiffs. *See In re Telexfree Securities Litigation*, 389 F. Supp. 3d at 106 (dismissing unjust enrichment claim because plaintiffs did not provide the complained-of benefit). Further, as explained above, Plaintiffs are not shareholders of TriWire or ESOP participants, and even if they were, shareholders lack standing to bring claims on behalf of TriWire, as Plaintiffs seek to do here. *See, e.g., Taylor*, 2013 WL 5508157, at *3.

Finally, even if Plaintiffs could bring the claims asserted in Counts VIII and IX derivatively as shareholders – which they cannot – Plaintiffs failed to make the requisite demand, requiring

---

[12] Moreover, the *Complaint* lacks factual allegations as to what corporate asset(s) were wasted, mismanaged or misappropriated. *See Compl.* ¶¶ 243-246. Plaintiffs' conclusory allegations to that effect do not suffice. *See Iqbal*, 556 U.S. at 678.

dismissal. *See Fed. R. Civ. P.* 23.1; *Taylor*, 2013 WL 5508157, at *4 (dismissing unjust enrichment claim that could have been asserted derivatively, but was not, where no demand was made); *ING Principal Prot. Funds Deriv. Litig.*, 369 F. Supp. 2d 163, 171 (D. Mass. 2005) (dismissing derivative state law claims for failure to make pre-suit demand.

## VII. PLAINTIFFS' CLAIM THAT GESMONDI AIDED AND ABETTED TORTIOUS CONDUCT OF SPINNAKER (COUNT X) SHOULD BE DISMISSED BECAUSE THE BREACH OF FIDUCIARY DUTY CLAIMS AGAINST SPINNAKER FAIL AS A MATTER OF LAW.

Count X of the *Complaint* alleges that the Board Defendants "knowingly participated in [Spinnaker], Gould and Pendergast's breaches of fiduciary duties or provided substantial assistance to accomplish its breach of fiduciary duties by disseminating false information and allegations concerning Wade's conduct that the Trustee subsequently relied upon to terminate Wade as the CEO of the Company and remove Wade from the Company's Board of Directors." *Compl.* ¶ 257.  However, regardless of whether Count X seeks to hold Gesmondi liable for aiding and abetting Spinnaker's alleged common law or ERISA breaches of fiduciary duty, the claim fails.

### A. To the extent that Court X is intended to assert a claim against Gesmondi for aiding and abetting the Spinnaker's alleged breach of common law fiduciary duty, it fails because it is preempted by ERISA.

"To state a claim for tortious aiding and abetting, a plaintiff must show that (1) the primary actor committed a wrongful act that causes injury; (2) the aider and abettor was aware of his role in the overall wrongful activity when he provided the assistance; and (3) the aider and abettor knowingly and substantially assisted the primary actor's wrongful act." *In re Telexfree Securities Litig.*, 360 F. Supp. 3d 46, 50 (D. Mass. 2019) (*citing In re Sharp Int'l Corp.*, 403 F.3d 43, 49–53 (2d Cir. 2005); *accord Arcidi v. Nat'l Ass'n of Gov't Employees, Inc.*, 447 Mass. 616, 623–24 (2006).  The *Complaint*, however, fails to establish an underlying breach of common law fiduciary

22

duty by Spinnaker.  That is because, for the reasons set forth in Spinnaker's Memorandum in Support of its Motion for Judgment on the Pleadings ("Spinnaker Memorandum") [ECF No. 49, pp. 5-8), ERISA preempts any common-law claims against Spinnaker (whose only role as pleaded in the *Complaint* is as Trustee of the ESOP Trust), including any claim for common law breach of fiduciary duty.  *See, e.g., Dudley Supermarket Inc. v. Transamerica Life Ins. and Annuity Co.*, 302 F.3d 1, 3 (1st Cir. 2002) (stating that there "can be no doubt that if appellants' purported state law claims in fact charged Transamerica with breach of fiduciary duty while acting as an ERISA fiduciary, ERISA would preempt completely their claims which thus would have to be asserted, if at all, under ERISA" and affirming dismissal of state law claims).  Thus, to the extent Count X seeks to hold the Board and Management Defendants liable for aiding and abetting Spinnaker's alleged common law breaches of fiduciary duty, the claim fails because the *Complaint* fails properly to plead an underlying tort.

      **B.**      **If Count X seeks to hold Gesmondi liable for aiding and abetting Spinnaker's alleged breaches of ERISA fiduciary duty, it fails because ERISA declines to impose such liability on non-fiduciaries and the Plaintiffs lack ERISA standing.**

If Plaintiffs' claim in Count X is that Gesmondi, among others, participated in Spinnaker's alleged breaches of its ERISA fiduciary duties, such a claim fails because Gesmondi is not an ERISA fiduciary *vis-à-vis* Plaintiffs (because Plaintiffs are not ESOP participants), and ERISA does not authorize suits for money damages against non-fiduciaries even where such parties knowingly participate in an ERISA fiduciary's breach of duty.  *See Mertens v. Hewitt Assoc.'s*, 508 U.S. 248 (1993); *Reich v. Rowe*, 20 F.3d 25, 26 (1st Cir. 1994) ("we find that, although ERISA may allow for some types of actions against non-fiduciaries, it does not authorize suits against non-fiduciaries charged solely with participating in a fiduciary breach").  Moreover, since Plaintiffs are not ESOP participants, they lack standing to assert claims under ERISA against

Spinnaker, further undermining this theory of liability.   *See supra* pp.16-18; *Spinnaker Memorandum* pp. 24-26 [ECF No. 49].[13]

## VIII.   THE CIVIL CONSPIRACY CLAIM (COUNT XI) SHOULD BE DISMISSED FOR FAILURE TO PLEAD ANY FACTS DEMONSTRATING THE EXISTENCE OF AN AGREEMENT.

Count XI fails to allege a civil conspiracy against Gesmondi with anything but conclusory allegations, which is insufficient.   To establish the existence of a civil conspiracy under Massachusetts law "a plaintiff must demonstrate that 'a combination of persons [acted] pursuant to an agreement to injure the plaintiff.'"   *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 415 (2002) (citing J.R. Nolan & L.J. Sartorio, *Tort Law* § 99, at 136 (2d ed. 1989)).   To satisfy this burden at the pleading stage, a plaintiff is required to allege the existence of an agreement with more than mere "labels and conclusions."   *Byrnes v. Lukes*, No. 2009-1403, 2009 WL 8500163, at *9-10 (Mass. Super. Ct. Oct. 27, 2009) (dismissing civil conspiracy claim, finding the "allegation that the defendants acted in concert is merely a 'label[] and conclusion[]' insufficient to survive a motion to dismiss"); *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 307 (D. Mass. 2017) (dismissing § 1983 conspiracy claim, stating that the "paintiffs cannot defeat a motion to dismiss based on conclusory allegations of conspiracy that are not supported by references to material facts.   The plaintiffs plead no facts to support the existence of an agreement between parties to violate their federal constitutional rights, so they fail to cross the plausibility threshold.").

In other words, "conclusory allegations of conspiracy" – precisely like those in the *Complaint* – "are insufficient to support a cause of action." *Cristo v Worcester County Sheriff's*

---

[13] Put another way, if Count X is intended to assert a claim against Gesmondi for aiding and abetting Spinnaker's breaches of ERISA fiduciary duties, it is duplicative of Count V and should be dismissed for lack of subject matter jurisdiction because Plaintiffs lack standing under ERISA. *See supra* pp. 16-18.

*Office*, 2011 WL 13262257, at *4 (Mass. Super. Ct. Dec. 14, 2011).

Here, the *Complaint* fails adequately to allege any facts that establish any agreement, instead relying only on prohibited conclusory allegations and recitals of the elements of causes of action. In the 82-page, 362 paragraph *Complaint*, the allegations of agreement or concerted action are limited to the following conclusory statements:

- <u>*Compl.* ¶ 2</u>: alleging certain defendants "engaged in a concerted campaign" to harm Wade;

- <u>*Compl.* ¶ 205</u>: alleging "Defendants intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity" and "Defendants . . . agreed to the commission of those acts to further the schemes";

- <u>*Compl.* ¶ 260</u>: alleging participation "in an actionably (sic) conspiracy via either an explicit or tacit agreement";

- <u>*Compl.* ¶ 261</u>: alleging "concerted action with the intent to accomplish an unlawful objective[.]"

Those are the only allegations of agreement or concerted action in the entire *Complaint*. Such conclusory allegations are insufficient by any standard to adequately to allege civil conspiracy. Count XI thus fails to state a claim against Gesmondi and should be dismissed.

## IX.    PLAINTIFFS' CLAIMS FOR DEFAMATION AND BUSINESS DEFAMATION (COUNTS XII AND XX) SHOULD BE DISMISSED BECAUSE THE *COMPLAINT* FAILS TO ADEQUATELY PLEAD FACTS ESTABLISHING THE PUBLICATION OF A DEFAMATORY STATEMENT.

The *Complaint* fails to state claims for defamation (Count XII) and business defamation (Count XX) against Gesmondi because there are no factual allegations that Gesmondi published any defamatory statements about any Plaintiffs to anyone. "To prove defamation, the plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community...." *Grant v. Target Corp.*, 126 F. Supp. 3d 183, 192 (D. Mass. 2015). As for the publication element, it "requires that

25

the defendant communicate the defamatory statement to a third party." *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66 (2004).[14]  To survive a motion to dismiss, the plaintiff "is required to set forth allegations in support of its defamation claim that are sufficient to give the defendant fair notice of its claim and the grounds upon which it rests." *Whyman v. Whalen*, 2018 WL 3130630, at *8 n.8 (D. Mass. June 22, 2018).  This means the complaint must "explain the essential who, what, when, and where" associated with the allegedly defamatory statement(s). *Grant*, 126 F. Supp. 3d at 193.

In *Grant*, for example, the court found that by "[m]erely alleging that unnamed … agents or employees [of the defendant] made defamatory statements about the propriety of the [p]laintiff's conduct," the plaintiff failed to satisfy this burden, and held that the plaintiff alleged "no facts from which one could reasonably infer that … [the defendant's] agents or employees published a false statement regarding the [p]laintiff, or that they did so either negligently or intentionally." *Id.* at 192-193.  The same is true here.

Rather than allege specific facts demonstrating the publication of a defamatory statement, Plaintiffs make the following vague and conclusory allegations:

- Gesmondi, among others (but not BellMark), allegedly made false and defamatory statements to others involved in the Transaction and to TriWire's clients including but not limited to statements that Wade defrauded TriWire and the ESOT and engaged in self-dealing, mismanagement of TriWire and concealed and

---

[14] "Business defamation is committed when a false and defamatory statement is communicated which prejudices the plaintiff in the conduct of its business and deters others from dealing with it." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 952 F. Supp. 884, 888 (D. Mass. 1997), *aff'd*, 142 F.3d 26 (1st Cir. 1998).  "In all other respects, the elements of a business defamation claim are those of ordinary defamation[.]"  *Id.* (*citing McAvoy v. Shufrin*, 401 Mass. 593, 597 (1987)).

misrepresented material information to inflate the value of his ownerwhip value in

TriWire.  *Compl.* ¶¶ 265,  321

The *Complaint*, however, contains no other factual allegations that might support these

vague, conclusory statements.  For example, the *Complaint* fails to identify <u>who</u> published the

allegedly false statements, <u>what</u> specifically those statements said that was false, <u>how</u> those

statements were made (orally or in writing, and if the latter, in what writing), or specifically to

<u>whom</u> or <u>when</u> the statements were made.  Merely alleging unspecified false statements were made

"to others involved in the ESOP Transaction and to the Company's clients, including Comcast" or

to "third parties" including "employees" and "customers" is simply not enough.  These are not

factual allegations; they are conclusions that lack factual support.

Counts XII and XX should also be dismissed because the *Complaint* contains absolutely

no allegations (not even the sort of conclusory allegations quoted above) that Gesmondi (or

BellMark) said or wrote anything about Plaintiffs Sharon, Taylor or John Jr..  *See generally*,

*Compl.*

In sum, the *Complaint* contains "no facts from which one could reasonably infer that …

[Defendants or their] agents or employees published a false statement regarding [Plaintiffs]…."

*Grant*, 126 F. Supp. 3d at 192-193.  Counts XII and XX  against Gesmondi should be dismissed.

**X.    PLAINTIFFS' CLAIMS FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE (COUNTS XVI AND XXV) FAIL AS A MATTER OF LAW BECAUSE PLAINTIFFS FAIL TO ALLEGE ACTUAL MALICE OR A SPECIFIC <u>PROSPECTIVE BUSINESS RELATIONSHIP</u>.**

To state a claim for intentional interference with contract or prospective economic

advantage, a plaintiff must prove that (1) he had an advantageous relationship with a third party

(e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly

induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.  *Lemelson v. Bloomberg LP*, 253 F. Supp. 3d 333, 341 (D. Mass. 2017), *aff'd* 903 F.3d 19 (1st Cir. 2018) (*citing Blackstone v. Cashman*, 448 Mass. 255, 260 (2007)).  Counts XVI (contract) against Gesmondi and XXV (prospective economic advantage) against all defendants, including Gesmondi and BellMark, fail because the *Complaint* fails to plead actual malice or identify a specific prospective business relationship.

### A.  Plaintiffs fail to adequately plead actual malice.

Where, as here, Gesmondi is a corporate official of TriWire (specifically a director), the Plaintiffs have the added burden of showing that "actual malice" – which is defined as "spiteful, malignant purposes, unrelated to the legitimate corporate interest" – was the controlling factor in the interference.  *Lashgari v. Zoll Med.*, 84 Mass. App. Ct. 1106, 2013 WL 4029211, at *2 (2013) (*quoting Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. 469, 476 (1992)); *see also Blackstone*, 448 Mass. at 266-67 (noting prior application of the actual malice requirement to "high level corporate officers" and applying the requirement to a director).

Properly alleging actual malice requires more than conclusory allegations.  *See Lashgari*, 2013 WL 4029211, at *2; *Britton v. Athenahealth, Inc.*, 31 Mass. L. Rptr. 182, 2013 WL 2181654, at *9 (Mass. Super. Ct. Jan. 18, 2007) *aff'd* 87 Mass. App. Ct. 1139, 2015 WL 4726872 (unpublished).  In *Lashgari*, the plaintiff complained that a corporate officer pressured him to work more hours, demoted him from his lead role, and placed him on a performance improvement plan but did not do so in furtherance of a legitimate corporate interest (increased productivity), but rather "with a spiteful and malignant intent." 2013 WL 4029211, at *2.  The court held that "[s]uch a statement, unsupported by any alleged facts or any reasonable inferences to draw, is conclusory

28

and speculative and, as such, is insufficient to support the plaintiff's claim." *Id.* (citing *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 636 (2008)). Similarly, in *Britton*, the plaintiff described an internal power struggle that led to her termination. 2013 WL 2181654, at *1-2. The court dismissed her claim, rejecting the allegation that the defendants interfered with her employment "by improper means, *i.e.* lies" as mere "labels and conclusions." *Id.* at *9.

Here, like the plaintiffs in *Lashgari* and *Britton*, Plaintiffs merely label as "malicious[]" actions that were "in furtherance of a legitimate corporate interest" – conducting an internal investigation, attempting to identify corporate waste, communicating with TriWire's shareholder, and ultimately terminating an officer and removing a director. Those labels are insufficient to plead actual malice. Counts XVI and XXV fail to state a claim against BellMark or Gesmondi as a matter of law and must be dismissed.

### B. Plaintiffs' claim for intentional interference with prospective economic advantage also fails because Plaintiffs fail to identify any prospective economic relationships, nor can they.

To state a claim for intentional interference with prospective economic advantage against BellMark and Gesmondi, Plaintiffs must allege that the Defendants interfered with "a business relationship or contemplated contract of economic benefit." *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 48 (1st Cir. 2002) (affirming summary judgment where plaintiff only "speculate[d] about future business relationships"); *Malden Transp., Inc. v. Uber Techs., Inc.*, 286 F. Supp. 3d 264, 282 (D. Mass. 2017) (allegation that "every individual seeking a ride-hailing service in the city" was a potential customer "lack[ed] the specificity required to survive a motion to dismiss"); *Hallal v. Vicis Capital Master Fund Ltd.*, No. 12–10166–NMG, 2013 WL 1192384, at *21 (D. Mass. Feb. 25, 2013) (recommending dismissal of interference claim alleging only a general "relationship with a multitude of third party businesses") (quotation marks omitted).

Here, Plaintiffs only allege that Defendants interfered with Wade's undefined "prospective contractual relationships" or "prospective contracts." *Compl.* ¶¶ 358-59. The closest Plaintiffs come to supporting these bald statements is to allege that certain "statements have irreparably injured Wade's once sterling reputation in the cable industry … and have adversely affected Wade's ability to earn a living." *Id.* ¶ 188. That allegation is even less specific than the "multitude of third party businesses" alleged in *Hallal* or the unnamed ride-hailing customers in *Malden Transp.*, and do not support Plaintiffs' claim.

Nor could Plaintiffs make such a claim. Wade was an officer and director of TriWire, and any business relationships he developed "in the cable industry" were corporate opportunities that belonged to TriWire, not Wade personally. *See In re Cumberland Farms, Inc.*, 284 F.3d 216, 228 (1st Cir. 2002) ("[T]he corporate opportunity doctrine ... prohibits a director from taking, for personal benefit, an opportunity or advantage that belongs to the corporation.").

For these reasons, Counts XVI and XXV fail to state a claim against BellMark and Gesmondi and should be dismissed.

## XI.   PLAINTIFFS' CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (COUNT XVIII) SHOULD BE DISMISSED BECAUSE GESMONDI WAS NOT THEIR EMPLOYER AND PLAINTIFFS WERE AT-WILL EMPLOYEES AND THE PUBLIC POLICY EXCEPTION IS <u>INAPPLICABLE</u>.

In Count XVIII of the *Complaint*, Plaintiffs allege that they were wrongfully terminated by Gesmondi in violation of public policy. *Compl.* ¶¶ 309-313. This Count fails because Gesmondi did not employ the Plaintiffs and further, even if he did, the *Complaint* fails to allege any plausible exception to the employment at-will doctrine that would give rise to a wrongful termination claim. The general rule is that employment at-will can be terminated for any reason, at any time without notice. *Wright*, 412 Mass. at 472. There is a narrow exception where employment is terminated

contrary to public policy (e.g., for asserting a legally guaranteed right such as filing a workers' compensation claim, for doing what the law requires such as serving on a jury or refusing to do what is forbidden by law such as committing perjury). *Id.* The public policy exception is, however, is a "narrow exception" to the at-will rule. *Acher v. Fujitsu Network Commc'ns, Inc.*, 354 F. Supp. 2d 26, 29 (D. Mass. 2005). Indeed, "to do otherwise would convert the general rule ... into a rule that requires just cause to terminate an at-will employee." *Id.*

As a preliminary matter, any wrongful termination claim fails because Plaintiffs were not (and do not allege that they were) employed by Gesmondi. Even if they were, the Plaintiffs were all at-will employees, and thus could be terminated for any reason not prohibited by law.[15] The *Complaint* fails to allege that their terminations were contrary to any well-defined public policy,[16] and therefore they do not fall within that narrow exception to the at-will employment doctrine. As such, Plaintiffs' claim for wrongful termination in violation of public policy fails to state a claim against Gesmondi and should be dismissed.

## XII. PLAINTIFFS' CHAPTER 93A CLAIM (COUNT XIX) FAILS BECAUSE CHAPTER 93A DOES NOT APPLY TO INTRA-CORPORATE DISPUTES.

Count XIX purports to state a claim for violation of Chapter 93A against all 16 defendants on the basis that they allegedly engaged in fraud, breach of contract, conspiracy and negligence, which constitute unfair and deceptive trade practices as defined in Chapter 93A. *See Compl.* ¶¶

---

[15] Exhibit 11 to the *Complaint* is Wade's at-will Employment Agreement. There are no allegations in the *Complaint* that Sharon, Taylor and John Jr. were anything other than at-will employees.

[16] Wade's scattershot theory appears to be that he was terminated because he (i) "confronted Marsh about ongoing sexual harassment accusations," (ii) "confronted . . . Perry and Newell about personal conflicts of interest that had arisen between each of them and the Company," (iii) this resulted in "ongoing hostility," and (iv) others on the Board resisted certain reforms Wade sought to impose within TriWire. *Compl.* ¶¶ 302-306. None of this, however, even remotely suggests that Wade was terminated for exercising a "legally guaranteed right" or "for doing what the law requires" or "for refusing to do that which the law forbids." *Wright*, 412 Mass. at 472–73.

314-319.    Chapter 93A provides that "[u]nfair methods of competition and unfair or deceptive

acts or practices in the conduct of any trade or commerce are . . . unlawful." *Mass. Gen. Laws* ch.

93A, § 2.  In determining whether a 93A violation has occurred, courts consider "(1) whether the

practice is within at least the penumbra of some common-law, statutory, or other established

concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3)

whether it causes substantial injury to consumers."  *Mass. Eye & Ear Infirmary v. QLT*

*Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005).  The *Complaint* claims a violation

under section 11 of Chapter 93A, which only creates a cause of action if both parties were engaged

in "trade or commerce" when they took part in the transactions giving rise to the suit.  *See Mass.*

*Gen. Laws* ch. 93A, § 11; *see also Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 23 &

n.33, 679 N.E.2d 191 (1997).

        Plaintiffs' Chapter 93A claim fails for many reasons.  First, it fails to satisfy the minimum

pleading standards of *Fed. R. Civ. P.* 8(a)(2).  The *Complaint* only contains a conclusory statement

that the Plaintiffs and all of the 16 named Defendants were "engaged in the conduct of a trade or

commerce." *Compl.* ¶¶ 315, 316.  There are no specific allegations to establish that Gesmondi or

BellMark are engaged in the conduct of trade or commerce.   As to Gesmondi, the meager

allegations in the *Complaint* that concern him relate to his status as a director of TriWire and thus

fail because intra-enterprise disputes are not actionable.[17]  This does not constitute fair notice of

---

[17]  Massachusetts courts have narrowed the scope of Chapter 93A by interpreting "trade or commerce" to exclude strictly private transactions, where the undertaking is not "in the ordinary course of a trade or business."  *Lantner v. Carson*, 374 Mass. 606, 608, 373 N.E.2d 973 (1978). Intra-enterprise disputes are exempted because they are more similar to purely private disputes and that are not "commercial transaction[s] ... in the sense required by c. 93A."  *Szalla v. Locke*, 421 Mass. 448, 452, 657 N.E.2d 1267 (1995); *see also Psy-Ed Corp. v. Klein*, 459 Mass. 697, 720 (2011) (affirming judgment against former executive on Ch. 93A claims where "the dispute arose out of a private transaction between the … board and … a former employee and shareholder of the company").

Plaintiffs' claim and its factual basis and undoubtedly does not possess enough heft to show that Plaintiffs are entitled to relief.  Accordingly, this claim should be dismissed for failure to comply with *Fed. R. Civ. P.* 8(a)(2).

Second, the Chapter 93A claim fails to specifically allege which of the *Complaint's* many allegations supposedly constitute unfair and deceptive trade practices on the part of Gesmondi and BellMark, and further fails to allege how the actions or inactions of Gesmondi and BellMark caused actual monetary damages.  Moreover, to the extent that "[t]he common law fraud, breach of contract, conspiracy and negligence engaged in by each and every Defendant, as described herein," *Compl.* ¶ 317, form the basis of the Chapter 93A claim, the claim fails because Plaintiffs have failed adequately to plead any of those causes of action.  Where each claim on which the 93A claim is based fails, so, too, does the 93A claim.  *Pembroke Country Club v. Regency Sav. Bank, FSB*, 62 Mass. App. Ct. 34 (2004) (holding where 93A claim is wholly derivative of other claims that failed as matter of law, there is no 93A violation); *see also FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 108 (1st Cir. 2009) ("Plaintiffs' chapter 93A claim is based wholly on [their] common-law claims.  Because these underlying claims fail, it is clear that plaintiffs have not shown the conduct complained of fell within any common-law, statutory, or other established concept of unfairness," and so their Chapter 93A claims likewise fail.)

Here, Plaintiffs' Chapter 93A claim refers to the conduct "described herein" and thus does not set forth any basis for a 93A claim outside the other claims contained in the *Complaint.* Therefore, as each of the other claims against Gesmondi and BellMark must be dismissed, so should Count XIX.

33

### XIII.   PLAINTIFFS' CONVERSION CLAIM FAILS AS NO PERSONAL PROPERTY RIGHTS ARE ALLEGED TO BE WRONGED.

Count XXI of the *Complaint* attempts to set forth a cause of action for conversion against Gesmondi based on the allegation that Defendants "caused Wade to be stripped of his rights to control the Company" and that such acts were "in denial of, or inconsistent with Wade's title or rights therein or in derogation, exclusion or defiance of such title or rights."  *Compl.* ¶¶ 329-30. This claim fails because the *Complaint* does not have any allegations regarding what personal property that Defendants allegedly converted from Wade.

In Massachusetts, the "elements of conversion require that a defendant be proved to have 'intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . .'" *Grand Pac. Fin. Corp. v. Brauer*, 57 Mass. App. Ct. 407, 412 (2003) *(quoting Abington Nat'l Bank v. Ashwood Homes, Inc.*, 19 Mass. App. Ct. 503, 507 (1985)).  Plaintiffs complain that Wade was denied his right to "control the Company[,]" (*Compl.* at ¶ 329), the implication being that the denial was effectuated by the termination of his employment and/or his removal from the Board.  An individual, however, does not have a property interest in at-will employment.  *See, e.g., Costello v. Sch. Comm. of Chelsea*, 27 Mass. App. Ct. 822, 828 (1989) ("[A]s the plaintiff has no legitimate claim of entitlement to continued employment, the severance of his employment relationship does not constitute a deprivation of a property interest, and thus no claim can be made that property has been taken without due process.").  Count XXI fails to state a claim for conversion against Gesmondi and should be dismissed.

## XIV.   COUNT XXIII FAILS TO STATE A CLAIM FOR VIOLATION OF THE COMPUTER AND FRAUD ABUSE ACT.

Count XXIII of the *Complaint* attempts to allege violations of the Computer Fraud & Abuse Act ("CFAA"), 18 USC §§ 1030 against BellMark and Gesmondi  The CFAA prohibits the knowing and unauthorized access of a computer, or access beyond one's authorization, for certain proscribed purposes.  *See* 18 U.S.C. § 1030(a).  While the CFAA does provide a limited private right of action, the *Complaint* fails to allege any facts to support such a claim.  *See* 18 USC 1030(g) ("A civil action for violation of this section may be brought only if the conduct involves one of the factors set forth in subclauses (I), (II), (III), (IV) or (V) of subsection (c)(4)(A)(i).").

A private action for violation of the CFAA may be brought "only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV) or (V) of subsection (c)(4)(A)(i)" – *i.e.*, 18 U.S.C. § 1030(c)(4)(A)(i)(I)-(V).  18 USC 1030(g).  Of those subsections, only the factor in subsection (c)(4)(A)(i)(I) could possibly apply here – "loss to 1 or more persons during any one year period . . . aggregating at least $5,000 in value."[18]  However, there are no facts alleged in the *Complaint* that establish that Gesmondi – or any Defendant at all – accessed any computer belonging to any Plaintiff (or otherwise), or any resulting loss to Plaintiffs.  The closest Plaintiffs come to such allegations – a vague allegation about denying Wade access to email (*Compl.* ¶ 131) – is woefully inadequate to establish any requirement under the statute.[19]  Count XXIII of the Complaint fails as a matter of law and should be dismissed.

---

[18]  The other factors relate to modification or impairment of medical care (subsection (c)(4)(A)(i)(II)), physical injury to a person (subsection (c)(4)(A)(i)(III)), a threat to public health or safety (subsection (c)(4)(A)(i)(IV)), and damage to computer used by the United States government for certain limited purposes (subsection (c)(4)(A)(i)(V)).  There are certainly no facts alleged in the *Complaint* that even remotely implicate any of these subsections.

[19] As discussed *supra*, Plaintiffs also fail to plead any facts establishing any agreement, a necessary element of conspiracy.

35

## CONCLUSION

For the foregoing reasons and for those which may be advanced at oral argument, the

*Motion to Dismiss* should be granted in its entirety and judgment should be entered in favor of

Gesmondi and BellMark.

Respectfully submitted,

BELLMARK PARTNERS, LLC and
DAVID GESMONDI

By their Attorneys,

/s/ Joseph A. Farside, Jr.
Joseph A. Farside, Jr. (#667187)
Krystle G. Tadesse (BBO # 673899)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903-2499
401.274.9200
401.276.6611 (fax)
joseph.farside@lockelord.com
krystle.tadesse@lockelord.com

Date: June 15, 2020

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 15th day of June, 2020, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be mailed to those indicated as non-registered participants following service.

/s/ Joseph A. Farside, Jr.

36

83036964v.2