# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN R. WADE, III, SHARON WADE, JOHN WADE IV, and TAYLOR WADE, <br><br> Plaintiffs, <br><br> v. <br><br> TRI-WIRE EMPLOYEE STOCK OPTION TRUST, SCOTT PERRY, ROBERT R. NEWELL, ROBERT LANDRY, DAVID GESMONDI, CAPITAL TRUSTEES, LLC, SPINNAKER TRUST, ROBERT GOULD, JEANINE PENDERGAST, EMPIRE VALUATION CONSULTANTS, LLC, SES WINDING UP CORPORATION f/k/a SES ADVISORS, INC., SES ESOP STRATEGIES, LLC, as successor to SES ADVISORS, INC., BELLMARK PARTNERS, LLC, JOHN MARSH, LORI WENETTA, and RUBEN KLEIN, <br> Defendants. | Civil Action No. 1:20-cv-10523-DLC |

## MEMORANDUM OF LAW IN SUPPORT OF
## TRI-WIRE ENGINEERING SOLUTIONS, INC.'S MOTION TO INTERVENE

Tri-Wire Engineering Solutions, Inc. ("Tri-Wire" or the "Company") moves to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2), in that it has an interest in the transaction that is the subject of the Counterclaims asserted by Defendant/Plaintiff-in-Counterclaim Spinnaker Trust ("Spinnaker") against Plaintiff/Defendant-in-Counterclaim John Wade ("Wade").[1] Tri-Wire intends to assert claims against Wade that are parallel to the claims asserted by Spinnaker, but which arise out of a separate and distinct contract to which the ESOP Trust is not a party and which therefore Spinnaker cannot sue to enforce.

---

[1] Spinnaker asserts Counterclaims against Wade in its capacity as the trustee of the Tri-Wire Employee Stock Ownership Trust (the "ESOP Trust"), which is the sole shareholder of the Company.

In addition, Tri-Wire has a strong interest in the Counterclaims asserted by Spinnaker, because the outcome of those Counterclaims impacts Tri-Wire's ability to address damage caused to it as a result of Wade's fraud and misrepresentations in connection with the transaction at issue.

Spinnaker's counterclaims against Wade arise out of, *inter alia*, breaches of a December 30, 2016 Stock Purchase Agreement between Wade and the ESOP Trust, pursuant to which the ESOP Trust purchased 820,000 shares of Company stock from Wade for $20,500,000 cash.  Tri-Wire's claims against Wade arise out of, *inter alia*, breaches of a separate Stock Redemption Agreement of the same date between Wade and the Company pursuant to which the Company redeemed 700,000 shares of Company stock in exchange for notes in the amount of $17,500,000. In reliance on the representations made in the foregoing agreements, Tri-Wire borrowed the $20.5 million to finance the ESOP Trust's purchase of shares in the Transaction. Thus, disposing of Spinnaker's Counterclaims without permitting the Company to intervene in this action may as a practical matter impair or impede the Company's ability to protect its interests, and Spinnaker does not adequately represent the Company's interests in that it cannot sue to enforce the Stock Redemption Agreement and may not be permitted to reform or avoid the Company's obligations under its various loan agreements pursuant to which it financed the ESOP transaction.

Alternatively, the Company should be permitted to intervene pursuant to Rule 24(b)(2), in that its claims share common questions of law and fact with Spinnaker's Counterclaims.

## RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A.    Summary of Plaintiffs' Claims.

On March 16, 2020, Wade filed the instant action, along with his wife and two adult children (the "Family Member Plaintiffs" and together with Wade, "Plaintiffs").  *See* Dkt. No. 1 ("Compl.").  Wade was formerly the Company's sole shareholder, Chief Executive Officer, and

Chairman of its Board of Directors.  Compl. ¶¶ 7.  The Family Member Plaintiffs are each former employees of the Company.  Compl. ¶¶ 8-10.

Plaintiffs' Complaint alleges twenty-five causes of action against sixteen different defendants, and generally relates to two subjects:  First, the Complaint relates to the circumstances surrounding the December 30, 2016 transaction in which Wade sold or redeemed all 1,520,000 issued and outstanding shares of the Company, in two inter-related transactions (together, the "Transaction").  Compl. ¶¶ 52-100.  As part of the Transaction, pursuant to a Stock Purchase Agreement between Wade and the ESOP Trust, Wade sold 820,000 shares of Tri-Wire stock to the newly-created ESOP Trust for $25.00 per share, or $20,500,000 cash.  Compl. ¶¶ 89-95, Exh. 10 (Stock Purchase Agreement).  The cash paid pursuant to the Stock Purchase Agreement was funded by loans taken by the Company from J.P. Morgan Chase Bank, N.A. ("J.P. Morgan") and Massachusetts Capital Resources Company ("MCRC").  Compl. ¶ 90; Proposed Complaint ¶ 37.

Separately, pursuant to a Stock Redemption Agreement between Wade and the Company, Wade redeemed 700,000 shares of Tri-Wire stock to the Company, also in exchange for $25.00 per share, or $17,500,000.  Compl. ¶¶ 79-80, 92-95, Exh. 5 (Stock Redemption Agreement).  The effect of the Transaction was to leave the ESOP Trust as the sole shareholder of the Company. Compl. ¶¶ 79-80, 89-91, Exh 5 (Stock Redemption Agreement), Exh. 10 (Stock Purchase Agreement).

Wade walked away from the Transaction with $20,500,000 in cash, and Subordinated Notes from the Company in the total amount of $17,500,000.  Compl. ¶¶ 79-80, 89-91, Exh 5 (Stock Redemption Agreement), Exh's 6-7 (Subordinated Notes), Exh. 10 (Stock Purchase Agreement).  In addition, the Company subsequently paid Wade interest on the Subordinated Notes in the amount of approximately $1.6 million, and a working capital adjustment in the amount

3

of approximately $1.5 million.  Compl. ¶ 95, Exh. 16 at 2.  Altogether, consideration paid by the Company and the ESOP Trust for Wade's shares exceeds $39.5 million (plus interest on the Subordinated Notes).

Second, Plaintiffs' Complaint relates to the circumstances leading up to the formation of a Special Committee of the Company's Board of Directors and the subsequent investigation of Wade by the Special Committee and Spinnaker (the ESOP Trustee).  Compl. ¶¶ 118-193.  That investigation led the Company to terminate Wade's employment as Chief Executive Officer, and caused Spinnaker to remove Wade from the Company's Board of Directors.  Compl. ¶¶ 148, 172.  The investigation further led to demands from the Company and Spinnaker for payment from Wade of over $18 million related to Wade's fraud, misrepresentations and material omissions in connection with the Transaction.  Compl. Exh's 15, 16.

According to Wade, his termination as CEO and removal from the Board were wrongful and he thus asserts myriad claims against the Company's Board and management, Spinnaker and its executives, and various advisors to the Transaction.  *See generally*, Compl.  The Family Member Plaintiffs purport to assert claims related to the alleged termination of their employment with the Company, and violations of ERISA.[2]  Compl. ¶¶ 194-362.  Plaintiffs chose not to sue the Company.  *See generally*, Compl.

On June 15, 2020, each of the defendants, except Spinnaker, moved to dismiss the claims asserted against them, for failure to state a claim and/or for lack of subject matter jurisdiction.  *See* Dkt. Nos. 45-47, 50-51, 53-55.  Spinnaker filed an Answer to the Complaint, and asserted the

---

[2] The claims in the Complaint do not itemize which Plaintiff asserts which claims.  *See generally*, Compl.  It appears, however, that the Family Member Plaintiffs assert claims related to the alleged termination of their employment and alleged breaches of ERISA fiduciary duties.

Counterclaims described below.  *See* Dkt. No. 43 ("Counterclaims").  Spinnaker also moved for judgment on the pleadings as to Plaintiffs' claims against it.  *See* Dkt. Nos. 48-49.

**B.**   **Summary of Spinnaker's Counterclaims Asserted on Behalf of the ESOP Trust.**

As noted above, on June 15, 2020, Spinnaker answered the Complaint and asserted the Counterclaims against Wade for fraud/fraudulent inducement (Count I), intentional misrepresentation (Count II), breach of Contract (the Stock Purchase Agreement, Count III), violation of M.G.L. ch. 93A (Count IV), specific performance of the indemnification provisions of the Stock Purchase Agreement (Count V), and for a declaratory judgment as to the ESOP Trust's entitlement to indemnification under the Stock Purchase Agreement and unenforceability of certain exclusive remedy provisions of the Stock Purchase Agreement (Count VI).  The gravamen of the Counterclaims is that Wade lied and/or omitted material information in connection with the Transaction, resulting in the material overvaluation of the shares of the Company that were subject of the Transaction.  *See generally*, Counterclaims.

More specifically, Spinnaker alleges that Wade exerted his unilateral control over Company information provided in connection with the Transaction, which information was relied upon by, among others, the firm hired to value the shares of the Company for purposes of the Transaction.  Counterclaims ¶¶ 17-106.  In doing so, Spinnaker alleges that Wade (a) concealed material information concerning the Company's automobile insurance policy and expense, and the possibility of material retroactive premiums being assessed against the Company after the Transaction, for pre-Transaction years, which information was not taken into account in the valuation of Tri-Wire's shares, Counterclaims ¶¶ 49-76, (b) failed to disclose his intention to create a new construction division following the Transaction, which required significant working capital not accounted for in the valuation of the Company's shares and which has resulted in losses to the

Company, Counterclaims ¶¶ 77-83, (c) intentionally concealed over $1 million in duplicate payments from the Company's largest customer, resulting in his receiving additional cash at the close of the Transaction, Counterclaims ¶¶ 84-95, (d) paid himself and others unapproved bonuses just before or immediately after the Transaction, which expenses were not disclosed and thus not taken into account in the valuation of the Company's shares, Counterclaims ¶¶ 96-98, and (e) failed to pay or disclose certain taxes and debts owed by the pre-Transaction Company, leaving the post-Transaction Company to foot the bill, Counterclaims ¶¶ 99-101.

As a result of the foregoing, it is alleged in the Counterclaims, *inter alia*, that the ESOP Trust was fraudulently induced to enter the Transaction, Counterclaims ¶¶ 119-129, and that Wade breached numerous representations in the Stock Purchase Agreement, including:

    i.      section 4.11(a), representing and warranting that the financial statements of Tri-Wire "fairly present as of the date indicated the financial condition, assets and liabilities and results of operations of the Company" and "[a]ll internally-prepared financial statements have been prepared in good faith in a matter consistent with past practice";

    ii.     section 4.11(d), representing and warranting that Tri-Wire had no undisclosed liabilities or obligations, other than those listed in Schedule 4.11(d) of the SPA;

    iii.    section 4.12, representing and warranting that the provisions made for taxes on the balance sheet "are sufficient for the payment of all accrued and unpaid federal, foreign, state, county and local takes of the Company";

    iv.    section 4.20, representing and warranting that "[a]ll such insurance premiums in respect of such coverage have been, and to the Closing Date will be paid, or if not due, properly accrued on the books of the Company as of the Closing date";

    v.    section 4.24(a), representing and warranting that between the warranty date and the date of the Transaction the Company did not incur any obligation or liability other than in the "ordinary course" of the Company's business, and that any of those obligations or liabilities would be "not materially adverse" to the Company's business; and

     vi.    section 4.32, representing that Tri-Wire's "financial projections provided to the Trustee's independent financial advisor contain no knowingly false information or material omissions and were prepared in good faith."

Counterclaims ¶¶ 136-142; Compl. Exh. 10 (Stock Purchase Agreement).  Spinnaker alleges damage to the ESOP Trust and the Company in excess of $18 million.  Counterclaims ¶¶ 102-106.

## C.   <u>Summary of Tri-Wire's Proposed Claims.</u>

As reflected in the Proposed Complaint that is attached as <u>Exhibit A</u> to the accompanying Motion to Intervene (the "Proposed Complaint"), Tri-Wire's claims emanate from the same transaction and the same set of operative facts as Spinnaker's Counterclaims.  The Company's claims against Wade are separate from the Counterclaims, however, in that the Company relied on Wade's lies and omissions to enter the Stock Redemption Agreement, and those lies and omissions are material breaches of representations made in the Stock Redemption Agreement.  (Whereas Spinnaker's claims relate to the inducement and breaches of the Stock Purchase Agreement.)

Moreover, the Company has an interest in Spinnaker's Counterclaims for breaches of the Stock Purchase Agreement, in that the Company borrowed $20.5 million to fund the Stock Purchase Agreement in reliance on Wade's misrepresentations, and any remedy on that Counterclaim should inure, at least in part, to the Company's benefit in that it will permit the Company to repay its senior debt (that it only incurred as a result of Wade's fraud).

In sum, the Company alleges in the Proposed Complaint that Wade fraudulently induced the Company to enter the Transaction, intentionally misrepresented and/or omitted information that the Company relied upon in entering the Transaction, and breached the Stock Redemption Agreement and Stock Purchase Agreement by virtue of his breaches of the various representations made in the Stock Purchase Agreement that are outlined above and incorporated into the Stock Redemption Agreement.  *See* Compl. Exh. 5 (Stock Redemption Agreement, §§ 3.7); *See generally*, Proposed Complaint.

The Company further alleges that Wade also breached the representation made in section 3.8 of the Stock Purchase Agreement, that "[n]o information, report, financial statement, exhibit or schedule prepared or furnished by or on behalf of [Wade] . . . contained or contains any material misstatement of fact, or omitted or omits to state any material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading." Proposed Complaint ¶¶ 44, 139-140; Compl. Exh. 5 (Stock Redemption Agreement, § 3.8).

Like Spinnaker, the Company alleges that Wade's lies and omissions have damaged the Company and the ESOP Trust in excess of $18 million. Proposed Complaint ¶¶ 103-107.

## **ARGUMENT**

### I.   **Tri-Wire Should be Permitted to Intervene as of Right Pursuant to Federal Rule of Civil Procedure 24(a).**

Pursuant to Federal Rule of Civil Procedure 24(a)(2) ("Rule 24(a)(2)"), "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *Id.*  To intervene as of right pursuant to Rule 24(a)(2):

> [a] putative intervenor . . . must show that (1) it timely moved to intervene; (2) it has an interest related to the property or transaction that forms the basis of the ongoing suit; (3) the disposition of the action threatens to create a practical impediment to its ability to protects (sic) its interest; and (4) no existing party adequately represents its interest.

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544-545 (1st Cir. 2006) (allowing intervention where intervenor's contract rights were implicated in existing action).

"Determining whether the necessary showings" for intervention as of right "have been made requires a series of judgment calls – a balancing of factors that arise in highly idiosyncratic

8

factual settings." *Ungar v. Arafat*, 634 F.3d 46, 51 (1st Cir. 2011). However, "the inherent imprecision of Rule 24(a)(2)'s individual elements dictates that the rule should be applied with an eye toward the commonsense view of the overall litigation." *Id.*

For the reasons described more fully below, Tri-Wire satisfies each of Rule 24(a)(2)'s requirements and should be permitted to intervene as of right.

### a. *Tri-Wire's Motion to Intervene is Timely.*

The first requirement – that the movant's application be timely – is not subject to a "bright-line rule." *Langone v. Flint Ink N. Am. Corp.*, 231 F.R.D. 114, 117 (D. Mass. 2005). Rather, "courts must decide the question on a case by case basis, examining the totality of the relevant circumstances." *Id.* Even so, courts generally consider the following four factors:

> (1) the length of time the [movant] . . . knew, or reasonably should
> have known, of [its] . . . interest before [it] . . . petitioned to
> intervene; (2) the prejudice to existing parties due to [the movant's]
> . . . failure to petition for intervention promptly; (3) the prejudice
> that [the movant] . . . would suffer if [it] . . . were not allowed to
> intervene; and (4) any unusual circumstances militating for or
> against intervention.

*Id.* at 117-18.

Tri-Wire's Motion to Intervene is clearly timely. It is approximately two months since the filing of the initial Complaint in this action, in which the Company was not named as a defendant, however it is only four days since Spinnaker filed its Counterclaims, which assert claims parallel to the claims outlined in the Proposed Complaint. Moreover, the Company's intervention will not prejudice any existing parties, since the action is in its infancy, motions to dismiss and for judgment on the pleadings are pending but not fully briefed, and discovery has yet to begin. *See, e.g.*, *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 308 F.R.D. 39, 46 (D. Mass. 2015) (finding motion to intervene timely where filed five months after complaint

filed, more than two months after defendant answered, and after the Court issued a Scheduling Order).

Further, Tri-Wire could suffer severe prejudice if prevented from intervening in that it would be precluded from participating in the discovery and prosecution of factual and legal issues that will necessarily be made in this action (*i.e.*, whether Wade engaged in the fraud and/or made the material misrepresentations and omissions alleged) that are necessary to both the Counterclaims and the Proposed Complaint.  Indeed, the Proposed Complaint turns on largely the same determinations as Spinnaker's Counterclaims because, for example, the various representations in the Stock Purchase Agreement that Spinnaker alleges Wade breached in the Counterclaims, are incorporated by reference into the Stock Redemption Agreement and to a large extent form the basis for the Company's claims against Wade in the Proposed Complaint.

Beyond that, as explained below, the outcome of Spinnaker's Counterclaims could impact the Company's ability to potentially avoid some portion of the debt it took on in connection with the Transaction.

In addition, if the Company were not permitted to intervene, it would have no choice but to assert its claims against Wade in a separate action, resulting in largely duplicative litigation with a risk of inconsistent results.  The Court should seek to avoid such a result.  *See, e.g., Dana-Farber Cancer Institute, Inc. v. Ono Pharma. Co., Ltd.*, 186 F. Supp. 3d 22, 24 (D. Mass., 2016) (discussing the "general principal" that courts should "avoid duplicative litigation" to, *inter alia*, "avoid the waste of duplication" and "avoid the piecemeal resolution of issues that call for a uniform result").  Similarly, any statute of limitations that applies to Tri-Wire's claims against Wade is running, so if the Company were not permitted to intervene it would be forced to assert its claims in a separate action.

For these reasons, the Company's Motion to Intervene is timely and will streamline the litigation process by avoiding the filing of a separate, but largely parallel, action.

### b.   *Tri-Wire Claims an Interest in the Transaction that is the Subject of Spinnaker's Counterclaims.*

The second requirement – that the movant have an interest relating to the property or transaction which is the subject of the action – is easily met.  While this factor is not subject to a "bright line of demarcation," *Langone*, 231 F.R.D. at 118, to satisfy the requirement "the [movant's] . . . claims must bear a sufficiently close relationship to the dispute between the original litigants, . . . and . . . the interest must be direct, not contingent."  *Id*.  "[T]hese contours are relatively broad[.]"  *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998).

Additionally, "the determination of whether an interest is sufficient for Rule 24(a)(2) purposes is colored to some extent by the third factor – "whether disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest."  *Langone*, 231 F.R.D. at 118 (quotation omitted).  Notably, Courts have held that a movant "has a sufficient interest in the subject of the litigation where [its] . . . contractual rights may be affected by a proposed remedy."  *B. Fernandez & Hnos., Inc.*, 440 F.3d at 545 (allowing intervention where intervenor's contract rights were implicated by a judgment in the on claims in underlying case); *Forest Conserv. Council v. United States Forest Serv.*, 66 F.3d 1489, 1495 (9th Cir. 1995) (reversing denial of motion to intervene, citing cases); *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987) ("an applicant has a sufficient interest to intervene . . . where the contractual rights of the applicant may be affected by a proposed remedy").  Courts have also found it to be "enough that the [movant] . . . belong[s] to a small group, quite distinct from the ordinary run of citizens, who could expect to" be impacted by the outcome of the action.  *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999).

Tri-Wire's Proposed Complaint more than meets these requirements.  Its claims against Wade largely parallel the Counterclaims asserted by Spinnaker; indeed, they are based on the same set of facts and arise from the same Transaction, although they stem from a separate contract. Therefore, Tri-Wire's proposed claims "bear a sufficiently close relationship to the dispute between the original litigants[,]" *Langone*, 231 F.R.D. at 118, and its "contractual rights may be affected" by resolution of the Counterclaims, *B. Fernandez & Hnos., Inc.*, 440 F.3d at 545.

Additionally, as explained below, disposition of the Counterclaims without Tri-Wire's involvement could impair its ability to protect its contractual interests vis-à-vis the debt it incurred in connection with the Transaction, and its aim to minimize that debt.

Further, Tri-Wire's interest in the action is clearly "quite distinct from [that of] the ordinary run of citizens."  *Students for Fair Admissions, Inc.*, 308 F.R.D. at 47.  Only Tri-Wire and the ESOP Trust (on behalf of the Company's employees) have an interest in prosecuting Wade's fraud and misrepresentations; the general public does not.

      **c.**     ***Denial of This Motion to Intervene Will As a Practical Matter Impair Tri-Wire's Ability to Protect Its Interests.***

The third requirement – that the movant be so situated that the disposition of the action may impair or impede its ability to protect its interests – demands that the Court consider whether the movant "would be substantially affected in a *practical sense* by the determination made in [the] . . . action." *Langone*, 231 F.R.D. at 119 (emphasis added).

Disposition of the Counterclaims could impair Tri-Wire's rights, not only as set forth in the Stock Purchase Agreement and Stock Redemption Agreement, but also as set forth in the $17.5 million Subordinated Notes and Subordinated Loan Agreement with Wade, Compl. Exh's 6-8, and with respect to the $20.5 million senior debt Tri-Wire entered with J.P. Morgan and MCRC. Compl. ¶ 90; Proposed Complaint ¶¶ 37; Counterclaims ¶ 35.  In connection with the Transaction,

the Company borrowed $15.5 million from J.P. Morgan and $5 million from MCRC, then loaned those funds to the ESOP Trust to allow its purchase of 820,000 shares of Wade's stock under the Stock Purchase Agreement. Proposed Complaint ¶¶ 35, 37; Counterclaims ¶¶ 33, 35. The outcome of Spinnaker's Counterclaims (which allege inflation of the purchase price) impacts – and potentially impairs – Tri-Wire's interests in setting aside the portion of those loans attributable to Wade's fraud, misrepresentations and material breaches.

For example, if intervention were denied, and if Wade were to prevail on Spinnaker's Counterclaims, the Company may be precluded from pursuing relief as to the loans it incurred in connection with the Transaction, at least inasmuch as the loans were used to fund the Stock Purchase Agreement between Wade and the ESOP Trust. The Company thus has a "tangible and substantial stake in the outcome of" Spinnaker's Counterclaims. *B. Fernandez & Hnos., Inc.*, 440 F.3d at 547. On the other hand, if the Company is permitted to intervene, all relevant parties would be in the case and complete and uniform relief could be had between the Company, the ESOP Trust and Wade.

Such impairment is sufficient to warrant intervention. *See, e.g., Id.*, 440 F.3d at 545 ("This litigation could result (and preliminarily has resulted) in an order directly affecting [movant's] contractual rights. This is more than sufficient to satisfy the 'practical impediment' requirement."); *Daggett*, 172 F.3d at 110-111 (holding that the possibility that the underlying litigation could result in injunction adversely affecting intervenor's interests sufficient to satisfy Rule 24(a)(2)); *Nat. Union Fire Ins. Co. v. Rite Aid of S. Carolina, Inc.*, 210 F.3d 246, 251 (4th Cir. 2000) (parent company was necessary party in lawsuit against subsidiary, because outcome could have had more serious consequences for parent).[3]

---

[3] Practically speaking, the Transaction was contemplated and executed as a whole, with the parties playing various roles pursuant to a variety of agreements, all of which depended upon each other. Tri-Wire redeemed shares pursuant

#### d.      *Tri-Wire's Interests are Not Adequately Protected by the Existing Parties.*

The fourth requirement – that the movant's interest not be adequately represented by existing parties – requires that the Court to assess whether the "goals of the [movant] . . . are the same as those of the plaintiff or defendant" in the action. *Daggett*, 172 F.3d at 111. If so, "adequate representation is presumed[,]" *id.*, however "to overcome [this] . . . presumption, the [movant] . . . need only offer an adequate explanation as to why it is not sufficiently represented by the named party." *B. Fernandez & Hnos., Inc.*, 440 F.3d at 546. An "adequate explanation" includes that the movant's "interests are sufficiently different in kind or degree from those of the named party." *Id.* The First Circuit has "stressed the case-specific nature of this inquiry[.]." *Id.*

Here, Tri-Wire's interests are not adequately protected by Spinnaker because Spinnaker cannot enforce Tri-Wire's contractual rights against Wade, since the ESOP Trust is not party to the Stock Redemption Agreement.[4] *See* Compl. Exh. 5. Further, it is the Company that took on significant debt to finance the Transaction, which the Company seeks to minimize through its claims. *See* Compl. Exh. 1-2 (Intercreditor Agreements), Exh. 6-7 (Subordinated Notes), Exh. 8 (Subordinated Loan Agreement). Moreover, even if Spinnaker is successful on its Counterclaims, any remedy or award of damages on such claims (i) will not address the Company's damages for

---

to the Stock Redemption Agreement with Wade, in exchange for the Subordinated Notes. Counterclaims ¶¶ 30, 33-35; Proposed Complaint ¶¶ 32, 35-37. The ESOP Trust purchased shares under the Stock Purchase Agreement with Wade, using money it borrowed from the Company, which the Company in turn borrowed from and now owes to its senior lenders. Counterclaims ¶¶ 31, 34-35; Proposed Complaint ¶¶ 33, 35-37. The entire Transaction was valued at $25.00 per share, which the Company and ESOP Trust assert was too high due to Wade's fraud, misrepresentations and omissions, and thus caused the ESOP Trust and the Company to overpay, and the Company to incur debt it should not have incurred. *See generally*, Counterclaims; Proposed Complaint. It only makes practical sense to allow the Company to intervene, and thus allow the parties to resolve these inter-related issues in one litigation and achieve a uniform result.

[4] As the Company's shareholder, the ESOP Trust lacks standing to sue for enforcement of the Company's rights under the Stock Redemption Agreement. *See, e.g.*, *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005) ("actions to enforce corporate rights or redress injuries to a corporation cannot be maintained by a stockholder in his own name"); *Taylor v. Moskow*, No. 13-10802-FDS, 2013 WL 5508157, at *3 (D. Mass. Oct. 1, 2013) ("[a]s a general rule, 'a mere shareholder, officer, director, or member does not have standing to assert a claim on behalf of a business entity'") (*quoting Laverty v. Massad*, 661 F. Supp. 2d 55, 61 (D. Mass. 2009)).

corollary breaches of the Stock Redemption Agreement, and (ii) should flow, at least in part, to the Company in order to offset the debt incurred by the Company in the over-valued Transaction.

Because the strength of Tri-Wire's interest is strong, very little inadequacy need be shown, and Tri-Wire more than sufficiently rebuts any presumption of adequate representation. *See, e.g.*, *Tell v. Trustees of Dartmouth Coll.*, 145 F.3d 417, 419 (1st Cir. 1998) ("without a perfect identity of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party"); *B. Fernandez & Hnos., Inc.*, 440 F.3d at 547 (allowing intervention and determining that subsidiaries of a common parent corporation do not adequately represent each other's interest).

For the foregoing reasons, Tri-Wire should be permitted to intervene as of right pursuant to Rule 24(a)(2).

## II.    <u>Alternatively, Tri-Wire Should be Permitted to Intervene Pursuant to R. 24(b)(1)(B).</u>

Should the Court determine that Tri-Wire may not intervene as of right under Rule 24(a)(2), intervention should nevertheless be allowed pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) ("Rule 24(b)(1)(B)").

Under Rule 24(b)(1)(B), "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." *Id*. In "making that determination[,] the Court must consider whether the permissive intervention will unduly delay or prejudice the adjudication of the original parties' rights." *KG Urban Enterprises, LLC v. Patrick*, 293 F.R.D. 42, 49 (D. Mass. 2013). The Court should also "consider whether the [movant's] . . . interest is adequately represented by an existing party." *Id.* "Apart from those considerations, [the] . . . court may consider almost any factor rationally relevant to the motion for permissive intervention and enjoys very broad discretion" to allow intervention. *Id.*

As explained above, Tri-Wire's and Spinnaker's claims against Mr. Wade are factually and legally intertwined in that they share common questions of law and fact. Additionally, for the reasons noted, Tri-Wire's motion is timely, and its interest is not adequately represented by Spinnaker because Spinnaker cannot sue to enforce the Stock Redemption Agreement between the Company and Wade, and because it is the Company that borrowed $20.5 million from J.P. Morgan and MCRC in reliance on Wade's fraud and misrepresentations.  As also noted above, Tri-Wire's presence in the action will not unduly delay or prejudice the adjudication of any party's rights. And, as a practical matter, should intervention be denied, Tri-Wire will seek to file a separate action against Wade to enforce its rights, which risks inconsistent judgments and which Wade will no doubt seek to consolidate with this action.  The interests of judicial economy favor adjudicating Tri-Wire's claims in this action.

Accordingly, should intervention as of right under Rule 24(a)(2) be denied, Tri-Wire should nevertheless be permitted to intervene under Ru le 24(b)(1)(B).

## <u>CONCLUSION</u>

For the foregoing reasons, Tri-Wire's Motion to Intervene should be allowed, and Tri-Wire

should be permitted to file and serve the Proposed Complaint attached as <u>Exhibit A</u> to the Motion

this Memorandum supports.

Dated:  June 19, 2020                                    Respectfully submitted,

                                                         TRI-WIRE ENGINEERING SOLUTIONS,
                                                         INC.

                                                         */s/ Timothy H. Madden*
                                                         Timothy H. Madden (BBO# 654040)
                                                         Nicholas J. Ramacher (BBO# 680258)
                                                         DONNELLY, CONROY & GELHAAR, LLP
                                                         260 Franklin Street, Suite 1600
                                                         Boston, Massachusetts 02110
                                                         (617) 720-2880 (T)
                                                         (617) 720-3554 (F)
                                                         thm@dcglaw.com
                                                         njr@dcglaw.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 19, 2020.

*/s/ Timothy H. Madden*

Timothy H. Madden
