UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN R. WADE, III, SHARON WADE, JOHN WADE IV, and TAYLOR WADE, <br><br> Plaintiffs, <br><br> v. <br><br> TRI-WIRE ENGINEERING SOLUTIONS, INC., TRI-WIRE EMPLOYEE STOCK OWNERSHIP TRUST, SCOTT PERRY, ROBERT R. NEWELL, ROBERT LANDRY, DAVID GESMONDO, CAPITAL TRUSTEES, LLC, SPINNAKER TRUST, ROBERT GOULD, JEANINE PENDERGAST, EMPIRE VALUATION CONSULTANTS, LLC, SES WINDING UP CORPORATION *f/k/a* SES ADVISORS, INC., SES ESOP STRATEGIES, LLC, *as successor to* SES ADVISORS, INC., BELLMARK PARTNERS, LLC, JOHN MARSH, LORI WENETTA, and RUBEN KLEIN, <br><br> Defendants, <br><br> SPINNAKER TRUST and TRI-WIRE ENGINEERING SOLUTIONS, INC., <br><br> Counter Claimants, <br><br> v. <br><br> JOHN R. WADE, III, <br><br> Counter Defendant. | Civil No. 20-10523-LTS |

MEMORANDUM AND ORDER ON
<u>MOTIONS FOR JUDGMENT ON THE PLEADINGS AND MOTIONS TO DISMISS</u>

March 5, 2021

1

SOROKIN, J.

This action results from Plaintiff John R. Wade III's sale of his ownership interest in Defendant Tri-Wire Engineering Solutions, Inc. ("Tri-Wire" or "the company") to the Tri-Wire Employee Stock Ownership Trust ("ESOT") for a substantial sum. Wade and his family members ("Wade" or "the Wades") allege that Wade was illegally stripped of control of the company following the sale and that he and his family members were wrongfully terminated from their positions with the company. Tri-Wire and the ESOT, through its Trustee, counterclaim against Wade alleging that he fraudulently inflated the value of the company prior to its sale.

I.  PROCEDURAL BACKGROUND

Wade launched this action with a sprawling Complaint alleging twenty-five counts against sixteen defendants. Doc. No. 1.[1] His Complaint suffered from several flaws. First, there were serious questions as to whether the Complaint, which runs for eighty-two pages not counting exhibits and attachments, complied with Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement"); see, e.g., Doc. No. 1 ¶¶ 33–51 (four-page digression on the history of the American cable telecommunications industry and the founding of Tri-Wire in the 1990s). Second, the Complaint sued the ESOT under the wrong name. Doc. No. 1 at 1 ("Tri-Wire Employee Stock Option Trust" (emphasis added)). And third, Wade's former counsel had neglected to name an essential defendant in the Complaint (the company at issue in this case). See Doc. No. 83 at 2 n.3. Because the parties had already provided extensive briefing on various motions related to the pleadings, the Court ordered Wade to file an Amended Complaint which

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

2

(1) clarified against whom he was bringing each count, (2) corrected the name of the ESOT as it appears in the caption, and (3) added Tri-Wire as a defendant. Doc. No. 117. Wade complied. Doc. No. 120. Though Wade had the benefit of various motions to dismiss filed by the defendants, he sought to make no other changes to his pleadings.

Various defendants have moved to dismiss the Amended Complaint for failure to state a claim or for lack of subject matter jurisdiction. Doc. Nos. 45, 50, 53, 55, 75.[2] Tri-Wire and the ESOT, through its trustee Spinnaker Trust, have filed separate counterclaims against Wade, Doc. Nos. 43 & 121, and have both moved for judgment on the pleadings, Doc. Nos. 48 & 122. Wade has moved to dismiss the counterclaims against him. Doc. Nos. 94 & 128. Each of these nine motions have been opposed and are now fully briefed. The Court heard argument on February 23, 2021.

II.     LEGAL STANDARDS

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer 'legal conclusion[s] couched as . . . fact[ ]' or '[t]hreadbare recitals of the elements of a cause of action.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (alterations in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court must also disregard allegations which, "while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 595 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 n.5 (2007)). "Non-conclusory factual allegations in the complaint must then

---

[2] In the hearing held on October 1, 2020, the Court ruled without objection that all motions to dismiss or for judgment on the pleadings filed prior to the Amended Complaint would lie against the Amended Complaint without the need for further briefing or motion.

3

be treated as true, even if seemingly incredible." Ocasio-Hernández, 640 F.3d at 12. The Court must also draw "all reasonable inferences in favor of the plaintiff[]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). If that factual content, so taken, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the claim has facial plausibility. Iqbal, 556 U.S. at 678; Fed. R. Civ. P. 8(a).

III.    DISCUSSION

The Court begins, as it must, by considering its jurisdiction to hear this dispute. As a court of limited jurisdiction, the Court has "an unflagging obligation to inquire sua sponte into its own jurisdiction." Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 155–56 (1st Cir. 2004). Counts I, III, IV, V, XIII, XXII, and XXIII of the Amended Complaint assert violations of federal law and therefore fall within the jurisdictional grant of 28 U.S.C. § 1331. The Court shall consider these claims first.

    1.    Wade's Racketeer Influenced and Corrupt Organizations Act Claims

In Counts I and XXII, Wade brings claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), which requires a plaintiff to show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985) (footnote omitted). "Racketeering activity" means any act that violates one of the laws specified in the RICO statute. See 18 U.S.C. § 1961. To establish a "pattern" of racketeering acts, a plaintiff must show "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). This continuity requirement can be satisfied in one of two ways. Under the "closed" approach, a plaintiff must allege a "'closed period of repeated conduct' that 'amounted to . . . continued criminal activity.' Alternatively, under the 'open-

ended' approach, a plaintiff could satisfy the continuity requirement by showing 'past conduct that by its nature projects into the future with a threat of repetition.'" Home Orthopedics Corp. v. Rodriguez, 781 F.3d 521, 528 (1st Cir. 2015) (omission in original) (quoting H.J., 492 U.S. at 237, 241).

Wade's allegations that defendants worked together over several months to deprive him of his ownership and leadership of the company fall well short of establishing continuity because he has described only "a single, narrow scheme targeting few victims." Giuliano v. Fulton, 399 F.3d 381, 390 (1st Cir. 2005). "RICO liability cannot attach under a theory of a closed pattern of racketeering" where, as here, "'a closed-ended series of predicate acts . . . constitute[d] a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities.'" Home Orthopedics, 781 F.3d at 530 (quoting Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 19 (1st Cir. 2000)). Nor has Wade plausibly alleged the "specific threat of repetition" necessary to establish open-ended continuity, Feinstein v. Resolution Tr. Corp., 942 F.2d 34, 45 (1st Cir. 1991), given the defendants' alleged object—control of the company and theft of Wade's trade secrets—has already been achieved. Unable to establish continuity, Wade is unable to establish a "pattern" of racketeering activity. His RICO claims must therefore be dismissed.[3]

---

[3] Although not discussed in his briefs, Wade's Amended Complaint includes a RICO conspiracy claim under 18 U.S.C. § 1962(d). Doc. No. 120 ¶ 204. This claim also fails. See Lerner v. Colman, No. CV 19-11738-WGY, 2020 WL 5267942, at *17 (D. Mass. Sept. 4, 2020) ("A plaintiff can bring a section 1964(d) conspiracy claim only if she has been injured by racketeering activity, so proof of conspiracy naturally requires the existence of a viable racketeering injury.") (citing Beck v. Prupis, 529 U.S. 494, 507 (2000)).

2.  Wade's Employee Retirement Income Security Act Claims

In Counts III, IV, V, and XIII, Wade and his family members bring claims against various defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Among other things, they accuse defendants of "[e]ndangering the value of the Company," Doc. No. 120 ¶ 217(g), and of breaching their fiduciary duty to the ESOT by removing Wade from his position as CEO. The Wades bring these claims pursuant to 29 U.S.C. § 1132(a)(2) and (a)(3), which provide that "in order to have standing under ERISA, a plaintiff must qualify as either a participant, a beneficiary, or a fiduciary (or be the Secretary of Labor)." Eggert v. Merrimac Paper Co. Leveraged Emp. Stock Ownership Plan & Tr., 311 F. Supp. 2d 245, 251–52 (D. Mass. 2004).

The Wades are not participants or beneficiaries. Wade himself is barred from participating in the plan by its terms, Doc. No. 47-1 at 21, and the Amended Complaint contains no factual allegations that he or his family members ever enrolled in, received allocations from, have any vested benefits in, are likely to enroll in, or otherwise have any participation in the plan.[4] See generally Doc. No. 120. Nor are the Wades fiduciaries. Wade argues he was previously a "functional fiduciary," Doc. No. 109 at 28, by virtue of his chairmanship of the company's board of directors but, even assuming this to be true, former fiduciaries do not have

---

[4] The closest the Amended Complaint comes is the naked allegation the defendants breached their fiduciary duty "to ESOP participants and beneficiaries (including Plaintiffs)." Doc. No. 120 ¶ 216; see also id. ¶ 7. But this threadbare assertion is a "legal conclusion couched as a factual allegation" of the sort which the Court must disregard. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Wade expends considerable energy arguing his family members were theoretically eligible to participate in the plan, based on its terms. But this is not enough. Nowhere does Wade allege his family members actually did so. See generally Doc. No. 120. Questions had been raised about ERISA standing well before Wade moved for permission to amend his Complaint. See Doc. No. 49 at 25–26; Doc. No. 54 at 17–18. His failure to seek to include such essential allegations in his Amended Complaint is telling and forecloses the need for an opportunity to amend on this point.

standing to bring ERISA breach-of-fiduciary-duty claims. Chemung Canal Tr. Co. v. Sovran Bank/Md., 939 F.2d 12, 14–15 (2d Cir. 1991). Finally, to state the obvious, none of the Wades are the Secretary of Labor. Thus, they do not meet the requisites for standing under ERISA and their claims must be dismissed.

3. Wade's Computer Fraud and Abuse Act Claims

In Count XXIII, Wade alleges several defendants froze him out of his company email account in violation of the Computer Fraud and Abuse Act of 1986 ("CFAA"), 18 U.S.C. § 1030. He brings claims under four separate provisions of the CFAA, each of which requires as an essential element that Wade show the defendants either (1) accessed a computer; (2) damaged a computer; or (3) conspired to access or damage a computer. See 18 U.S.C. §§ 1030(a)(2), 1030(a)(4), 1030(a)(5), and 1030(b). But the gravamen of Wade's complaint is that he was prevented from accessing his email account, not that others wrongfully accessed it in his place, see Doc. No. 120 ¶ 130; Doc. No. 109 at 34 n.45, and there are no allegations in the Amended Complaint that any defendant accessed, damaged, or conspired to access or damage Wade's email account. Wade has failed to plead an essential element of each of his CFAA claims, and they must be dismissed.

4. The State Law Claims

Having dismissed all facially federal claims, the Court now pauses to weigh whether it has jurisdiction over the remaining state law claims.

1. *ERISA Preemption*

At oral argument, the parties suggested federal jurisdiction may exist over certain state law claims by virtue of ERISA preemption. In some circumstances, ERISA so completely preempts a state law claim that federal courts may treat the claim as though it raised a federal

question notwithstanding the fact it is framed under state law. Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004). Because the parties have raised the question, the Court shall consider its jurisdiction over these claims out of an abundance of caution.

ERISA complete preemption prevents claimants from using state law claims as an alternative enforcement mechanism to the ERISA statute. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66–67 (1987). It applies where "the state cause of action falls within the scope of ERISA § 502(a)." Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 5 (1st Cir. 1999) (citing Taylor, 481 U.S. at 66). Judge Young has elaborated on this standard, explaining "if a plaintiff lacks standing to sue under [ERISA § 502(a)], his state law claims are not completely preempted because they do not fall under the scope" of ERISA § 502(a). Nahigian v. Leonard, 233 F. Supp. 2d 151, 170 (D. Mass. 2002); accord E. Bos. Sav. Bank v. Bruno, No. CIV.A. 02-12179-RWZ, 2002 WL 31864756, at *1 (D. Mass. Dec. 18, 2002) ("State law causes of action brought by parties without standing to sue under ERISA are simply not of such 'central concern to the federal statute' as to create removal jurisdiction." (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 25–26 (1983))).

None of the claims or counterclaims raised in this case are completely preempted by ERISA. The Court has already held that Wade does not have standing to pursue his claims under ERISA § 502(a), see supra, and therefore concludes that his remaining claims are not completely preempted by ERISA. See Nahigian, 233 F. Supp. 2d at 170. Nor are the claims asserted by Defendants Spinnaker and Tri-Wire in their counterclaims, Doc. Nos. 43 & 121, subject to complete preemption. ERISA complete preemption only applies when a litigant could have "brought [their] claim under ERISA § 502(a)(1)(B)." Davila, 542 U.S. at 210. Section 502(a)(1)(B), by its terms, only allows for claims "by a participant or beneficiary . . . to recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Spinnaker and Tri-Wire are neither participants nor beneficiaries of the ESOP and they do not seek to enforce any rights due to them under the terms of the ESOP. Rather, they seek to recover against Wade for allegedly fraudulently inflating the value of the shares he sold to the ESOP. These claims cannot be asserted under ERISA § 502(a)(1)(B) or, indeed, under any provision of ERISA § 502(a). The Court therefore holds they are not subject to complete preemption. Because complete preemption does not apply to any of the remaining claims or counterclaims in this case, that doctrine does not provide a basis for the Court to exercise federal question jurisdiction.[5]

2. *The Remaining Claims*

All claims arising under federal question jurisdiction have been dismissed, exhausting the Court's authority under 28 U.S.C. § 1331. It is unclear whether the Court may exercise jurisdiction under 28 U.S.C. § 1332, which grants federal courts subject matter jurisdiction over actions between citizens of different states.[6] The Court is authorized, in its discretion, to take supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(c)(3).

Generally, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction

---

[5] The Court does not reach the question of whether ERISA § 514 preemption applies. Unlike ERISA complete preemption, ERISA § 514 preemption serves only as a bar to liability. Danca, 185 F.3d at 7. Like other federal affirmative defenses, the likelihood—or even certainty—of ERISA § 514 preemption does not itself turn a state law claim into a federal question. Id. at 4.

[6] At argument, neither party suggested that jurisdiction under 28 U.S.C. § 1332 exists in this case. Yet, Defendants Spinnaker and Tri-Wire appear to have asserted the existence of such jurisdiction in their counterclaims. Doc. No. 43 ¶ 14; Doc. No. 121 ¶ 15. The Court shall give the parties the opportunity to brief this issue further.

over the remaining state-law claims." Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). But the unusual facts of this case require a departure from the ordinary course. Wade filed a scattershot complaint alleging twenty-five separate counts against seventeen defendants. Doc. No. 120. In addition to the problems with the Complaint noted at the outset, many of Wade's claims are (despite Wade's protestations otherwise) facially foreclosed by black letter law. For example, Lori Wenetta is named as a defendant, but the Amended Complaint contains no allegations—at all—of misconduct on her part. See generally Doc. No. 120. Similarly, the Amended Complaint names Capital Trustees, LLC as a defendant despite only mentioning that entity in passing, in reference to events which occurred years before Wade's claims accrued. Id. ¶¶ 78–113, 154, 176, 182. The same is true of other defendants. See infra. Wenetta and Capital Trustees both asked Wade's permission to be dismissed from the suit without the formality of a written motion. Doc. No. 45 at 5 (certification by Wenetta's counsel that he conferred with Wade's counsel, pursuant to L.R. 7.1, and was unable to resolve the dispute); Doc. No. 55 at 3 (same as to Capital Trustees). Wade refused and opposed their later motions to dismiss. Doc. No. 109. But despite his formal opposition, Wade made no meaningful attempt in his fifty-one-page omnibus filing to defend his claims against Defendants Wenetta and Capital Trustees.[7]

---

[7] The closest Wade's Opposition comes as to Wenetta is his assertion several defendants, including Wenetta, were "at all times aware of the [remaining defendants'] misconduct and were participants in [the same]." Doc. No. 109 at 31. He supports this by citing a portion of his Amended Complaint which does not once mention Wenetta. Id. at 31 n.42 (citing Doc. No. 120 ¶¶ 118–122). And his Opposition only mentions Capital Trustees in passing. Id. at 6 (suggesting defendants' counterclaims against Wade ought to lie against Capital Trustees as the true "culprits of any wrong-doing"). At oral argument, Wade's counsel conceded his theory of liability as to Capital Trustees would be better expressed through impleader rather than as a claim of direct liability.

The parties have already prepared and submitted several hundred pages of legal briefing in response to Wade's two complaints and thus the interests of judicial efficiency, convenience, and fairness point towards resolving at least those of Wade's state law claims which are obviously and facially deficient, while the matter is ripe.

**a. All Claims against Defendant Lori Wenetta.** Wade asserts various legal claims against Wenetta in his Amended Complaint but fails to offer a single factual allegation describing her conduct. The claims are dismissed. The Court orders Wade to show cause why the Court should not tax him for Wenetta's fees.

**b. All Claims against Defendant Capital Trustees, LLC.** Wade formally opposed Capital Trustee's Motion to Dismiss but failed to offer a single argument in defense of his claims. Wade's opposition is waived, and the claims are dismissed. Guerroro v. Munoz, Civ. No. 98-1425, 2002 WL 1880769, at *7 (D.P.R. Aug. 12, 2002) (deeming motion for summary judgment "unopposed" where plaintiff "fail[ed] to oppose adequately Defendants' arguments"); see also Powell v. Tompkins, 783 F.3d 332, 349 (1st Cir. 2015). In the alternative, Wade has failed to state a claim against Capital Trustees, LLC.

**c. All Claims Against Defendant Bellmark Partners, LLC.** As with Capital Trustees, Wade formally opposed Bellmark's Motion to Dismiss, Doc. No. 109, but his Opposition only mentions the entity in his preambulatory sections and offers no arguments to support his claims against this defendant. See generally Doc. No. 109. The Court's own review of the Amended Complaint reveals that, as with Capital Trustees, Wade only refers to the entity in passing, in reference to events which occurred years before Wade's claims accrued. See Doc. No. 120 ¶¶ 59–72, 180. Wade's opposition is waived, and the claims are dismissed. Guerroro, 2002 WL 1880769, at *7. In the alternative, Wade has failed to state a claim against Bellmark Partners.

**d. Defendants SES Winding Up Corporation and SES ESOP Strategies, LLC.** Wade has failed to state a claim—in a literal sense—against SES Winding Up Corporation and SES ESOP Strategies. These entities are named as defendants but are not charged in a single count of Wade's Amended Complaint. See generally Doc. No. 120. This is in contrast to Wade's original Complaint, which did include counts naming these defendants. The Court therefore construes Wade's submission of his Amended Complaint as a motion to dismiss these two defendants pursuant to Federal Rule of Civil Procedure 41(a)(1). The motion is allowed.

**e. Fraud (Count II) and Negligent Misrepresentation (Count XXIV).** Among other things, a plaintiff claiming fraud or negligent misrepresentation must prove a defendant (1) made a false statement which (2) the plaintiff materially relied upon. AcBel Polytech, Inc. v. Fairchild Semiconductor Int., Inc., 928 F.3d 110, 123 (1st Cir. 2019) (discussing the elements of fraud and negligent misrepresentation under Massachusetts law). Wade claims he was falsely induced into agreeing to his suspension as CEO by a letter from Spinnaker's counsel which cited "numerous complaints" about Wade's conduct. Doc. No. 109 at 32 (quoting Doc. No. 1-13). Wade claims the quoted statement is false because the complaints were all "in reality sourced from Defendant Marsh." Doc. No. 96 (citing Doc. No. 120 ¶ 123). But there is no falsity here: Wade overlooks the difference between "complaints" and "complainants." And, in any event, Wade's argument is contradicted by his Amended Complaint. See Doc. No. 120 ¶ 123 (attributing these complaints to three individuals, not just Marsh). Wade also points to a demand letter from Spinnaker aimed at inducing him to pay certain sums to the ESOT or company. Doc. No. 109 at 34. But Wade does

not claim to have ever complied with the demand and thus cannot show reliance, even assuming the letter is not privileged. Wade has failed to state a plausible claim as to these Counts.[8]

**f. Aiding and Abetting (Count X).** Wade alleges certain defendants "knowingly participated in . . . or provided substantial assistance" to Defendant Spinnaker's alleged breach of fiduciary duty. Doc. No. 120 ¶ 256. As a threshold matter, to state an aiding and abetting claim, Wade must show the alleged primary tortfeasor, here Spinnaker, "committed a wrongful act." In re TelexFree Sec. Litig., 360 F. Supp. 3d 46, 50 (D. Mass. 2019) (citing Arcidi v. Nat'l Ass'n of Gov't Employees, Inc., 447 Mass. 616, 623–24 (2006)). All claims for breach of fiduciary duty against Spinnaker have already been dismissed, meaning these derivative claims also fail.

**g. Defamation (Count XII) and Business Defamation (Count XX).** Wade claims certain defendants "repeatedly made false and defamatory statements" about him. Doc. No. 120 ¶ 320. But his eighty-three-page Amended Complaint fails to describe, or even identify, a single statement. He points, Doc. No. 109 at 48, to allegations that defendants "published defamatory statements to others . . . falsely alleging . . . that Wade defrauded the Company." Doc. No. 120 ¶ 187. He also speculates that certain defendants had meetings with various third parties where "defamation likely occurred." Doc. No. 109 at 49. But Wade's conclusory allegations fail to explain the essential "who, what, when, and where" required by Federal Rule of Civil Procedure 9(a). Grant v. Target Corp., 126 F. Supp. 3d 183, 193 (D. Mass. 2015). Nor do these vague accusations "contain sufficient factual matter, accepted as true, to state a claim to relief that is

---

[8] To the extent Wade raises fraud and misrepresentation claims against other defendants, they fail due to his failure to point to any false statements by those defendants in his Amended Complaint. Claims of fraud or negligent misrepresentation must be pleaded with particularity. Fed. R. Civ. P. 9(b).

plausible on its face." Wood v. Moss, 572 U.S. 758–59 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The claims are dismissed.

**h. Wrongful Termination (Count XVIII).** Wade alleges various defendants wrongfully terminated him and his family members in violation of public policy. Doc. No. 120 ¶¶ 309–10. But none of the defendants named in this Count have ever employed Wade or his relations. To state the obvious, plaintiffs may not bring wrongful termination claims against parties with whom they have never had an employment relationship. United States ex rel. Karvelas v. Tufts Shared Servs., Inc., 433 F. Supp. 3d 174, 183 (D. Mass. 2019) (applying Massachusetts law), appeal dismissed sub nom. Karvelas v. Tuft Shared Servs., Inc., No. 20-1616, 2020 WL 7587147 (1st Cir. July 24, 2020). The claims fail.

**i. Conversion (Count XXI).** To state a claim for conversion, Wade must prove the defendants deprived him of some form of personal property. See Abington Nat'l Bank v. Ashwood Homes, Inc., 475 N.E.2d 1230, 1233 (Mass. App. Ct. 1985). Wade alleges various defendants wrongfully "stripped [him of his] rights to control the Company," Doc. No. 120 ¶ 328, and asserts that his former position as CEO and Chair of Tri-Wire is a species of personal property. Doc. No. 109 at 44–45. But Wade's employment as CEO was at-will, Doc. No. 1-11 at 2, meaning he had no property interest in the position. Costello v. Sch. Comm. of Chelsea, 544 N.E.2d 594, 597–98 (1989). And to the extent Wade had a right to his position as Chair, that right sounds in contract and not in tort. Neither party has pointed to caselaw suggesting Massachusetts courts have recognized a contractual right to a chairmanship position as a form of personal property. A federal court applying state law must "take care not to extend state law beyond its well-marked boundaries." Doe v. Trs. of Bos. Coll., 942 F.3d 527, 535 (1st Cir. 2019). The Court therefore "take[s] state law as it finds it," Kassel v. Gannett Co., 875 F.2d 935,

950 (1st Cir. 1989) (quoting Plummer v. Abbott Labs., 568 F. Supp. 920, 927 (D.R.I. 1983)), and concludes Wade has failed to establish he was deprived of personal property. The claim fails.

**j. Intentional Interference with Economic Advantage (Count XXV).** Wade alleges various defendants "maliciously and intentionally interfered with [his] prospective contractual relationships." Doc. No. 120 ¶ 358. But he has failed to sufficiently allege any such prospective relationship. True, Wade alleges that certain "statements have irreparably injured [his] once sterling reputation in the cable industry . . . and have adversely affected [his] ability to earn a living." Id. ¶ 188. But this allegation, like others Wade has made, is too conclusory to render his claim plausible. It fails.

**k. All Remaining Claims Asserted by Plaintiffs Sharon Wade, John Wade, IV, and Taylor Wade.** The remaining claims in Wade's Amended Complaint are Counts VI, VII, VIII, IX, XI, XIV, XV, XVI, XVII, and XIX. Certain of these Counts are pleaded as claims brought solely by Plaintiff John R. Wade, III. See Counts IX, XI, XV, XVI, & XVII. Other Counts are arguably advanced on behalf of both John Wade and his family members, namely Plaintiffs Sharon Wade, John Wade, IV, and Taylor Wade. See Counts VI, VII, VIII, XIV, & XIX. However, all five of the claims arguably pleaded by Wade's family members are foreclosed by blackletter law. The claims asserted in Counts VI, VII, VIII, and XIV rely on Wade's theory the defendants owed him a duty as a creditor. Doc. No. 109 at 45–48. Whether or not this is true—a question on which the Court takes no view at the moment—this theory is unavailable to Wade's family members, who are not alleged to be creditors to the company. Doc. No. 120. Count XIX asserts claims under M.G.L. ch. 93A. The only possible basis for the family members' 93A claims would be their termination from employment at Tri-Wire. But 93A "does not provide a remedy for disputes arising out of an employer-employee relationship." Psy-Ed Corp. v. Klein,

947 N.E.2d 520, 539 (Mass. 2011).[9] Perhaps for these reasons, Wade has not sought to defend his family members claims in briefing. Cf. Guerroro, 2002 WL 1880769, at *7. Accordingly, the Court rules that those claims in Wade's Amended Complaint which remain pending are not advanced on behalf of the family plaintiffs. In the alternative, to the extent that they are so advanced, the Court dismisses the claims by the family plaintiffs for failure to state a claim. Thus, the only remaining claims in Wade's Amended Complaint are those in Counts VI, VII, VIII, IX, XI, XIV, XV, XVI, XVII, and XIX as brought by Wade himself.

*         *         *

The interests of efficiency, convenience, and fairness led the Court to resolve those of Wade's claims which were facially and obviously deficient. These interests are now less pressing, and the interest of comity continues to weigh heavy. Before determining whether to exercise jurisdiction over the remaining claims and counterclaims, the Court shall grant the parties the opportunity to submit briefing. The form of that briefing is detailed below. Nothing in this opinion should be understood to express the Court's view as to the merits of the claims and counterclaims not resolved herein.

IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

1. Capital Trustees, LLC's Motion to Dismiss (Doc. No. 55) is ALLOWED. Ruben Klein, Robert Landry, John Marsh, Robert R Newell, Scott Perry, and Lori Wenetta's Motion to Dismiss (Doc. No. 45), Spinnaker Trust's Motion for Judgment on the Pleadings (Doc. No. 48), Robert Gould and Jeanine Pendergast's Motion to Dismiss

---

[9] Unlike Wade, his family members are not alleged to have any agreements with Tri-Wire beyond their employment relationship.

(Doc. No. 50), Bellmark Partners, LLC and David Gesmondi's Motion to Dismiss (Doc. No. 53), Tri-Wire Employee Stock Option Trust's Motion to Dismiss (Doc. No. 75), John R. Wade's Motion to Dismiss (Doc. No. 94), Tri-Wire Engineering Solutions, Inc.'s Motion for Judgment on the Pleadings (Doc. No. 122), and John R. Wade's Motion to Dismiss (Doc. No. 128) are ALLOWED IN PART and RESERVED IN PART as detailed herein.

2. All claims brought by the following plaintiffs are DISMISSED WITH PREJUDICE:

    a. Sharon Wade

    b. Taylor Wade

    c. John R. Wade, IV

3. All claims are DISMISSED WITH PREJUDICE as to defendants:

    a. Lori Wenetta

    b. Capital Trustees, LLC

    c. Bellmark Partners, LLC

4. All claims are DISMISSED WITHOUT PREJUDICE as to defendants:

    a. SES Winding Up Corporation

    b. SES ESOP Strategies, LLC

5. Counts I, II, III, IV, V, X, XII, XIII, XVIII, XX, XXI, XXII, XXIII, XXIV, and XXV of Wade's Amended Complaint are DISMISSED WITH PREJUDICE. In the interest of clarity, the remaining claims in Wade's Amended Complaint are Counts VI, VII, VIII, IX, XI, XIV, XV, XVI, XVII, and XIX as brought by Wade himself. In

addition, Tri-Wire's and Spinnaker' counterclaims remain pending and subject to the challenges advanced by Wade.

6. Wade shall show cause within fourteen days why the Court should not assess Defendant Wenetta's fees and costs against him.

7. Wade shall show cause within fourteen days why Defendant Empire Valuation Consultants, LLC should not be dismissed under Federal Rule of Civil Procedure 4(m) for want of service.

8. The parties shall file a joint fifteen-page status report within fourteen days. Should the parties disagree as to the contents of the report, Wade shall have one half of the report in which to state his position and the defendants shall have the other half of the report in which to do the same. The report should address:

   a. Whether the Court has diversity jurisdiction over this action. The parties appear to dispute whether Wade is a citizen of New York or of Massachusetts. Compare Doc. No. 120 ¶ 7 (asserting Wade is a citizen of Massachusetts) with Doc. No. 43 ¶ 13 (asserting Wade is a citizen of New York) and Doc. No. 121 ¶ 14 (same). The parties should address whether allegations of jurisdiction may be raised in a counterclaim and what impact, if any, this dispute as to residence has on the Court's jurisdiction. The parties should also propose a process for resolving Wade's citizenship, if necessary.

   b. Assuming the Court does not have diversity jurisdiction, whether the Court ought to exercise supplemental jurisdiction over the remaining claims and counterclaims for the purpose of resolving the pending motions;

    c.   Assuming the Court does exercise its supplemental jurisdiction and assuming some number of claims or counterclaims survive for further proceedings, whether the Court ought to continue to exercise its supplemental jurisdiction through to judgment; and,

    d.   Whether, were the Court to resolve the pending motions only to then dismiss any surviving claims or counterclaims for want of subject matter jurisdiction, the resolution of the pending motions would constitute an advisory opinion.

                       SO ORDERED.

                        /s/ Leo T. Sorokin  
                       Leo T. Sorokin  
                       United States District Judge