UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| SPINNAKER TRUST and TRI-WIRE ENGINEERING SOLUTIONS, INC. | ) ) ) | |
| Counter Claimants, | ) ) | CIVIL ACTION NO. 20-CV-10523-LTS |
| v. | ) ) ) | |
| JOHN R. WADE, III | ) ) | |
| Counter Defendant. | ) ) ) | |

## JOHN R. WADE, III'S ANSWER TO TRI-WIRE ENGINEERING SOLUTIONS, INC.'S COUNTERCLAIMS

Counterclaim Defendant, John R. Wade, III ("Wade"), by and through his undersigned counsel answers the remaining claims in Tri-Wire Engineering Solutions, Inc.'s Counterclaims and Jury Demand filed October 20, 2020 (*see* Dkt No. 121)(the "Counterclaims").

Wade denies each and every allegation contained in the Counterclaims, including, without limitation to, the footnotes, headings, and subheadings contained therein, except those allegations that Wade expressly admits herein or those as to which Wade lacks knowledge or information sufficient to form a belief as to their truth. Wade expressly reserves the rights to amend and/or supplement this answer:

Wade answers as follows:

1.     Wade states that Paragraph 1 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 1.

2.      Wade denies the allegations in Paragraph 2 except that he admits that prior to the performance of the ESOP Transaction he was the sole shareholder and owner of Tri-Wire Engineering Solutions, Inc. ("Tri-Wire" or the "Company").

3.      Wade denies the allegations in the first and second sentence of Paragraph 3. Wade states that the third sentence of Paragraph 3 purports to state a legal conclusion to which no response is required. To the extent a response is required, Wade denies the allegations in the third sentence of Paragraph 3. Wade denies the allegations in the fourth sentence of Paragraph 3.

4.      Wade states that the allegations in Paragraph 4 purport to paraphrase certain contractual provisions of the Stock Redemption Agreement and Stock Purchase Agreement. Wade relies on those provisions to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of the Stock Redemption Agreement and Stock Purchase Agreement, Wade denies the allegations in Paragraph 4.

5.      Wade states that the allegations in Paragraph 5 purport to paraphrase certain contractual provisions of the Stock Purchase Agreement, Stock Redemption Agreement and Subordinated Loan Agreement. Wade relies on those provisions to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of the Stock Redemption Agreement, Stock Purchase Agreement, and Subordinated Loan Agreement, Wade denies the allegations in Paragraph 5.

6.      Wade states that Paragraph 6 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade states that the allegations in Paragraph 6 purport to paraphrase certain contractual provisions of the Stock Purchase Agreement and Stock Redemption Agreement. Wade relies on those provisions to speak for

themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of the Stock Purchase Agreement and Stock Redemption Agreement, Wade denies the allegations in Paragraph 6.

7.      Wade states that Paragraph 7 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 7 except that to the extent the allegations are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

8.      Wade states that Paragraph 8 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 8 except that to the extent the allegations are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9.      Wade states that Paragraph 9 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 9 except that to the extent the allegations are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9.

10.     Wade admits the allegations in Paragraph 10.

11.     Wade admits the allegations in Paragraph 11.

12.     Wade denies having knowledge or sufficient information to form a belief as to the truth of the allegations in Paragraph 12.

13.     Wade states that Paragraph 13 purports to state legal conclusions to which no response is required except that he admits that on March 22, 2017, Spinnaker became the custodial trustee of the Tri-Wire Employee Stock Ownership Plan (the "ESOP") and therefore Spinnaker was not directly involved in the ESOP Transaction.

14.     Wade denies the allegations in Paragraph 14 except that he admits that prior to the performance of the ESOP Transaction, he was the sole shareholder and owner of Tri-Wire and he was CEO of the Company until April 19, 2019 when he was unlawfully terminated as CEO of the Company, without cause, by the purported "Special Committee" of the Board of Directors. Further answering, Wade denies he is the former Chairman of the Tri-Wire Board of Directors— he is the rightful Chairman of the Board pursuant to the Company's Bylaws and Section 6.12 of the Subordinated Loan Agreement.

15.     Wade states that Paragraph 15 purports to state legal conclusions to which no response is required.

16.     Wade states that Paragraph 16 purports to state legal conclusions to which no response is required.

17.     Wade states that Paragraph 17 purports to state legal conclusions to which no response is required.

18.     Wade admits the allegations in Paragraph 18.

19.     Wade denies having sufficient information to form a belief as to the truth of the allegations in Paragraph 19 except that he admits that Tri-Wire, as part of its business, performs residential telecommunications installations.

20.     Wade denies the allegations in Paragraph 20 except that he admits that prior to the performance of the ESOP Transaction, he was the sole shareholder and owner of Tri-Wire and he was CEO of the Company until April 19, 2019 when he was unlawfully terminated as CEO of the Company, without cause, by the purported "Special Committee" of the Tri-Wire Board of Directors.

21.     Wade denies the allegations in Paragraph 21 except that he admits to being the Company's sole shareholder until the performance of the ESOP Transaction.

22.     Wade denies the allegations of Paragraph 22.

23.     Wade denies the allegations of Paragraph 23.

24.     Wade denies the allegations of Paragraph 24.

25.     Wade denies the allegations in Paragraph 25 except that he admits—upon the guidance of ESOP specialists he had engaged— to retaining an ESOP Trustee and valuation firm for purposes of the ESOP Transaction.

26.     Wade denies the allegations in Paragraph 26 except that he admits— upon the guidance of ESOP specialists he engaged—to retaining GreatBanc Trust Company to serve a ESOP Trustee prior to Capital Trustees was retained and that Empire Valuation was the firm that valued his shares for purposes of the ESOP Transaction.

27.     Wade denies the allegations in Paragraph 27 except that he denies having knowledge or information sufficient to form a belief as to the truth of whether the meeting referred to in this Paragraph occurred on September 12, 2016.

28.     Wade denies the allegations in Paragraph 28 except that he denies having knowledge or information sufficient to form a belief as to the truth of whether the meeting referred to in this Paragraph occurred on September 12, 2016, he admits he retained Capital

Trustees at some point during the fall of 2016 and he admits that Empire Valuation was the firm that valued his shares for purposes of the ESOP Transaction.

29.     Wade denies the allegations in Paragraph 29 except he denies having knowledge or information sufficient to form a belief as to the truth of whether the meeting referred to in this Paragraph occurred on November 14, 2016.

30.     Wade denies the allegations in Paragraph 30.

31.     Wade denies the allegations in Paragraph 31.

32.     Wade admits the allegations in Paragraph 32.

33.     Wade states that the allegations in paragraph 33 purport to paraphrase certain contractual provisions of the Stock Redemption Agreement. Wade relies on those provisions to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of the Stock Redemption Agreement, Wade denies the allegations in Paragraph 33.

34.     Wade states that the allegations in paragraph 34 purport to paraphrase certain contractual provisions of the Stock Purchase Agreement. Wade relies on those provisions to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of the Stock Purchase Agreement, Wade denies the allegations in Paragraph 34.

35.     Wade states that Paragraph 35 purports to state legal conclusions to which no response is required.

36.     Wade denies the allegation in Paragraph 36 that Capital Trustees and Empire Valuation based their valuation of the ESOP Transaction on the information he personally provided to them. Further answering, Wade states the allegations in Paragraph 36 purport to

paraphrase certain contractual provisions of the Stock Purchase Agreement, Stock Redemption Agreement, Subordinated Loan Agreement and Fairness Opinion produced by Empire Valuation, in addition to other legal documents and contracts underlying the ESOP Transaction. Wade relies on those contracts, legal documents, and opinions to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of these documents Wade denies the allegations in Paragraph 36.

37.     Wade states that the allegations in Paragraph 37 purport to paraphrase certain contractual provisions of the Stock Purchase Agreement, Stock Redemption Agreement, and Subordinated Loan Agreement, in addition to other legal documents and contracts underlying the ESOP Transaction. Wade relies on those provisions to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of these provisions, Wade denies the allegations in Paragraph 37.

38.     Wade states that the allegations in Paragraph 38 purport to paraphrase certain contractual provisions of a Credit Agreement between the Company and JP Morgan Chase Bank, N.A. and a Note and Warrant Purchase Agreement between the Company and Massachusetts Capital Resource Company. Wade relies on those contracts to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of these provisions, Wade denies the allegations in Paragraph 38.

39.     Wade admits the allegation in Paragraph 39 that he received a Working Capital Adjustment pursuant to the terms of Section 1.2 of the Stock Purchase Agreement. Wade otherwise states that Paragraph 39 purports to state legal conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 39.

40.     Wade states that Paragraph 40 purports to state legal conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 40.

41.     Wade states that Paragraph 41 purports to state legal conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 41.

42.     Wade admits in response to the allegations of Paragraph 42 that at one point in time he received interest payments from the Company on his Subordinated Notes. Further answering, Wade states that Paragraph 42 attempts to estimate the monetary amount of interest payments the Company has made on the Subordinated Notes. Wade relies on the existence or (non-existence) of those payments and the amount of those payments to speak for themselves, rather than on Tri-Wire's characterization thereof. Further answering, Wade denies any allegation in this Paragraph that Tri-Wire has complied with its obligations pursuant to the Subordinated Loan Agreement or its payment obligations pursuant to the terms of Wade's Subordinated Notes.

43.     Wade states that the allegations in Paragraph 43 purport to paraphrase certain contractual provisions of the Stock Purchase Agreement. Wade relies on those contractual provisions to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of these provisions, Wade denies the allegations in Paragraph 43.

44.     Wade states that the allegations in Paragraph 44 purport to paraphrase certain contractual provisions of the Stock Redemption Agreement and the Stock Purchase Agreement. Wade relies on those provisions to speak for themselves, rather than on Tri-Wire's

characterization thereof. To the extent such characterization is inconsistent with the terms of these provisions, Wade denies the allegations in Paragraph 44.

45.     Wade states that the allegations in Paragraph 45 purport to paraphrase certain contractual provisions of the Stock Redemption Agreement. Wade relies on those provisions to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of these provisions, Wade denies the allegations in Paragraph 45.

46.     Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.

47.     Wade states that the allegations in Paragraph 47 purport to paraphrase certain contractual provisions of the Stock Redemption Agreement and Stock Purchase Agreement. Wade relies on those provisions to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of these provisions, Wade denies the allegations in Paragraph 47.

48.     Wade states that Paragraph 48 purports to state legal arguments and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 48.

49.     Wade states that Paragraph 49 purports to state legal conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 49.

50.     Wade states that Paragraph 50 purports to state legal conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 50.

51.     Wade states that Paragraph 51 purports to state legal conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 51.

52.     Wade states that Paragraph 52 purports to state legal conclusions to which no response is required. To the extent any additional response is required, Wade denies any wrongdoing whatsoever related to the "investigation" conducted by the "Special Committee" and/or Spinnaker but is without sufficient information and knowledge to understand what the investigation actually uncovered because at all relevant times herein the work product of the investigation has been withheld from him, in violation of the contractual agreements between the parties, including without limited to, the "Memorandum of Understanding."

53.     Wade denies the allegations of Paragraph 53 except that to the extent the allegations in Paragraph 53, are based on information purportedly collected during the performance of Spinnaker's and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.

54.     Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54.

55.     Wade states that Paragraph 55 purports to state legal conclusions to which no response is required except that to the extent any additional response is required, Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55.

56.     Wade denies the allegations of Paragraph 56 except that to the extent the allegations in Paragraph 56 are based on information purportedly collected during the

performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56.

57.     Wade denies the allegations of Paragraph 57 except that to the extent the allegations in Paragraph 57 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57.

58.     Wade denies the allegations of Paragraph 58 except that to the extent the allegations in Paragraph 58 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58.

59.     Wade denies the allegations of Paragraph 59 except that to the extent the allegations in Paragraph 59 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59.

60.     Wade denies the allegations of Paragraph 60.

61.     Wade denies the allegations of Paragraph 61 except that to the extent the allegations in Paragraph 61 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61.

62.    Wade denies the allegations of Paragraph 62 except that to the extent the allegations in Paragraph 62 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62.

63.    Wade denies the allegations of Paragraph 63 except that to the extent the allegations in Paragraph 63 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63.

64.    Wade denies the allegations of Paragraph 64 except that to the extent the allegations in Paragraph 64 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64.

65.    Wade denies the allegations of Paragraph 65 except that to the extent the allegations in Paragraph 65 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65.

66.     Wade denies the allegations of Paragraph 66 except that to the extent the allegations in Paragraph 66 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66.

67.     Wade denies the allegations of Paragraph 67 except that to the extent the allegations in Paragraph 67 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67.

68.     Wade denies the allegations of Paragraph 68 except that to the extent the allegations in Paragraph 68 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68.

69.     Wade denies the allegations of Paragraph 69 except that to the extent the allegations in Paragraph 69 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69.

70.     Wade denies the allegations of Paragraph 70 except that to the extent the allegations in Paragraph 70 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70.

71.     Wade states that Paragraph 71 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 71 except that to the extent the allegations in Paragraph 71 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71.

72.     Wade states that Paragraph 72 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 72 except that to the extent the allegations in Paragraph 72 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72.

73.     Wade states that Paragraph 73 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 73 except that to the extent the allegations in Paragraph 73 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73.

74.     Wade states that Paragraph 74 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 74 except that to the extent the allegations in Paragraph 74 are based on information

purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74.

75.     Wade states that Paragraph 75 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 75 except that to the extent the allegations in Paragraph 75 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75.

76.     Wade denies the allegations of Paragraph 76 except that to the extent the allegations in Paragraph 76 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76.

77.     Wade denies the allegations of Paragraph 77 except that to the extent the allegations in Paragraph 77 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77.

78.     Wade states that Paragraph 78 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 78 except that to the extent the allegations in Paragraph 78 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's

"investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78.

79.     Wade states that Paragraph 79 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 79 except that to the extent the allegations in Paragraph 79 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79.

80.     Wade admits the allegations of Paragraph 80.

81.     Wade denies the allegations of Paragraph 81 except that to the extent the allegations in Paragraph 81 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81.

82.     Wade denies the allegations of Paragraph 82 except that to the extent the allegations in Paragraph 82 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82.

83.     Wade denies the allegations of Paragraph 83 except that to the extent the allegations in Paragraph 83 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83.

84.     Wade denies the allegations of Paragraph 84 except that to the extent the allegations in Paragraph 84 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84.

85.     Wade states that Paragraph 85 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 85 except that to the extent the allegations in Paragraph 85 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85.

86.     Wade denies the allegations of Paragraph 86 except that to the extent the allegations in Paragraph 86 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86.

87.     Wade states that the allegations in paragraph 87 purport to paraphrase January 25, 2016 emails to Wade from an unidentified person and therefore he denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87.

88.     Wade denies the allegations of Paragraph 88 except that to the extent the allegations in Paragraph 88 are based on information purportedly collected during the

performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88.

89.     Wade states that the allegations in paragraph 89 purport to paraphrase a July 12, 2016 email to Wade from an unidentified person and therefore he denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89.

90.     Wade states that the allegations in paragraph 90 purport to paraphrase emails to Wade from an unidentified person and therefore he denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90.

91.     Wade denies the allegations in Paragraph 91 except to admit to the existence of a July 14, 2016 email from Wade's Tri-Wire email account to Tri-Wire employee Nick Tensen and Tri-Wire employee Tina McAuliffe.

92.     Wade denies the allegations of Paragraph 92 except that to the extent the allegations in Paragraph 92 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92.

93.     Wade denies the allegations of Paragraph 93 except that to the extent the allegations in Paragraph 93 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93.

94.     Wade denies the allegations in Paragraph 94 except that to the extent the allegations in Paragraph 94 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94.

95.     Wade denies the allegations in Paragraph 95 except that to the extent the allegations in Paragraph 95 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95.

96.     Wade denies the allegations in Paragraph 96 except that to the extent the allegations in Paragraph 96 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96.

97.     Wade denies the allegations in Paragraph 97 except that to the extent the allegations in Paragraph 97 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97.

98.     Wade denies the allegations in Paragraph 98 except that to the extent the allegations in Paragraph 98 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98.

99.     Wade denies the allegations in Paragraph 99 except that to the extent the allegations in Paragraph 99 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99.

100.     Wade denies the allegations in Paragraph 100 except that to the extent the allegations in Paragraph 100 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100.

101.     Wade states that Paragraph 101 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in Paragraph 101 except that to the extent the allegations in Paragraph 101 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101.

102.     Wade states that Paragraph 102 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in this Paragraph except that to the extent the allegations in Paragraph 102 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's

"investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102.

103.    Wade denies the allegations in Paragraph 103 except that to the extent the allegations in Paragraph 103 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103.

104.    Wade denies the allegations of Paragraph 104 except that to the extent the allegations in Paragraph 104 are based on information purportedly collected during the performance of Spinnaker and/or the Special Committee's "investigation," Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104.

105.    Wade denies the allegations in Paragraph 105 except that he admits to receiving a working capital adjustment pursuant to the terms of Section 1.2 of the Stock Purchase Agreement.

106.    Wade states that Paragraph 106 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in this Paragraph.

107.    Wade states that Paragraph 107 purports to state legal conclusions to which no response is required. To the extent a response is required, Wade denies the allegations in this Paragraph.

108.    Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108.

109.    Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109.

110.    Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110.

111.    Wade denies the allegations in Paragraph 111.

112.    Wade denies the allegations in Paragraph 112.

113.    Wade denies the allegations in Paragraph 113.

114.    Wade denies the allegations in Paragraph 114.

115.    Wade denies the allegations in Paragraph 115 except that he admits the Special Committee purported to terminate him as the Company CEO through letter communication on April 19, 2019.

116.    Wade denies the allegations in Paragraph 116 except that he admits he received a letter dated May 2, 2019 purportedly from the "Special Committee" of the Tri-Wire Board of Directors demanding he pay the amount of $1,412,611.88.

117.    Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 117. Wade denies the allegations in the second sentence of Paragraph 117 except that he admits receiving a demand letter dated August 2, 2019 purportedly from the "Special Committee" of the Tri-Wire Board of Directors demanding he pay $18,296,126.

118.    Wade denies the allegations in Paragraph 118.

119.    Wade denies the allegations in Paragraph 119.

<u>**COUNT I**</u>
<u>**FRAUD/FRAUDULENT INDUCMENT**</u>

120.     In response to paragraph 120 of the Counterclaims, Wade incorporates his responses to paragraphs 1 through 119 of the Counterclaims as if set forth fully herein.

121.     Wade states that the allegations in Paragraph 121 purport to paraphrase certain contractual provisions of the Stock Redemption Agreement and Stock Purchase Agreement. Wade relies on those provisions to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of the Stock Redemption Agreement and Stock Purchase Agreement, Wade denies the allegations in paragraph 121.

122.     Wade states that the allegations in Paragraph 122 purport to paraphrase certain contractual provisions of the Stock Redemption Agreement. Wade relies on those provisions to speak for themselves, rather than on Tri-Wire's characterization thereof. To the extent such characterization is inconsistent with the terms of the Stock Redemption Agreement and Stock Purchase Agreement, Wade denies the allegations in Paragraph 122.

123.     Wade denies having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123.

124.     Wade states that Paragraph 124 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 124.

125.     Wade states that Paragraph 125 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 125.

126.    Wade states that Paragraph 126 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 126.

127.    Wade states that Paragraph 127 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 127.

128.    Wade states that Paragraph 128 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 128.

129.    Wade states that Paragraph 129 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 129.

130.    Wade states that Paragraph 130 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 130.

131.    Wade states that Paragraph 131 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 131.

## COUNT II
## INTENTIONAL MISREPRESENTATION

132.    In response to paragraph 132 of the Counterclaims, Wade incorporates his responses to paragraphs 1 through 131 of the Counterclaims as if set forth fully herein.

133.     Wade states that Paragraph 133 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 133.

134.     Wade states that Paragraph 134 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 134.

135.     Wade states that Paragraph 135 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 135.

136.     Wade states that Paragraph 136 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 136.

137.     Wade states that Paragraph 137 purports to state legal argument and conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 137.

**COUNT III**
**BREACH OF CONTRACT**

138.     In response to paragraph 138 of the Counterclaims, Wade incorporates his responses to paragraphs 1 through 137 of the Counterclaims as if set forth fully herein.

139.     Pursuant to the Court's June 29, 2021 Order, Count III of the Counterclaims was dismissed against Wade and therefore, Wade is not required to answer the allegations in Paragraphs 139.

140.     Pursuant to the Court's June 29, 2021 Order, Count III of the Counterclaims was dismissed against Wade and therefore, Wade is not required to answer the allegations in Paragraphs 140.

141.     Pursuant to the Court's June 29, 2021 Order, Count III of the Counterclaims was dismissed against Wade and therefore, Wade is not required to answer the allegations in Paragraphs 141.

142.     Pursuant to the Court's June 29, 2021 Order, Count III of the Counterclaims was dismissed against Wade and therefore, Wade is not required to answer the allegations in Paragraphs 142.

143.     Pursuant to the Court's June 29, 2021 Order, Count III of the Counterclaims was dismissed against Wade and therefore, Wade is not required to answer the allegations in Paragraphs 143.

144.     Pursuant to the Court's June 29, 2021 Order, Count III of the Counterclaims was dismissed against Wade and therefore, Wade is not required to answer the allegations in Paragraphs 144.

## <u>COUNT IV</u>
## <u>SPECIFIC PERFORMANCE</u>

145.     In response to paragraph 145 of the Counterclaims, Wade incorporates his responses to paragraphs 1 through 144 of the Counterclaims as if set forth fully herein.

146.     Wade states that Paragraph 146 purports to state legal conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 146.

147.    Wade states that Paragraph 147 purports to state legal conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 147.

148.    Wade states that Paragraph 148 purports to state legal conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 148.

149.    Wade states that Paragraph 149 purports to state legal conclusions to which no response is required. To the extent any additional response is required, Wade denies the allegations in Paragraph 149.

<u>**COUNT V**</u>
<u>**DECLARATORY JUDGMENT**</u>

150.    In response to paragraph 150 of the Counterclaims, Wade incorporates his responses to paragraphs 1 through 149 of the Counterclaims as if set forth fully herein

151.    Pursuant to the Court's June 29, 2021 Order, Count VI of the Counterclaims was dismissed against Wade and therefore, Wade is not required to answer the allegations in Paragraph 151.

152.    Pursuant to the Court's June 29, 2021 Order, Count VI of the Counterclaims was dismissed against Wade and therefore, Wade is not required to answer the allegations in Paragraph 152.

153.    Pursuant to the Court's June 29, 2021 Order, Count VI of the Counterclaims was dismissed against Wade and therefore, Wade is not required to answer the allegations in Paragraph 153.

154.    Pursuant to the Court's June 29, 2021 Order, Count VI of the Counterclaims was dismissed against Wade and therefore, Wade is not required to answer the allegations in Paragraph 154.

## PRAYER FOR RELIEF

Wade denies that Tri-Wire is entitled to any of the relief requested in paragraphs 1-6 of its Counterclaims' Prayer for Relief or any relief whatsoever. Further answering, Wade states that pursuant to the Court's June 29, 2021 Order, the Court dismissed Counts III and Count V of the Counterclaims and therefore, Tri-Wire's requested relief associated with its claims for breach of contract and declaratory judgment are no longer available.

## AFFIRMATIVE DEFENSES

## RESERVATION OF RIGHTS TO ASSERT ADDITIONAL AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

With respect to the claims remaining, and without undertaking any burden of proof not otherwise assigned to him by law, Wade asserts the following affirmative defenses with respect to the causes of action Tri-Wire purports to assert in the Counterclaims.

In addition to the defenses below, Wade reserves his rights to assert all affirmative defenses and compulsory counterclaims in reply pursuant to Fed. R. Civ. P. 8 and Fed. R. Civ. P. 13 and applicable federal or state law.[1] Wade presently has insufficient knowledge or information upon which to form a belief as to whether he may have other, as yet unstated,

---

[1] In this respect, Wade reserves all of his rights to assert permissive and compulsory counterclaims pursuant to Fed. R. Civ. P. 13 following the Court's review of his Motion for Reconsideration (*see* Dkt No. 153) and any appeal of the findings of law in the Court's June 29, 2021 Order, including but not limited to, the affirmative defense of the violation of good faith and fair dealing and the affirmative defense that any claim to damages under both the Stock Purchase Agreement and Stock Redemption Agreement is set-off against the amount owed by the Company to Wade pursuant to Wade's $13m Subordinated Note. In this respect, Wade also reserves his rights pursuant to Fed. R. Civ. P. 8(c)(2) if any of his affirmative defenses have been mistakenly designated as such.

affirmative defenses and counterclaims available. Wade, therefore, reserves his right to assert additional defenses, counterclaims and third-party claims in the event that discovery indicates that such additional defenses or claims would be appropriate.

## FIRST AFFRIMATIVE DEFENSE

Tri-Wire's Counterclaims are barred in whole, or in part, because Tri-Wire has violated the implied covenant of good faith and fair dealing in failing to perform its contractual obligations to Wade pursuant to the Subordinated Loan Agreement and the Stock Redemption Agreement.[2] In support of this affirmative defense, Wade states that he entered into valid and enforceable contracts with Tri-Wire governed by Massachusetts state law, in or around December 30, 2016, including without limitation to, the Subordinated Loan Agreement and the Stock Redemption Agreement. Under Massachusetts law, every contract includes an implied duty of good faith and fair dealing. *Anthony's Pier Four, Inc. v. HBC Assocs*., 411 Mass. 451, 583 N.E.2d 806, 820 (1991). This implied covenant forbids a party from doing "anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Druker v. Roland Wm. Jutras Assocs*., 370 Mass. 383, 348 N.E.2d 763, 765 (1976) quoting *Uproar Co. v. Nat'l Broadcasting Co*., 81 F.2d 373, 377 (1st Cir.1936).

Here, the Company, through the conduct of its Board of Director's "Special Committee" and its senior executives and officers, engaged in bad faith conduct against Wade, including without limitation to, the performance of a bad faith investigation of Wade to interfere with the fruits of Wade's contractual dealings with the Company pursuant to the Subordinated Loan Agreement and Stock Redemption Agreement and to justify its breach of several covenants

---

[2] Wade pleads the Company's violation of the implied covenant of good faith and fair dealing but expressly reserves his rights to claim this affirmative defense is also a compulsory counterclaim pursuant to Fed. R. Civ. P. 13(a) and/or may be treated as counterclaim pursuant to Rule 8(c)(2) in this litigation.

contained in the Subordinated Loan Agreement. As a representative example, the Company's breach of the Subordinated Loan Agreement is ongoing as it informed Wade in April 2021, in violation of Section 6.3 of the Subordinated Loan Agreement, that it is refusing to provide Wade with any monthly, quarterly, or annual financial information without Wade signing a Confidential Agreement to protect its disclosure.

The Company specifically pursued an "investigation" of Wade in February 2019 with the intention to deprive Wade of his contractual right to serve as Chairman of the Company's Board of Directors, a right that he is promised pursuant to Section 6.12 of the Subordinated Loan Agreement and the Company's Bylaws. Wade's defense of the litigation will rely on documentary evidence from witnesses who have firsthand knowledge of the bad faith investigation and the intent of the Company to perform it to remove Wade from the Company as Chairman of the Company's Board. One piece of evidence is an email, from former Company Board Member David Gesmondi on February 15, 2019 to Scott Perry, Bob Newell, and Robert Gould. *See* Dkt No. 153-1.

The acts and practices of the Company described in this affirmative defense constitute per se breaches of the implied covenant of good faith and fair dealing implicit in all Massachusetts contracts and for which breach Wade is entitled to recover damages according to his proof at trial.

## SECOND AFFIRMATIVE DEFENSE

Each of Tri-Wire's Counterclaims fail to state a claim upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

Each of Tri-Wire's Counterclaims are expressly preempted by The Employee Retirement Income Security Act of 1974 ("ERISA") pursuant to 29 U.S.C. §1144(a).

## FOURTH AFFIRMATIVE DEFENSE

Tri-Wire's alleged injuries and/or damages, if any, were proximately caused by its own negligent or intentional conduct and/or the conduct of others.

## FIFTH AFFIRMATIVE DEFENSE

Tri-Wire's Counterclaims are barred, in whole or in part, because factors other than the alleged misrepresentations of material fact, or alleged actions or omissions by Wade, caused some or all of the alleged damages.

## SIXTH AFFIRMATIVE DEFENSE

TriWire's Counterclaims are barred, in whole or in part, by the doctrines of unclean hands, in pari delicto, assumption of risk and waiver.

## SEVENTH AFFIRMATIVE DEFENSE

Tri-Wire's Counterclaims are barred because its claims to damages are speculative, uncertain, and/or unsupported by any objective facts.

## EIGHTH AFFIRMATIVE DEFENSE

Tri-Wire is, by its own acts, bad faith, omissions and/or negligence estopped from asserting any Counterclaims against Wade.

## NINTH AFFIRMATIVE DEFENSE

To the extent that Tri-Wire's Counterclaims are predicated on the alleged existence of a contractual relationship between Tri-Wire and Wade such claims are barred by the Court's June 29, 2021 Order, dismissing Tri-Wire's breach of contract claims.

## TENTH AFFIRMATIVE DEFENSE

Tri-Wire's claims for damages relating to the Working Capital Adjustment are barred by Section 1.2(b)(iii) of the Stock Purchase Agreement.

## ELEVENTH AFFIRMATIVE DEFENSE

Tri-Wire's Counterclaims are barred in whole, or in part, because it has breached Article 7 of the Stock Redemption Agreement.

## TWELFTH AFFIRMATIVE DEFENSE

Tri-Wire's claims for damages are subject to the express restrictions set forth in Section 8.1 and 8.3 of the Stock Redemption Agreement.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent Tri-Wire seeks damages pursuant to the terms and covenants in the Stock Purchase Agreement, Tri-Wire's claims for damages are subject to the express restrictions set forth in Section 9.3, 9.4, and 9.7 of the Stock Purchase Agreement, including without limitation to the specific calculation of damages set forth in Section 9.7 of the Stock Purchase Agreement.

## FOURTEENTH AFFIRMATIVE DEFENSE

Tri-Wire's claims for damages are limited by Section 8.4 of the Stock Redemption Agreement.

## FIFTEENTH AFFIRMATIVE DEFENSE

Tri-Wire has failed to plead the elements of fraud and intentional misrepresentation with particularity.

## SIXTEENTH AFFIRMATIVE DEFENSE

Tri-Wire's claims for damages are expressly limited by the doctrine of set-off and/or recoupment specifically in that  (1) Section 9.7 of the Stock Purchase Agreement states that "[a]ny indemnification owed to the Purchaser under this Article 9 shall be satisfied by reduction in the amount owed by the Company to the Seller pursuant to the $13,000,000 subordinated

promissory note issued as payment under the Stock Redemption" and (2) Section 8.6 of the Stock Purchase Agreement states that "[a]ny indemnification owed to the Company under this Article 8 shall be satisfied in the amount owed by the Company to the Selling Shareholder pursuant to the Thirteen Million Dollar Note."

## SEVENTEENTH AFFIRMATIVE DEFENSE

Tri-Wire's Counterclaims are barred, in whole or in part, by the Exclusive Remedy Provision set forth in Section 8.5 of the Stock Redemption Agreement and by the exclusive remedy provision contained in Section 9.6 of the Stock Purchase Agreement.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Tri-Wire's Counterclaims are barred in whole, or in part, by its failure to mitigate damages.

## NINETEENTH AFFIRMATIVE DEFENSE

Tri-Wire's Counterclaim of Specific Performance is barred because Tri-Wire has an adequate remedy at law.

## TWENTIETH AFFIRMATIVE DEFENSE

Tri-Wire's Counterclaims are barred in whole, or in part, by the applicable statute of limitations, statute of repose, and/or laches.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Tri-Wire's Counterclaims contain allegations that relate to Wade's purported negligence and/or negligent misrepresentations. Tri-Wire's damages associated with these claims of negligence and/or negligent misrepresentation are barred, or are otherwise limited by, the doctrine of comparative negligence.

## JURY DEMAND

WADE DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

WHEREFORE, Wade prays that this Court enter judgment as follows:

1.      That judgment be entered in favor of Wade and Tri-Wire's remaining

Counterclaims be dismissed with prejudice;

2.      For costs, attorneys' fees, and court hearing fees incurred by Wade; and

3.      For such other and further relief as this Court deems just and proper.


Dated: July 13, 2021
Boston, Massachusetts

**Respectfully Submitted,**

*/s/ Stephen D. Rosenberg*
Stephen D. Rosenberg [BBO #558415]
srosenberg@wagnerlawgroup.com
Jordan D. Mamorsky [BBO #705605]
jmamorsky@wagnerlawgroup.com
**Wagner Law Group, P.C.**
99 Summer Street, 13th floor
Boston, Massachusetts 02110
tel:(617) 357-5200
fax:(617) 357-5250


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified in the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on July 13, 2021.


*/s/ Stephen D. Rosenberg*