IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN R. WADE, III, SHARON WADE, JOHN WADE IV, AND TAYLOR WADE,<br><br>Plaintiffs,<br><br>v.<br><br>TRI-WIRE EMPLOYEE STOCK OPTION TRUST, SCOTT PERRY, ROBERT R. NEWELL, ROBERT LANDRY, DAVID GESMONDI, CAPITAL TRUSTEES, LLC, SPINNAKER TRUST, ROBERT GOULD, JEANINE PENDERGAST, EMPIRE VALUATION CONSULTANTS, LLC, SES WINDING UP CORPORATION F/K/A SES ADVISORS, INC., SES ESOP STRATEGIES, LLC, AS SUCCESSOR TO SES ADVISORS, INC., BELLMARK PARTNERS, LLC, JOHN MARSH, LORI WENETTA, AND RUBEN KLEIN,<br><br>Defendants. | CASE NO. 1:20-cv-10523-LTS |

**COMBINED MEMORANDUM OF DEFENDANTS/COUNTERCLAIMANTS
SPINNAKER TRUST AND TRI-WIRE ENGINEERING SOLUTIONS, INC.,
AND DEFENDANTS PERRY, NEWELL, PENDERGAST AND GOULD
IN OPPOSITION TO THE MOTION FOR RECONSIDERATION (DKT. NO. 153)
AND
IN SUPPORT OF THE MOTION TO STRIKE (DKT. NO. 159)**

**I.      Introduction**

Counterclaim Defendant John R. Wade III asserts that he is not filing a Motion for Reconsideration (Dkt. No. 153) "to burden the Court with any rehashing of the arguments he made in the extensive briefing" that already occurred,[1] but spends 10 pages in the Motion and 20 pages in his Memorandum in Support doing exactly that – rehashing arguments that were made, and that

---

[1] Memorandum of Law in Support of Motion for Reconsideration (Dkt. No. 154), p.1.

could have been made but were never asserted, in the extensive briefing on which this Court already rendered two decisions. The purpose of this improper rehashing is transparent: to relitigate the claims already dismissed, either through reconsideration and "clarification as to his rights to bring counterclaims" against Spinnaker and Tri-Wire, or through the improper reassertion of his dismissed claims as "affirmative defenses." *Memorandum* (Dkt. No. 154), pp.8-9.

No reconsideration or clarification is warranted. Wade's claims have been correctly dismissed with prejudice for all of the reasons set forth in the Court's prior Orders. The Court already correctly concluded that the plain meaning of Section 2.3 of the Intercreditor and Subordination Agreement prohibits any "Enforcement Action" by Wade as a matter of law until the senior lender is fully re-paid, and that there are no facts alleged against specific defendants to plausibly plead a tortious interference claim. In addition, Wade's "reservation of rights" in his Answers to Tri-Wire's Counterclaims (Dkt. No. 156) and Spinnaker's Counterclaims (Dkt. No. 157), and the assertion of affirmative defenses that reassert claims already made in his now-dismissed Amended Complaint are improper and the Court should strike them under Federal Rule of Civil Procedure 12(f).

This Court correctly held that there is no legal basis for any of the claims asserted by Wade. There should be no further litigation of those dismissed claims in this case, let alone "extensive discovery related to Tri-Wire's investigation"[2] that is only relevant to Wade's now-dismissed claims, and not relevant to whether his representations in the Stock Purchase Agreement and Stock Redemption Agreement (the subject of the remaining Counterclaims) were false. Wade's Motion for Reconsideration should be denied, and Tri-Wire's and Spinnaker's Motion to Strike should be granted.

---

[2] Memorandum (Dkt. No. 154), pp.18-19.

## II. Argument

There is no legal or factual basis for reconsideration. Reconsideration is "an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). "Motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, (2) if there has been an intervening change in the law, or (3) if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (internal citation omitted).

None of those circumstances are present here. There has been no intervening change in the law. And Wade's Motion does not even try to argue that the evidence he purports to rely upon is "newly discovered." And in any event, a motion for reconsideration based on the "new evidence" exception should be denied even if new evidence is offered if that evidence "in the exercise of due diligence[ ] could have been presented earlier." *Id. (*citing *Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25,* 426 F.3d 416, 422 (1st Cir.2005)).

Nor is there any manifest error of law or clearly unjust result in the Court's prior orders. Wade's Motion simply reasserts arguments that were already asserted or could have been asserted in the extensive briefing that preceded this Court's two decisions, in an obvious effort to distract these proceedings from what this case is actually about: Wade's own fraud. Wade's Motion violates settled First Circuit law that a motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance arguments that could or should have been presented to the district court prior to the judgment." *Marks 3-Zet-Ernst Marks GMBH & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 15-16

(1st Cir. 2006).

Similarly, a party may not resurrect arguments and claims as "affirmative defenses" that have already been dismissed or denied. Affirmative defenses that reassert the arguments raised and rejected in a motion to dismiss are improper and should be stricken under Rule 12(f). *U.S. ex rel. Spay v. CVS Caremark Corp.*, Case No. CIV.A. 09-4672, 2013 WL 1755214 (E.D. Pa. Apr. 24, 2013). Affirmative defenses that reassert claims that have been dismissed as a matter of law should also be stricken. A court "may strike an affirmative defense as legally insufficient when it has already addressed and rejected the exact argument on a previous motion." *Valbruna Slater Steel Corp. v. Joslyn Manufacturing Co.*, Case No. 1:10-cv-44, 2013 WL 12409538, at *2 (N.D. Ind. June 5, 2013). Reasserting the same claims that were already dismissed may also constitute issue preclusion. *Fleet Nat. Bank v. Hartstone*, Case No. 96-10166-NG, 1997 WL 557564, at *13 (D. Mass. May 29, 1997). There is no basis for reconsideration, or the reassertion of dismissed claims and arguments as affirmative defenses. Wade's Motion for Reconsideration should be denied, and the Motion to Strike should be allowed.

### a. The Court Did Not Misunderstand the Terms of the Loan Agreements

Section 2.3 of the Intercreditor and Subordination Agreement is clear and unambiguous: Wade cannot undertake any "Enforcement Action" with respect to his debt until JPMorgan, the Senior Creditor, is paid in full. "Enforcement Action" is a defined term that includes "judicial enforcement of any of the rights or remedies under the Subordinated Loan Documents or applicable law" with respect to (among other things) the Subordinated Loan Agreement. That is what the Intercreditor agreement says, and that is exactly what the Court correctly concluded in its decision. *Second Memorandum and Order* (Dkt. No. 150), pp.9-11. All of the arguments raised in reconsideration of that determination are not only contrary to the plain meaning of the terms

4

actually included in the agreements, but are arguments that were raised, or could have been raised, in the original briefing on this issue.

The majority of Wade's reconsideration arguments rehash terms and principles set forth in the original briefing, and focus heavily on the law of subordination. But it is not subordination that is the issue before the Court. The New York cases cited by Wade focus on priority and collection with respect to *subordination* clauses in loan agreements, like the subordination provision at Section 2.2 of the Intercreditor and Subordination Agreement (the "Subordinated Debt Payment Restrictions"). *Compare* Section 2.2 *with Dorf v. Knitmedia Inc.*, 16 Misc. 3d 1126(A), 2007 WL 2376813 * at 3 (Sup. Ct. 2007); *Kornfeld v. NRX Technologies, Inc.*, 93 A.D.2d 772, 773 (1st Dep't 1983), *aff'd* 62 N.Y.2d 686 (1984); *Imtrac Indus., Inc. v. Glassexport Co.*, Case No. 90 CIV. 6058 (LBS), 1996 WL 39294, at *6 (S.D.N.Y. Feb. 1, 1996).

None of those cases concerned provisions akin to the *standstill* provision that is actually at issue in this matter – Section 2.3 of the Intercreditor agreement. What is actually at issue here is whether, in addition to subordination of payment, Wade also agreed that he is prohibited from enforcing his rights under the subordinated loans and related agreements until JPMorgan is fully re-paid. The Court correctly determined that Wade is so prohibited – because that is exactly what Section 2.3 says. Wade may have the right to payment and other rights in the Subordinated Loan Agreement and other documents. But in return for JPMorgan's loan (that facilitated the payment of more than $20 million to Wade in the transaction that forms the basis of this litigation), Wade, Tri-Wire (the "Borrower" in the Intercreditor agreement) and JPMorgan agreed that Wade could not take any Enforcement Action until the senior loan was paid in full.

Wade's remaining arguments – such as the supposed application of Section 13 – are irrelevant to this claim. All of Wade's arguments would render Section 2.3 meaningless. And

Section 15 of the Intercreditor agreement provides that in the event of any conflict between the Intercreditor agreement and the terms of the Subordinated Loan Agreement, the terms of the Intercreditor agreement "shall control and govern." Intercreditor and Subordination Agreement (Dkt. No. 1-1), p.9. Count XV of the Complaint was properly dismissed with prejudice, and reconsideration of that dismissal should be denied.

### b. There is No Factual or Legal Basis for the Intentional Interference Claim

This Court correctly concluded that Count XVI of the Complaint "advances claims of Intentional Interference with Contractual Relations against a blunderbuss array of defendants" but "does not explain which actions by which defendants form the basis of his claims," and that "neither do his briefs" in opposition to dismissal of this claim. *Second Memorandum and Order* (Dkt. No. 150), p.12. This claim was therefore properly dismissed because the allegations were insufficient to plausibly allege a valid claim against any defendant. *Id.*

Wade attempts to resurrect this claim by attaching an email from one of the purported defendants to that claim (Gesmondi) to three other supposed defendants (Newell, Perry, and Gould) – but never explains why this email was never previously disclosed, let alone why it could constitute "new evidence" for purposes of reconsideration. That failure alone should result in the denial of the Motion for Reconsideration. "At the very least the [moving party] must put forth a 'cogent reason' as to why this evidence could not have been offered at an earlier stage of the proceedings." *In re Genzyme Corp.*, 2012 WL 6674483, at *2 (D. Mass. Dec. 21, 2012), *aff'd sub nom. In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31 (1st Cir. 2014). (*quoting Fisher v. Kadant*, 589 F.3d 505, 513 (1st Cir. 2009)). This Court should refuse to consider "new" evidence without having been provided any reason, let alone a cogent reason, why it had not previously been disclosed. *Torosian v. Garabedian*, Case No. CV 15-11887-FDS, 2016 WL 5799013, at *1 (D.

6

Mass. Oct. 3, 2016), *aff'd*, No. 16-2327, 2018 WL 2283877 (1st Cir. May 17, 2018) ("Plaintiffs here have failed to provide any reason at all as to why the evidence they now seek to offer was previously undiscoverable.").

But the email is also insufficient to satisfy a valid claim for tortious interference even if it was considered. It's obvious from the full text of the email (not just the passages selectively quoted by Wade in the Motion) that the author *agreed* with an investigation of Wade and the "very serious" allegations; his disagreement was with the suspension of Wade as CEO, and the independence of that investigation. But contrary to the negative "inference" Wade's Motion for Reconsideration attempts to portray regarding this email (dated February 15, 2019), Wade's own Amended Complaint alleges what happened next: Wade's subsequent correspondence (such as Wade's February 17, 2019 letter attached as Exhibit 14 to the Amended Complaint) resulted in Wade negotiating "a compromise with Gould that would result in Wade taking a 30 day leave, voiding Hryshko's invalid appointment, and bringing on two additional independent Board member to investigate" the claims against Wade. *Amended Complaint* (Dkt. No. 120), ¶139. The Motion for Reconsideration uses the email to try to cast doubt on the very investigation Wade alleges in his Amended Complaint that he subsequently agreed to. The email is of no moment to any claim for "tortious interference."

There is therefore nothing for the Court to actually reconsider with respect to Count XVI. There are no plausibly pleaded facts against any defendant that Wade's contractual rights were intentionally interfered with as a result of the investigation Wade agreed to. There are no such facts in the Amended Complaint, nor even any such "facts" improperly raised in the Motion for Reconsideration. The Motion for Reconsideration should be denied.

### c. Wade Cannot Reassert Claims and Defenses Already Dismissed by this Court

Unsatisfied with a Motion for Reconsideration, Wade's Answers to the Counterclaims of Tri-Wire and Spinnaker assert affirmative defenses, and purport to "reserve rights," that reassert claims and defenses that have already been rejected by the Court. Like in *Valbruna Slater Steel Corp. v. Joslyn Manufacturing Co.*, this Court should strike the affirmative defenses that repeat claims and defenses the Court has already rejected. No. 1:10-cv-44, 2013 WL 12409538, at *2-3 (N.D. Ind. June 5, 2013).

It is a waste of the Court's and the parties' time and money to allow the same issues to be relitigated as affirmative defenses that were already denied or dismissed as a matter of law. *U.S. ex rel. Spay*, 2013 WL 1755214, at *3. And it could not be more clear that Wade's true gambit is to improperly seek discovery on the claims this Court has already dismissed – under the guise of "affirmative defenses" – that have nothing to do with the substance of the Counterclaims to which the Answers purport to respond.

Numerous affirmative defenses asserted in the Answer to Tri-Wire's Counterclaims should be stricken because they repeat dismissed claims or defenses that were already denied: The "Reservation of Rights" on pages 28-29 of the Answer, and Affirmative Defenses 1, 2, 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, and 21. Paragraph 18 of the Motion for Reconsideration baldly stated that despite the Court's dismissal of Count XVI and the allegations regarding the investigation of Wade, he would simply reassert those allegations as affirmative defenses. That impermissible affirmative defense is reasserted as the First Affirmative Defense to the Tri-Wire Counterclaims. It should be stricken.

Numerous other affirmative defenses improperly repeat defenses that were denied and claims that were dismissed, such as the assertion that the claims are preempted by ERISA (Third

Affirmative Defense), are not pleaded with particularity (Fifteenth Affirmative Defense), and are barred or limited by the Exclusive Remedy or other provisions of the agreements (Affirmative Defense Nos. 10, 11, 12, 13, 14, 16, 17). A chart comparing these improper affirmative defenses to the claims and defenses already denied by the Court is attached as Exhibit A to the Motion to Strike.

Likewise, the Answer to Spinnaker's Counterclaims contain numerous affirmative defenses that should be stricken under Rule 12(f): The "Reservation of Rights" on pages 27-28 of the Answer, and Affirmative Defenses 2, 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19, 20, and 21. These affirmative defenses contain the same infirmities as the affirmative defenses to the Tri-Wire Counterclaims, as summarized on Exhibit B to the Motion to Strike.

### III. Conclusion

Wade filed an 82-page Complaint in March 2020 with 362 numbered paragraphs setting forth 25 separate causes of action. Wade never moved to amend that Complaint – the only amendment was necessitated by Tri-Wire's Motion to Intervene (Dkt. No. 57) and the Court's subsequent order after the October 1, 2020 status conference, and was limited to correcting three errors in the Complaint. (Dkt. No. 117).

After having every count of his baseless Complaint dismissed, Wade's Motion for Reconsideration and affirmative defenses to the Counterclaims ask this Court to ignore its own rulings and permit him to resurrect his baseless claims, on a fishing expedition for "extensive discovery related to Tri-Wire's investigation of him" as an illegitimate and irrelevant defense to the only claims that remain in this case: that Wade committed numerous acts of fraud and misrepresentation when selling his company. The Motion for Reconsideration should be denied, and the Motion to Strike should be allowed.

Respectfully Submitted:

**TRI-WIRE ENGINEERING SOLUTIONS, INC., SCOTT PERRY, ROBERT LANDRY, and ROBERT R. NEWELL**

*/s/ Timothy H. Madden*

Timothy H. Madden (BBO# 654040)
Nicholas J. Ramacher (BBO# 680258)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880 (T)
(617) 720-3554 (F)
thm@dcglaw.com
njr@dcglaw.com

**SPINNAKER TRUST, ROBERT GOULD, and JEANINE PENDERGAST**

*/s/ Scott J. Stitt*

Scott J. Stitt (Ohio 0073943) (*pro hac vice*)
TUCKER ELLIS LLP
175 S. Third St., Suite 520
Columbus, OH 43215
Telephone: 614.358.9717
Facsimile: 614.358.9712
scott.stitt@tuckerellis.com

Chelsea Mikula (Ohio 0086453) *(pro hac vice)*
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel: 216.592.5000
Fax: 216.592.5009
chelsea.mikula@tuckerellis.com

Nicholas B Carter
TODD & WELD
One Federal Street, 27th Floor
Boston, MA 02110
Tel: 617-720-2626
Fax: 617-227-5777
ncarter@toddweld.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        */s/ Scott J. Stitt*
*One of the Attorneys for Defendants Spinnaker Trust, Robert Gould, Jeannine Pendergast, and the Tri-Wire Employee Stock Ownership Trust*