UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPINNAKER TRUST and TRI-WIRE ENGINEERING SOLUTIONS, INC.<br><br>    Counter Claimants,<br><br>v.<br><br>JOHN R. WADE, III<br><br>    Counter Defendant | CIVIL ACTION NO.<br>20-CV-10523-LTS |

### JOHN R. WADE III'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS TO DISMISS COUNTERCLAIMS OF TRI-WIRE ENGINEERING SOLUTIONS, INC.

WAGNER LAW GROUP, P.C.
  Stephen D. Rosenberg [BBO #558415]
  Jordan D. Mamorsky [BBO #705605]
  99 Summer Street, 13th Floor
  Boston, Massachusetts 02110
  T: (617) 357-5200
  F: (617 357-5250
  srosenberg@wagnerlawgroup.com
  jmamorsky@wagnerlawgroup.com

GLENN AGRE BERGMAN
  & FUENTES LLP
  Andrew K. Glenn (*pro hac vice*)
  Marissa E. Miller (*pro hac vice*)
  55 Hudson Yards
  20th Floor
  New York, New York 10001
  T:  (212) 358-5600
  aglenn@glennagre.com
  mmiller@glennagre.com

  *Attorneys for John R. Wade, III*

## **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ..................................................................................................................... 1

      A.     Wade Was The Sole Shareholder, Sole Board Member, and CEO of Tri-Wire ................................................................................................. 1

      B.     The Allegedly Fraudulent Transaction ....................................................... 2

      C.     Wade's Alleged Wrongdoing ..................................................................... 2

      D.     The Counterclaims ..................................................................................... 4

ARGUMENT ........................................................................................................................... 4

I. LEGAL STANDARD. ........................................................................................................ 4

II. TRI-WIRE'S FRAUD/FRAUDULENT INDUCEMENT AND INTENTIONAL MISREPRESENTATION COUNTERCLAIMS ARE BARRED BY THE DOCTRINE OF IN PARI DELICTO. .................................................................................................... 5

      A.     Wade's Allegedly Fraudulent Conduct Is Imputed to Tri-Wire. ................ 6

      B.     The Preclusion of Tri-Wire's Claims Will Not Run Afoul of Massachusetts' Public Interest. ................................................................... 9

CONCLUSION ...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*546-552 W. 146th St LLC v. Arfa*,
   863 N.Y.S.2d 412 (N.Y. App. Div. 2008) ................................................................................ 8

*AGM Marine Contractors, Inc. v. Canby, Maloney & Co.*,
   No. 07–P–616, 2008 WL 1700120 (Mass. App. Ct. Apr. 14, 2008) ........................................ 7

*Arcidi v. Nat'l Ass'n of Gov't Emps., Inc.*,
   856 N.E.2d 167 (Mass. 2006) .................................................................................................. 6

*Baena v. KPMG LLP*,
   389 F. Supp. 2d 112 (D. Mass. 2005) ...................................................................................... 6

*Baena v. KPMG LLP*,
   453 F.3d 1 (1st Cir. 2006) ................................................................................................ 5, 6, 7

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) ................................................................................................................. 6

*Choquette v. Isacoff*,
   836 N.E.2d 329 (Mass. App. Ct. 2005) ................................................................................ 5, 6

*Council v. Cohen*,
   21 N.E.2d 967 (Mass. 1939) .................................................................................................... 6

*Curran v. Cousins*,
   509 F.3d 36 (1st Cir. 2007) ...................................................................................................... 5

*Doral Fabrics, Inc. v. Gold*,
   67 N.Y.S.3d 627 (N.Y. App. Div. 2018) ................................................................................. 9

*Fine v. Sovereign Bank*,
   634 F. Supp. 2d 126 (D. Mass. 2008) .................................................................................. 7-8

*Fine v. Sovereign Bank*,
   No. 06CV11450-NG, 2009 WL 10692784 (D. Mass. Apr. 20, 2009) ..................................... 9

*Gray v. Evercore Restructuring L.P.*,
   No. CIV. A. 06-11444-RWZ, 2007 WL 3104597 (D. Mass. Sept. 19, 2007) ...................... 5, 6

*Gray v. Evercore Restructuring LLC*,
   544 F.3d 320 (1st Cir. 2008) .................................................................................................... 5

*In re D'Amore*,
   No. 04-10546-JNF, 2005 WL 3738963 n.2 (Bankr. D. Mass. Dec. 16, 2005) ........................... 8

*Merrimack College v. KPMG LLP*,
   108 N.E.3d 430 (Mass. 2018) ................................................................................................ 7

*Nisselson v. Lernout*,
   469 F.3d 143 (1st Cir. 2006) ......................................................................................... 5, 6, 7, 9

*O'Melveny & Myers v. FDIC*,
   512 U.S. 79 (1994) ................................................................................................................. 7

*Rivera–Gomez v. de Castro*,
   843 F.2d 631 (1st Cir. 1998) ................................................................................................... 5

Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 4, 5

Fed. R. Civ. P. 12(c) ............................................................................................................. 1, 4, 5

Counter Defendant John R. Wade, III ("Wade") respectfully submits this memorandum of law in support of his motion for judgment on the pleadings to dismiss the counterclaims (Dkt. 121) ("Counterclaims" or "CC") of Counter Claimant Tri-Wire Engineering Solutions, Inc. ("Tri-Wire" or the "Company") pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (the "Motion").[1]

## PRELIMINARY STATEMENT

The doctrine of *in pari delicto* bars a plaintiff from asserting a claim resulting from its own purported wrongdoing. That is exactly what Tri-Wire seeks to do here. Tri-Wire's Counterclaims arise from Wade's alleged wrongdoing while the Chief Executive Officer, sole director, and sole shareholder of Tri-Wire. Given Tri-Wire's allegations throughout the Counterclaims that Wade dominated and controlled Tri-Wire, all of that alleged wrongdoing is imputed to Tri-Wire as a matter of law. Thus, accepting all of Tri-Wire's allegations as true (*but not admitting any of them*), the wrongdoing as between Tri-Wire and Wade is equivalent. Accordingly, the *in pari delicto* doctrine bars Tri-Wire's claims as a matter of law.

## BACKGROUND

The following background information is based on the allegations in the Counterclaims, which, solely for purposes of this Motion, are assumed to be true. Wade does not admit any of the allegations in the Counterclaims.

### A.   Wade Was The Sole Shareholder, Sole Board Member, and CEO of Tri-Wire

Wade founded Tri-Wire – a company that provides residential telecommunications installation services throughout the eastern United States – in 1999. (CC ¶¶ 18-19.) At all relevant times – from 1999 through December 31, 2016 – Wade served as the Chief Executive

---

[1]   Unless otherwise noted, all citations and quotations are omitted from case citations.

Officer, sole shareholder, and sole director of Tri-Wire. (*Id.* ¶¶ 2, 14, 20.) As alleged in the Counterclaims, in these roles, "Wade exerted *unilateral* and extreme control over the Company and its employees." (*Id.* ¶ 2 (emphasis added); *see also id.* ¶ 21 ("[A]s the Company's *sole shareholder and sole decision-maker*, Wade had access to and direct and complete ultimate control over Tri-Wire's bank accounts, e-mail servers, Quickbooks and/or other accounting and financial systems, American Express and/or other credit accounts, and all other accounts and property.") (emphasis added).)

### B. The Allegedly Fraudulent Transaction

In or around 2015, Wade decided to sell Tri-Wire to an employee stock option plan ("ESOP") (CC ¶¶ 23-24.) Wade hired a trustee to serve as the representative for the ESOP participants in the stock sale and the trustee hired Empire Valuation Consultants LLC ("Empire") to assist with the determination of the fair market value of the Tri-Wire shares. (*Id.* ¶ 26.)

"At the time of the transaction, Wade owned all 1,520,000 issued and outstanding shares of the Company." (*Id.* ¶ 32.) On or about December 30, 2016, Wade sold 100% of the outstanding shares of Tri-Wire, leaving the ESOP as the Company's sole shareholder (the "Transaction") in two interrelated transactions: Tri-Wire redeemed and retired 700,000 shares for $17,500,000 (in the form of subordinated notes); and the newly formed ESOP purchased the remaining 820,000 shares for $20,500,000 cash (with money borrowed from Tri-Wire). (*Id.* ¶¶ 4-5, 32-38.) As a result of the Transaction, "Wade redeemed and/or sold all of his shares of the Company, and the ESOP became the Company's sole shareholder. (*Id.* ¶¶ 5, 35.)

### C. Wade's Alleged Wrongdoing

Tri-Wire now claims that the Transaction was fraudulent. Tri-Wire alleges that Wade's representations in connection with the Transaction were "materially false" and that he "intentionally withheld the truth from the advisors . . . to materially inflate the value of Tri-

2

Wire's shares to his own benefit and to the detriment of the ESOP and the Company." (CC ¶¶ 7, 27-31, 48-50.)

First, Tri-Wire alleges that Wade "withheld information regarding the nature of Tri-Wire's automobile insurance policy and the potential for significant, additional retroactive premiums to be incurred after the Transaction, including for pre-Transaction years." (*Id.* ¶¶ 53-78.) Specifically, Tri-Wire alleges that Wade knew that the Company was likely to incur retroactive premiums in material amounts for policy years 2015 and 2016, but he did not disclose that information to Capital Trustees or Empire. (*Id.* ¶¶ 64-65.) Tri-Wire alleges that this information "would have had a material negative impact on the valuation of the Company's shares." (*Id.* ¶ 78.)

Second, Tri-Wire alleges that Wade "failed to disclose his intention to create a construction division of Tri-Wire that required significant working capital. . . ." (*Id.* ¶¶ 79-85.) Specifically, Tri-Wire alleges that Wade told Empire "that the Company had no capital expenditures, that its depreciation expense was zero, and its working capital needs would be consistent with its historical performance" when "[i]n truth, the creation of a Construction Division would require additional expenditures and cause the Company to incur significant financial losses for a new line of business." (*Id.* ¶ 84.) Tri-Wire alleges that the valuation of the Company "would have been significantly reduced" had these facts been known. (*Id.* ¶ 85.)

Third, Tri-Wire alleges that Wade "manipulated the financial statements to maximize the amount of cash he received as part of the Transaction." (*Id.* ¶¶ 86-97.) Specifically, Tri-Wire alleges that Wade was aware of duplicate payments, and that he failed to disclose that information to Capital Trustees and/or Empire. (*Id.*) Tri-Wire alleges that, as a result, Wade received from an additional $1,118,093.30 in cash at the closing of the Transaction." (*Id.* ¶ 97.)

Fourth, Tri-Wire alleges that "Wade issued undisclosed and/or unauthorized bonuses to himself and to others." (*Id.* ¶¶ 98-100.) Tri-Wire alleges that these bonuses "drained the Company's working capital in the period following the Transaction." (*Id.* ¶ 100.)

Fifth, Tri-Wire alleges that Wade "failed to pay and/or disclose certain taxes and debts that were owed by the pre-Transaction Company." (*Id.* ¶¶ 101-103). Tri-Wire alleges that they should have been paid and/or disclosed prior to the Transaction. (*Id.* ¶ 103.)

Tri-Wire insists that, as a result of Wade's fraud, "the Company was overvalued in the Transaction in excess of $18 million" and that Wade "should not have received the working capital adjustment of $1.5 million, or been paid interest on the Subordinated Notes of more than $1.6 million." (*Id.* ¶ 9.)

### D. The Counterclaims

Tri-Wire's remaining counterclaims assert the following causes of action: Fraud/Fraudulent Inducement (Counterclaim I); Intentional Misrepresentation (Counterclaim II); and Specific Performance (Counterclaim IV). (CC ¶¶ 120-137; 145-149.) Tri-Wire's counterclaims for fraud/fraudulent inducement and intentional misrepresentation should be dismissed based on the doctrine of *in pari delicto*. Because Tri-Wire's specific performance counterclaim is dependent on its fraud/fraudulent inducement and intentional misrepresentation counterclaims, it should be dismissed as well.

## ARGUMENT

### I. Legal Standard.

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is analyzed under the same substantive standard applied to Rule 12(b)(6). *Gray v. Evercore Restructuring L.P.*, No. CIV. A. 06-11444-RWZ, 2007 WL 3104597, at *3 (D. Mass. Sept. 19, 2007) (applying "same legal standard" to Rule 12(c) and Rule 12(b)(6) motions),

*aff'd sub nom. Gray v. Evercore Restructuring LLC*, 544 F.3d 320 (1st Cir. 2008). However, "[a] Rule 12(c) motion implicates the pleadings as a whole." *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007). When reviewing a rule 12 (c) motion, "[t]he trial court must accept all of the nonmovant's well-pleaded factual averments as true . . . and draw all reasonable inferences in [its] favor." *Gray*, 2007 WL 3104597, at *3 (citing *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1998)). To prevail on a motion for judgment on the pleadings, the moving party must demonstrate that "it appears beyond a doubt that the nonmoving party can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Id.* at *3. Applying this standard, Tri-Wire's Counterclaims should be dismissed.

## II.     Tri-Wire's Fraud/Fraudulent Inducement And Intentional Misrepresentation Counterclaims Are Barred By The Doctrine Of In Pari Delicto.

"In pari delicto is both an affirmative defense and an equitable defense." *Nisselson v. Lernout*, 469 F.3d 143, 151 (1st Cir. 2006) (affirming dismissal on *in pari delicto* grounds after fraudulent conduct was imputed to corporation); *Choquette v. Isacoff*, 836 N.E.2d 329, 332 (Mass. App. Ct. 2005) (affirming dismissal pursuant to *in pari delicto* doctrine where plaintiff had committed perjury). "[T]he defense prohibits plaintiffs from recovering damages resulting from their own wrongdoing." *Nisselson,* 469 F.3d at 151. "In substance, the doctrine offers a policy-based defense reflecting an obvious but visceral judgment, one echoed in other, somewhat different legal doctrines, *e.g.*, the 'unclean hands' defense in equity, and contributory negligence in tort actions." *Baena v. KPMG LLP*, 453 F.3d 1, 6 (1st Cir. 2006).

"The label derives from the Latin phrase in pari delicto potior est conditio possidentis, which admonishes that '[i]n a case of equal or mutual fault . . . the condition of the [defending party] is the better one.'" *Nisselson,* 469 F.3d at 151 (*citing* Black's Law Dictionary 791 (6th ed.1990)). The defense is grounded on two premises. First, "courts should not lend their good

5

offices to mediating disputes among wrongdoers." *Id.* (*citing Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985)).  Second, "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Id.*

"The in pari delicto defense has long been woven into the fabric of federal law," and "Massachusetts courts, like the federal courts, have warmly embraced the in pari delicto defense." *Id.* at 152 (*citing Council v. Cohen*, 21 N.E.2d 967, 970 (Mass. 1939); *Choquette*, 836 N.E.2d at 335).  Indeed, Massachusetts state courts, and courts in this circuit applying Massachusetts law, regularly dismiss claims as barred by the doctrine of *in pari delicto* at the pleadings stage.  *See, e.g.*, *Choquette*, 836 N.E.2d at 335; *Gray*, 2007 WL 3104597, at *6 (granting motion for judgment on the pleadings; claims barred by doctrine of *in pari delicto*); *Arcidi v. Nat'l Ass'n of Gov't Emps., Inc.*, 856 N.E.2d 167, 173 (Mass. 2006) (dismissing union's counterclaim to recover money paid under illegal contract based on *in pari delicto* doctrine because union's agent executed contract on its behalf); *Baena v. KPMG LLP*, 389 F. Supp. 2d 112, 121 (D. Mass. 2005), *aff'd*, 453 F.3d 1 (1st Cir. 2006) (granting motion to dismiss where allegations in complaint established that plaintiff corporation was *in pari delicto* with defendants).

To invoke the defense, a defendant must establish that: (i) the plaintiff bears at least substantially equal responsibility for the wrong as compared to the defendant; and (ii) preclusion of the suit will not contravene the public interest.  *Nisselson*, 469 F.3d at 152; *Gray*, 2007 WL 3104597, at *4.  The Court may dismiss a complaint at the pleadings stage based on *in pari delicto*, which dooms Tri-Wire's claims here.

    **A.**    **Wade's Allegedly Fraudulent Conduct Is Imputed to Tri-Wire.**

Tri-Wire and Wade are equally at fault for the misconduct alleged in the Counterclaims because Wade's alleged conduct – as the CEO and sole director of Tri-Wire – is imputed to Tri-

6

Wire as a matter of law.  In Massachusetts,[2] the intentional misconduct of the senior management of a corporation – officers primarily responsible for managing the corporation, the directors, and the controlling shareholders – will be imputed onto the corporation for *in pari delicto* purposes.  *Baena*, 453 F.3d at 3, 7-9 (affirming dismissal of claim pursuant to *in pari delicto* doctrine where fraudulent conduct of corporation's "top officers and directors" was imputed onto the corporation); *AGM Marine Contractors, Inc. v. Canby, Maloney & Co.*, No. 07–P–616, 2008 WL 1700120, at *2 (Mass. App. Ct. Apr. 14, 2008) (claim barred by *in pari delicto* doctrine because illegal conduct of corporation's sole officer, director, and shareholder imputed to corporation).[3]

Though the conduct of an agent of a corporation who acts adversely to the interests of the corporation will ordinarily not be imputed onto the corporation, there is an exception directly applicable here.  Under the "sole actor" rule, where, like here, "a corporation's agent effectively *is himself the corporation*—where the actor and the corporation are alter egos—even acts that harm the corporation cannot be considered 'adverse.'"  *Fine v. Sovereign Bank*, 634 F. Supp. 2d 126, 139 (D. Mass. 2008) (emphasis added) (imputing wrongful acts of company's sole director and sole shareholder pursuant to the sole actor doctrine); *In re D'Amore*, No. 04-10546-JNF,

---

[2] Massachusetts state law determines when wrongful conduct should be imputed to a corporation.  *See Merrimack College v. KPMG LLP*, 108 N.E.3d 430, 441-42 (Mass. 2018) (citing *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83-85 (1994) (rules governing imputation are matter of State law)).

[3] "[A] party's culpability vel non must be *based on its status at the time the alleged illegality occurred*."  *Nisselson*, 469 F.3d at 155 (emphasis added).  Thus, it is irrelevant that Wade is no longer the CEO, sole shareholder, or sole director of Tri-Wire.  *See Baena*, 453 F.3d at 10 (finding no Massachusetts case law supporting a theory that in pari delicto is in any way modified when "prior management was at fault but the claim [is] asserted on behalf of creditors or shareholders").

2005 WL 3738963, at *1 n.2 (Bankr. D. Mass. Dec. 16, 2005) (discussing how sole actor doctrine negates adverse interest exception to imputation when agent also controls corporation).[4]

This is exactly what Tri-Wire alleges. According to the Counterclaims, Wade was, at all relevant times, the sole shareholder, CEO, and sole board member of Tri-Wire. (CC ¶ 20.) In that capacity, Wade exerted unilateral and extreme control over the Company and its employees" and had "complete ultimate control over Tri-Wire's bank accounts, e-mail servers, Quickbooks and/or other accounting and financial systems, American Express and/or other credit accounts, and all other accounts and property." (*Id.* ¶¶ 2, 21.)

All of Wade's alleged wrongdoing must therefore be imputed to Tri-Wire as a matter of law. Accordingly, Wade and Tri-Wire are equally at fault for allegedly misrepresenting and/or omitting (i) "accurate information about the nature of the Company's auto insurance; and (ii) its "intention to start a [n]ew division of the Company (that would require additional capital to get started). (*Id.* ¶ 8.) Wade and Tri-Wire are equally at fault for purportedly covering up a double payment from a customer of over $1 million. (*Id.*) And Tri-Wire and Wade are equally at fault for allegedly paying undisclosed bonuses. (*Id.*) Thus, because Tri-Wire and Wade are equally at fault for the acts giving rise to the Counterclaims, Tri-Wire's claims are barred.

Moreover, this is the logical result. Tri-Wire is essentially accusing Wade of defrauding himself as the controller and owner of Tri-Wire. This is impossible as a matter of law and common sense: Tri-Wire cannot possibly have been defrauded when all of Wade's knowledge is imputed to it, because, based on Wade's purported knowledge of the alleged fraud, Tri-Wire

---

[4]   *See also 546-552 W. 146th St LLC v. Arfa*, 863 N.Y.S.2d 412, 415 (N.Y. App. Div. 2008) (applying New York law; "We agree with the federal courts' articulation of the 'sole actor' rule, that the adverse interest exception does not apply if the alleged wrongdoers were, at the time of their misconduct, either the sole managers or the sole owners of the plaintiff.").

8

"cannot have been deceived." *See e.g.*, *Doral Fabrics, Inc. v. Gold*, 67 N.Y.S.3d 627, 628 (N.Y. App. Div. 2018) (affirming dismissal of fraud claim against former president and sole shareholder of plaintiff company because defendant's knowledge is imputed to the company and it thus "cannot have been deceived").

### B. The Preclusion of Tri-Wire's Claims Will Not Run Afoul of Massachusetts' Public Interest.

Massachusetts' public interest would not be offended by the preclusion of Tri-Wire's Counterclaims. The assertion of the doctrine of *in pari delicto* as a defense against a party who was complicit in wrongdoing via imputation or where a corporation was used as a vehicle for fraud does not contravene the public interest. *See Nisselson*, 469 F.3d at 156-57 (dismissing claims on *in pari delicto* grounds; public interest not implicated where "the trustee [was] not bringing claims on behalf of an innocent target of the fraud but, rather, on behalf of a complicit party"). Moreover, "general tort law . . . was not specially designed to protect corporations which were the vehicle of the fraud." *Fine v. Sovereign Bank*, No. 06CV11450-NG, 2009 WL 10692784, at *2 (D. Mass. Apr. 20, 2009) (applying *in pari delicto* to bar claims by receiver for a corporation whose sole director and shareholder committed fraudulent acts that gave rise to the corporation's tort claims).

Here, Tri-Wire was complicit in the alleged wrongdoing because Wade's actions are imputed to it. Barring it from recovery does not contravene Massachusetts public policy.[5]

---

[5] Moreover, third parties that were allegedly defrauded still have their remedies. Thus, the ESOP may continue to pursue its claims against Counter Claimant.

9

## CONCLUSION

For the reasons set forth above, the Court should grant Wade's motion for judgment on the pleadings and dismiss Tri-Wire's Counterclaims.

Dated: August 20, 2021

                                          Respectfully submitted,

                                          /s/ Andrew K. Glenn
                                          Andrew K. Glenn (*pro hac vice*)
                                          Marissa E. Miller (*pro hac vice*)
                                          GLENN AGRE BERGMAN
                                            & FUENTES LLP
                                          55 Hudson Yards
                                          20th Floor
                                          New York, New York 10001
                                          T: (212) 358-5600
                                          aglenn@glennagre.com
                                          mmiller@glennagre.com

                                          Stephen D. Rosenberg [BBO #558415]
                                          Jordan D. Mamorsky [BBO #705605]
                                          WAGNER LAW GROUP, P.C.
                                          99 Summer Street, 13th Floor
                                          Boston, Massachusetts 02110
                                          T: (617) 357-5200
                                          F: (617 357-5250
                                          srosenberg@wagnerlawgroup.com
                                          jmamorsky@wagnerlawgroup.com

                                          *Attorneys for John R. Wade, III*